

**COMMONWEALTH OF MASSACHUSETTS**
**NORFOLK COUNTY**
**Docket Report**

### 2082CV00004 Dantowitz, Ronald F. vs. Dexter Southfield School et al

| | |
|---|---|
| **CASE TYPE:** Torts | **FILE DATE:** 01/03/2020 |
| **ACTION CODE:** B22 | **CASE TRACK:** F - Fast Track |
| **DESCRIPTION:** Employment Discrimination | |
| **CASE DISPOSITION DATE** 03/26/2020 | **CASE STATUS:** Closed |
| **CASE DISPOSITION:** Transferred to another Court | **STATUS DATE:** 03/26/2020 |
| **CASE JUDGE:** | **CASE SESSION:** Civil B |

| DCM TRACK | | |
|---|---|---|
| **Tickler Description** | **Due Date** | **Completion Date** |
| Service | 04/02/2020 | 03/26/2020 |
| Answer | 05/04/2020 | 03/26/2020 |
| Rule 12/19/20 Served By | 05/04/2020 | 03/26/2020 |
| Rule 15 Served By | 05/04/2020 | 03/26/2020 |
| Early Case Management Conference | 05/12/2020 | |
| Rule 12/19/20 Filed By | 06/01/2020 | 03/26/2020 |
| Rule 15 Filed By | 06/01/2020 | 03/26/2020 |
| Rule 15 Heard By | 07/01/2020 | 03/26/2020 |
| Rule 12/19/20 Heard By | 07/01/2020 | 03/26/2020 |
| Discovery | 10/29/2020 | 03/26/2020 |
| Rule 56 Served By | 11/30/2020 | 03/26/2020 |
| Rule 56 Filed By | 12/28/2020 | 03/26/2020 |
| Final Pre-Trial Conference | 04/27/2021 | 03/26/2020 |
| Judgment | 01/03/2022 | 03/26/2020 |

| PARTIES | |
|---|---|
| **Plaintiff**<br>Dantowitz, Ronald F. | **Private Counsel** 675808<br>Suzanne L Herold<br>Herold Law Group, P.C.<br>Herold Law Group, P.C.<br>50 Terminal St<br>Building 2 Suite 716<br>Charlestown, MA 02129<br>Work Phone (617) 944-1325<br>Added Date: 01/03/2020 |
| **Defendant**<br>Dexter Southfield School | **Attorney** 684569<br>Laura Deck Stones<br>Schwartz Hannum PC<br>Schwartz Hannum PC<br>11 Chestnut St<br>Andover, MA 01810<br>Work Phone (978) 623-0900<br>Added Date: 03/26/2020 |



**COMMONWEALTH OF MASSACHUSETTS**
**NORFOLK COUNTY**
**Docket Report**

| | |
|---|---|
| **Defendant**<br>Tucker, Stewart | **Attorney** 684569<br>Laura Deck Stones<br>Schwartz Hannum PC<br>Schwartz Hannum PC<br>11 Chestnut St<br>Andover, MA 01810<br>Work Phone (978) 623-0900<br>Added Date: 03/26/2020 |
| **Defendant**<br>Urbonas, Carmen | **Attorney** 684569<br>Laura Deck Stones<br>Schwartz Hannum PC<br>Schwartz Hannum PC<br>11 Chestnut St<br>Andover, MA 01810<br>Work Phone (978) 623-0900<br>Added Date: 03/26/2020 |

## FINANCIAL DETAILS

| Date | Fees/Fines/Costs/Charge | Assessed | Paid | Dismissed | Balance |
|---|---|---|---|---|---|
| 01/03/2020 | Civil Filing Fee (per Plaintiff)<br>Receipt: 18524 Date: 01/03/2020 | 240.00 | 240.00 | 0.00 | 0.00 |
| 01/03/2020 | Civil Security Fee (G.L. c. 262, § 4A)<br>Receipt: 18524 Date: 01/03/2020 | 20.00 | 20.00 | 0.00 | 0.00 |
| 01/03/2020 | Civil Surcharge (G.L. c. 262, § 4C)<br>Receipt: 18524 Date: 01/03/2020 | 15.00 | 15.00 | 0.00 | 0.00 |
| 01/03/2020 | Fee for Blank Summons or Writ<br>(except Writ of Habeas Corpus) MGL<br>262 sec 4b Receipt: 18524 Date:<br>01/03/2020 | 15.00 | 15.00 | 0.00 | 0.00 |
| | **Total** | **290.00** | **290.00** | **0.00** | **0.00** |



**COMMONWEALTH OF MASSACHUSETTS**
NORFOLK COUNTY
Docket Report

| INFORMATIONAL DOCKET ENTRIES | | | |
|---|---|---|---|
| **Date** | **Ref** | **Description** | **Judge** |
| 01/03/2020 | | Attorney appearance<br>On this date Suzanne L Herold, Esq. added as Private Counsel for Plaintiff<br>Ronald F. Dantowitz | |
| 01/03/2020 | | Early Case Management Conference Pilot Program. | |
| 01/03/2020 | | Case assigned to:<br>DCM Track F - Fast Track was added on 01/03/2020 (sent to attorney) | |
| 01/03/2020 | 1 | Original civil complaint filed. | |
| 01/03/2020 | 2 | Civil action cover sheet filed. | |
| 01/03/2020 | | Demand for jury trial entered. | |
| 01/17/2020 | | One Trial case reviewed by Clerk, case to remain in the Superior Court.<br><br>Judge: Hickey, Mary K | Hickey |
| 03/26/2020 | | Attorney appearance<br>On this date Laura Deck Stones, Esq. added for Defendant Dexter<br>Southfield School | |
| 03/26/2020 | | Attorney appearance<br>On this date Laura Deck Stones, Esq. added for Defendant Carmen<br>Urbonas | |
| 03/26/2020 | 3 | Notice of Removal to the United States District Court filed by<br><br>Dexter Southfield School, Carmen Aliber and Stewart Tucker on 3/18/2020<br>(rec'd 3/20/2020)<br><br>Applies To: Stones, Esq., Laura Deck (Attorney) on behalf of Dexter<br>Southfield School, Urbonas, Carmen (Defendant)<br><br>Applies To: Stones, Esq., Laura Deck (Attorney) on behalf of Dexter<br>Southfield School, Tucker, Stewart, Urbonas, Carmen (Defendant) | |
| 03/26/2020 | | Attorney appearance<br>On this date Laura Deck Stones, Esq. added for Defendant Stewart Tucker | |
| 03/26/2020 | | Case transferred to another court. ( United States District Court ) | |
| 03/26/2020 | | Docket Note: Certified copies of all filings and docket sheet were sent to<br>Attorney Laura Deck Stones on 3/20/2020 | |

I ATTEST THAT THIS DOCUMENT IS A
CERTIFIED PHOTOCOPY OF AN ORIGINAL
ON FILE

*Anetta Sweeney*

Deputy Assistant Clerk

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 20  0004 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

PLAINTIFF(S): Ronald F. Dantowitz

ADDRESS: 405 VFW Parkway

Chestnut Hill, MA

COUNTY Norfolk

DEFENDANT(S): Dexter Southfield School

Carmen Urbanus

Stewart Tucker

ATTORNEY: Suzanne L. Herold, Herold Law Group, P.C.

ADDRESS: 50 Terminal St.

Blo 2, Ste 714

Charlestown, MA 02429

ADDRESS:

BBO:

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | ☑ YES  ☐ NO |

*If "Other" please describe:

**Is there a claim under G.L. c. 93A?**
☐ YES   ☐ NO

**Is this a class action under Mass. R. Civ. P. 23?**
☐ YES   ☐ NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages.
For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses .................................................. $
2. Total doctor expenses .................................................... $
3. Total chiropractic expenses ............................................. $
4. Total physical therapy expenses ........................................ $
5. Total other expenses (describe below) .......................... Subtotal (A): $

B. Documented lost wages and compensation to date ............................ $ 50,000 +
C. Documented property damages to date ...................................... $
D. Reasonably anticipated future medical and hospital expenses .............. $
E. Reasonably anticipated lost wages ....................................... $
F. Other documented items of damages (describe below) ...................... $

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

Emotional distress

T. B. D.
TOTAL (A-F): $ 50,000 +

### CONTRACT CLAIMS
(attach additional sheets as necessary)

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

TOTAL: $

Date:

Signature of Attorney/ Unrepresented Plaintiff: X

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X

Date: 12-30-19

I HEREBY CERTIFY THAT THIS DOCUMENT IS A CERTIFIED PHOTOCOPY OF AN ORIGINAL ON FILE.
Deputy Assistant Clerk

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION NO.: 20      0004

```
                                    )
RONALD F. DANTOWITZ                 )
                                    )
       Plaintiff                    )
                                    )
         v.                         )
                                    )
DEXTER SOUTHFIELD SCHOOL,           )
CARMEN URBONAS                      )
& STEWART TUCKER                    )
                                    )
       Defendants.                  )
                                    )
```

## COMPLAINT AND JURY DEMAND

### Parties

1.  The Plaintiff, Ronald F. Dantowitz (hereinafter "Mr. Dantowitz" or "Plaintiff"), is a male individual who maintains a residence at 405 VFW Parkway, Chestnut Hill, Middlesex County, Massachusetts.

2.  The Defendant, Dexter Southfield School ("School" or "DXSF") is a private educational institution with a location of 20 Newton Street, Brookline, Norfolk County, Massachusetts.

3.  The Defendant, Carmen Urbonas ("Ms. Urbonas") is an individual agent of the School and maintains a business address located at 20 Newton Street, Brookline, Norfolk County, Massachusetts.

4.  The Defendant, Stewart Tucker ("Mr. Tucker") is an individual agent of the School and maintains a business address located at 20 Newton Street, Brookline, Norfolk County, Massachusetts.

### Facts

5.  Mr. Dantowitz is a former employee of the School.

6. Mr. Dantowitz is a disabled individual.  Furthermore, Mr. Dantowitz's minor son, Emmett is also a disabled individual.  Both have a diagnosis of autism.

7. Mr. Dantowitz is an accomplished astronomer, lecturing at the Charles Hayden Planetarium since 1988.

8. In Fall 2000, Mr. Dantowitz was hired by Dexter-Southfield School as Faculty Member and Director of Clay Center Observatory.

9. In 2003 D. Stewart Tucker was hired by the School as the Assistant Head of School.

10. On October 11, 2010 Mr. Dantowitz's son Emmett was born severely autistic. Emmett's condition quickly became common knowledge among faculty / administration at the School.

11. On May 15, 2014 Mr. Dantowitz approached Mr. Tucker about taking time off to care for his son. Mr. Tucker pressured him not to take time off, saying: "You will need to rethink your priorities." At that time, Mr. Dantowitz ultimately declined to take that leave.

12. On August 5, 2014 Mr. Dantowitz was diagnosed with autism spectrum disorder as a result of a neuropsychological assessment at BWH, Pamela Friedman, Psy.D. The diagnosis confirmed that he is substantially limited in his ability to read, process emotions, and interpret body language and non-verbal communication.

11. In 2016 Mr. Dantowitz disclosed his own diagnoses to his supervisor, Ellen Hinman ("Ms. Hinman"), Head of the DXSF High School. On several occasions, the two discussed his limitations – that he struggled with reading comprehension and needed substantial additional time to deal with written communication and Ms. Hinman was supportive. Mr. Dantowitz disclosed his concern that sharing his diagnosis / limitations with Mr. Tucker would put his job at risk.

12. In 2017 the School hired "Ms. Urbonas" as Director of Human Resources. This was the first time the School had an HR professional / department.

13. In January 2018 Mr. Dantowitz provided Ms. Urbonas his 4/10/17 letter from Dr. Friedman.

14. On February 6, 2018 Mr. Dantowitz met with Ms. Urbonas, reviewed the letter with her, and discussed his limitations / accommodations. The letter states:

> "The most salient aspects of Mr. Dantowitz's cognitive exam are his significantly reduced processing speed and reading rate, his impaired performance on a measure of emotional processing, and his endorsement of symptoms consistent with autism spectrum disorders."

15. On February 14, 2018 Mr. Dantowitz and Ms. Urbonas had a follow up discussion regarding Mr. Dantowitz's disability and accommodations.

16. On June 6, 2018, Mr. Dantowitz got a quote to replace the school's Telescope Control System.

17. On June 19, 2018, Mr. Dantowitz communicated with Mr. Tucker about the Clay Center Observatory Repairs and shared a spreadsheet listing repairs, costs, and notes about each, as well as quotes for repairs.

18. On August 30, 2018, Mr. Dantowitz met with the Head of School, Todd Vincent ("Mr. Vincent") and expressed his need for a leave of absence to care for his autistic son, Emmett. Mr. Dantowitz said that he did not want to put his job at risk, and he expressed concern about dealing with Ms. Urbonas. Mr. Vincent said he would speak with Ms. Urbonas (HR) and that she would follow-up with Mr. Dantowitz.

19. On August 30, 2018, Ms. Urbonas reached out to Mr. Dantowitz. She said she understood that Mr. Dantowitz wanted to take a leave of absence. She asked him if the leave would be personal or FMLA. Mr. Dantowitz responded that he did not know the difference. He explained that he needed to be out for an unspecified period to care for his autistic son. Ms. Urbonas pushed him toward taking a "personal leave," and she suggested that he research leave under the FMLA with his wife.

20. On September 5, 2018, Ms. Urbonas emailed Mr. Dantowitz, seeking a meeting. She wrote "We had left it that you were going to ask your wife to research leave time under the Family and Medical Leave Act, and you were going to get back to me by September 7, 2018." Mr. Tucker and others then met with Mr. Dantowitz to discuss work, setting short deadlines for deliverables.

21. On September 10, 2018, just before 11AM, Ms. Urbonas emailed Mr. Dantowitz and recapped that she knew Mr. Dantowitz was "seeking a leave of absence … from September 2018 through December 2018." Ms. Urbonas alleged that the School "reassigned [Mr. Dantowitz's] workload," and then wrote "I understand that you continue to report to work despite having no assigned job duties." Ms. Urbonas then told Mr. Dantowitz that "time is now of the essence. If you intend to request a personal leave of absence, please submit your written request before 12:00 PM today." She then suggested he may be taken off the payroll.

22. On September 10, 2018 at 11:48AM, Mr. Dantowitz replied to Ms. Urbonas and copied Mr. Vincent and Mr. Tucker. Mr. Dantowitz stated that the leave he planned to take "will almost certainly be an FMLA request." He reminded her that he is working on tasks Mr. Tucker assigned on September 7th. Mr. Dantowitz further explained those tasks will probably not be complete till around September 28th. He offered to meet with her the next day to discuss his anticipated FMLA leave. That same night at 7:02PM, Ms. Urbonas responded to Mr. Dantowitz, and

provided FMLA paperwork.  She proposed a meeting at 11 AM the following day.

23. On September 11, 2018 at 10:15AM, Mr. Dantowitz replied to Ms. Urbonas, and stated that he just wanted to do this right, and that he is confused because Mr. Tucker told him he needs to get work done that will take until 9/28. He again stated that he did not want to put his job at risk. He indicated that he needed to get professional counsel and that he would circle back thereafter.

24. Later that day at 3:07PM, Ms. Urbonas replied.  She said that she needed to be involved in a discussion about his work assignments and demanded them by 4PM – another ridiculously short timeline to prepare.  She also stated that that Mr. Dantowitz did not complete his work assignments over the summer and said, "nor have you provided us with a clear understanding of the purpose and duration of your leave…"

25. On September 12, 2018, in the early morning, Mr. Dantowitz replied to Ms. Urbonas, citing the impossibly short deadline in the prior email, and he articulated what he was working on. He further stated that he was working on getting counsel to help him navigate leave laws.

26. On September 13, 2018, Ms. Urbonas emailed Mr. Dantowitz to schedule a meeting for the following morning regarding leave.

27. On September 14, 2018, Mr. Dantowitz emailed Headmaster, Mr. Vincent and forwarded his email chain with Ms. Urbonas.  Mr. Dantowitz made it clear of his need for FMLA to care for his son's serious health condition, and raised concerns that Ms. Urbonas was trying to trap him / rush him.

28. Shortly thereafter, on that same day, Mr. Vincent responded to Mr. Dantowitz saying "Thank you for your thoughtful e-mail. I will meet with Carmen (Ms. Urbonas) this morning, and one of us will get back to you." Later, Mr. Vincent confirmed he had connected with Ms. Urbonas and understood that Mr. Dantowitz would be meeting with her that morning.

29. Early on September 14, 2018, Mr. Dantowitz replied to Ms. Urbonas' email from the night before, making clear that he needed FMLA and asked for the FMLA paperwork.

30. A few minutes later, Ms. Urbonas replied to Mr. Dantowitz, "granting [him] a personal leave of absence beginning today, September 14, 2018 and ending December 13, 2018". A formal letter was attached.  Mr. Dantowitz replied to Ms. Urbonas and he cited inaccuracies conveyed in the letter/e-mail.  He clarified that he was exercising his rights under FMLA to care for his disabled son.

31. Also, on September 14, 2018, David Brody (Mr. Brody), then Counsel for Mr. Dantowitz, requested clarification on what the School required for FMLA.

32. On September 17, 2018, Brian Carlson (Mr. Carlson), Counsel for the School emailed a FMLA form with the employer section filled in. Mr. Brody replied that so long as DXSF does not take further action to interfere with Mr. Dantowitz's rights, there is no need to discuss further. Mr. Brody also asked for confirmation that school would continue to pay insurance premiums during FMLA leave.

33. On September 17, 2018, Mr. Carlson responded and asserted there would be no FMLA interference and he confirmed the school would continue to pay full premiums for life and group health/dental insurance so long as the leave qualified for FMLA.

34. On September 24, 2018, Mr. Carlson e-mailed Mr. Brody and corrected his prior e-mail said the school would not pay dental premiums.

35. On September 27, 2018, Mr. Brody sent the fully executed WH-380-F form for Mr. Dantowitz's FMLA to Mr. Carlson and again, asked for confirmation that the school would continue to pay health insurance premiums.

36. On October 1, 2018, Mr. Carlson confirmed that school would continue to pay life/group health insurance during FMLA

37. Later that day, Mr. Dantowitz received a text from Bob Phinney, a colleague stating his need to write a job description for teaching the astronomy class. Mr. Phinney asked Mr. Dantowitz if Mr. Dantowitz would be willing to share an edited version of his job description from last year.

38. On October 5, 2018, Mr. Dantowitz went to his office at DXSF to retrieve some papers regarding the observatory retrofit happening that fall and discovered his key fob did not work and that he couldn't get into the building.

39. Mr. Dantowitz then emailed Ian Moorehouse (Director of Campus Operations) regarding his inability to access the building. Ian replied and copied Ms. Urbonas and Mr. Tucker. Ian said Ms. Urbonas would be in touch next week.

40. On October 9, 2018, Mr. Dantowitz received an email from the school receptionist that a prominent astronomer and former teacher at DXSF, Mr. Kelly Beatty arrived at Dexter Southfield for a noon appointment.

41. On October 10, 2018, Ms. Urbonas e-mailed Mr. Dantowitz stating that he was on a leave of absence and under school policies, he was relieved of all responsibilities for the duration of the leave, and his duties/responsibilities could wait until the leave was finished. Mr. Dantowitz replied that he needed to get some of his belongings. Ms. Urbonas then offered to help coordinate a pickup time.

42. On October 11, 2018, Mr. Dantowitz requested to come to school at 6:30 to retrieve personal belongings. Ms. Urbonas said she could not make a 6:30

appointment and confirmed that Mr. Dantowitz could not visit the school unaccompanied.

43. Also, on October 11, 2018, Mr. Dantowitz informed Ms. Urbonas of his need to retrieve some personal things for his son's birthday and asked if someone else could accompany him, such as Dr. Wittels or Bob Phinney (Director of the school building where Dantowitz worked). Ms. Urbonas replied and denied his request. She again cited school policies and stated that individuals cannot remove materials without prior consent of HR.

44. On October 22, 2018, Mr. Dantowitz e-mailed Ms. Urbonas and asked to reschedule a visit to The Clay Center. Ms. Urbonas replied and asked what he was looking to retrieve. She reiterated that he was not permitted to do work for the school during leave.

45. On October 25 and 26, 2018, Mr. Dantowitz e-mailed Ms. Urbonas to reschedule his visit to retrieve personal things, and he raised concerns that he was being treated differently since exercising his FMLA rights. He stated that he was not aware of any other teacher who had lost access to the building during leave. He also stated that he felt like he was being treated like a criminal. Ms. Urbonas replied that Mr. Dantowitz was not being told to stay away and denied that he was being treated differently than anyone else on FMLA. She said that that she would be on campus until 5pm (10/26/18) and that he could stop by.

46. On October 26, 2018, Mr. Dantowitz e-mailed Ms. Urbonas that he was on his way at 4:23pm, and he arrived shortly thereafter. He waited in the lobby and then sent another e-mail at 4:51 asking whether he should keep waiting. Ms. Urbonas came into the lobby and claimed he did not e-mail her and denied him the opportunity to get his belongings because she was leaving for the day and didn't have time. Instead, Mr. Tucker accompanied Mr. Dantowitz. Mr. Tucker watched his every move, questioned what everything was, and asked whether it was school or personal property. He did not allow Mr. Dantowitz to remove some of his own personal books/papers.

47. On October 29, 2018, Mr. Brody forwarded Mr. Dantowitz' and Ms. Urbonas' e-mail exchanges to Brian Carlson and asked for a time to discuss these exchanges.

48. On October 31, 2018, Mr. Brody spoke with Mr. Carlson via telephone, about an exit package. Mr. Carlson mentioned performance issues such as failing to adequately prepare for the class he was scheduled to teach and abruptly notifying the school that the telescope was not working, and it would not be operational for months.

49. On November 11, 2018, Mr. Carlson e-mailed a follow up of this conversation and again referenced performance concerns. He stated these issues were raised with Mr. Dantowitz before he asked to take any leave. He then invited Mr. Dantowitz to make a severance proposal.

50. On November 14, 2018, Ms. Urbonas e-mailed Mr. Dantowitz and asked for a time to discuss his return from leave.

51. On November 14, 2018, Mr. Brody sent a settlement demand to Mr. Carlson that outlined paid administrative leave through June 30, 2019, 18 months' severance/benefit continuation, mutual releases/non-disparagement and attorney's fees.

52. On November 20, 2018, Mr. Dantowitz replied to Ms. Urbonas' e-mail about his return to work and further raised concerns that he had been treated like a criminal. Mr. Dantowitz stated that he wanted to return to a workplace free from unlawful discrimination and retaliation.  That same day, Mr. Carlson replied to Mr. Brody stating that the school had rejected the settlement proposal and invited him to try again.

53. On November 26, 2018, Mr. Brody replied to Mr. Carlson and stated that Mr. Dantowitz would file a Charge of Discrimination and asked for a counter proposal.

54. Also, on November 26, 2018, Ms. Urbonas replied to Mr. Dantowitz and denied allegations of discrimination/retaliation.  She provided a list of performance expectations.

55. On November 27, 2018, Ms. Urbonas e-mailed Mr. Dantowitz and asked him to sign the receipt acknowledgement form for the 2018 Employee Handbook.

56. On November 29,2018, Mr. Carlson provided personnel records to Mr. Brody and stated discussions of Mr. Dantowitz's performance issues well predated any request for FMLA leave.

57. On December 3, 2018, Mr. Brody replied to Mr. Carlson and disagreed with his assertions regarding performance allegations.  He also raised issue that not all documents including those regarding Mr. Dantowitz's neuropsych exam were included.

58. On December 4, 2018, Mr. Carlson replied and disagreed that medical records should be included in personnel records.  Mr. Brody then replied, disagreed and provided a spreadsheet that Mr. Dantowitz presented to Mr. Tucker, Mr. DuBois, and Mr. Moorehouse in September 2018, that asked them for a call to discuss.

59. On December 5, 2018, Mr. Carlson stated that he would investigate and question/search for any additional personnel records.  He did not respond to the request for call.

60. On December 8, 2018, Mr. Dantowitz found his job posted on Indeed.com and he also discovered that it had been posted in or around October 2018.

61. On December 13, 2018, Mr. Dantowitz e-mailed Ms. Urbonas regarding his return to work, and he requested an accommodation to have a 12/14/18 meeting recorded, or in the alternative, to have Mr. Bloomfield present to take notes. Ms. Urbonas declined these requests.

62. Ms. Urbonas replied later that day to Mr. Dantowitz with an extreme laundry list of tasks/expectations thereby setting up Mr. Dantowitz to fail.

63. On December 14, 2018, Mr. Dantowitz had a very contentious meeting with Ms. Urbonas and Mr. Tucker. He was told that he was expected to come to work between 12/14 and the start of the next semester in January. He was also told that he would not get vacation like other teachers/faculty, which was a change compared to the vacation schedule has had for the last 20 years.

64. On December 14, 2018, Mr. Dantowitz emailed Mr. Tucker, and copied Ms. Urbonas to follow up on a Monday meeting request and syllabus. Ms. Urbonas replied and asked Mr. Dantowitz to e-mail the syllabus.

65. On December 14, 2018, Ms. Urbonas sent a follow up e-mail, that again, asked Mr. Dantowitz to sign an employee handbook acknowledgement form. On December 17, 2018, Mr. Dantowitz e-mailed Ms. Urbonas and Mr. Tucker the syllabus and requested an accommodation that someone be present to take notes on his behalf, or that he may have a copy of their notes. Ms. Urbonas replied and stated neither Mr. Dantowitz nor his medical providers had identified specific accommodations needed to perform essential functions of his job. She asked to set up a time to discuss the next steps if a disability was interfering with the essential functions of his job.

66. On December 18, 2018, Mr. Tucker replied to Mr. Dantowitz and thanked him. He also informed him that the School had hired Dr. Felipe Santos to "help with our astronomy programming and other areas of the School." Later, Mr. Dantowitz e-mailed Ms. Urbonas and indicated that he could not work Thursday or Friday, and the next week due to childcare issues. He indicated that he had no reason to believe he would be required to work over the break because it was the first time in 20 years he was required to do so.

67. On December 19, 2018, Ms. Urbonas responded. She refused to confirm or deny his PTO request. Instead, she directed Mr. Dantowitz to the vacation policy in the employee handbook and she suggested a follow up meeting to discuss accommodations, issues with Mr. Dantowitz's use of the Trackstar program, and again, she referenced performance.

68. On both December 19 and 20, 2018, Mr. Dantowitz requested a meeting with Ms. Urbonas and Mr. Tucker. Ms. Urbonas asked for the topic. Mr. Dantowitz referenced performance expectations. Ms. Urbonas canceled and rescheduled the meeting for after January 1st because of insufficient time to discuss the topic.

69. On December 21, 2018, Ms. Urbonas e-mailed Mr. Dantowitz about a payroll issue.

70. Between December 24, 2018 through December 28, 2018, Mr. Dantowitz worked over the holiday break because Ms. Urbonas would not confirm that he was permitted to utilize PTO.  Even with working that week, Mr. Dantowitz was not able to complete all tasks on the 12/13/18 list.

71. On January 2nd and 3rd, 2019, Mr. Dantowitz met with Mr. Tucker and Ms. Urbonas.  Mr. Dantowitz had not been able to complete the insurmountable list of tasks. Ms. Urbonas initially said they were "due" on Friday, January 4th but she got frustrated with Mr. Dantowitz and stated they were due right then.  Mr. Dantowitz worked all night and attempted to finish the tasks.  Mr. Dantowitz e-mailed an update on the tasks just before midnight.  Ms. Urbonas responded the next day asking for, in addition to completion of 12/13 task list, a written progress update from a June 19, 2018 e-mail regarding 38 concrete areas in need of maintenance, repair or replacement.

72. Also, on January 2nd and 3rd, 2019, Mr. Tucker e-mailed Mr. Dantowitz about Brookline adult education.   Mr. Dantowitz agreed to be involved.

73. On January 3, 2019, Ms. Urbonas e-mailed Mr. Dantowitz and asked about his hours worked and what PTO he would like to use for the period between December 15, 2018 through January 1, 2019.

74. On January 4, 2019, Mr. Dantowitz requested to use personal days on 1/7/19 and 1/8/19.  Brian Bloomfield (Head of the Dexter Southfield High School) directed him to the time off request forms.

75. Later on January 4, 2019, Mr. Dantowitz asked Ms. Emilia Guy (Head of the Science Department) for a time off request form, which she provided, and his personal days were approved.

76. Also, on January 4, 2019, Mr. Dantowitz replied to Ms. Urbonas' 1/3/19 e-mail. He stated that he worked all during the break and he asked to be paid his earned wages on the regular schedule.  Ms. Urbonas replied that Mr. Dantowitz would be paid all his regular and holiday pay.

77. On January 9, 2019, Mr. Dantowitz asked Ms. Urbonas for clarity on how he was paid for the holiday period.  Ms. Urbonas replied with an explanation.  Mr. Dantowitz then asked for a short meeting with Ms. Urbonas and Mr. Tucker to discuss progress on the task list. Ms. Urbonas asked for written documentation on the progress and instructed him to schedule a 60-minute meeting.

78. On January 10, 2019, Mr. Dantowitz e-mailed a spreadsheet in reply to Ms. Urbonas' request.   Mr. Dantowitz also requested a meeting with Ms. Urbonas and Mr. Tucker. Ms. Urbonas replied and asked that the meeting be scheduled at a time that all would be available to attend.  At 3:30PM, Mr. Dantowitz met with

Ms. Urbonas and Mr. Tucker to discuss his progress. He brought a list of 11 items to discuss. At 3:40p.m. they told him "it is 3:40p.m. and you did not get us an update by 3:30p.m., and this is considered poor performance." When Mr. Dantowitz told them the whole point of the meeting was to update them, they said it had to be submitted in writing, even though he e-mailed the spreadsheet prior to meeting

79. On January 11, 2019, Mr. Dantowitz e-mailed Ms. Urbonas about his Trakstar evaluation. Ms. Urbonas replied and reminded Mr. Dantowitz that he must submit weekly status updates, outlined standards for job performance, and she claimed that Mr. Dantowitz had signaled an inability or unwillingness to acknowledge or accept the job expectations.

80. On January 12, 2019, Mr. Dantowitz provided thoughts/responses in an e-mail to Mr. Brody.

81. On January 18, 2019, Mr. Dantowitz met with Ms. Urbonas and Mr. Tucker; they discussed his performance. Mr. Dantowitz was told he was unprofessional and unfit to direct the Observatory, had questionable judgment, was insubordinate and mentally unfit to perform duties, and that he had failed on many duties.

82. On January 22, 2019, Mr. Dantowitz received an e-mail from Mr. Tucker that asked him to meet him and Ms. Urbonas in Ms. Urbonas' office at 3:45pm.

83. On January 22, 2019, Mr. Dantowitz was terminated from DSXF. He was given a "Personnel Conversation Record", severance letter, final pay and Mr. Dantowitz's healthcare coverage was terminated at midnight.

84. Mr. Dantowitz has exhausted his administrative remedies with the Massachusetts Commission Against Discrimination.

## Causes of Action

(Each Cause Of Action Incorporates Therein
All Of The Paragraphs Set Forth, Hereinabove.)

## FIRST CAUSE OF ACTION – DISABILITY DISCRIMINATION IN VIOLATION OF MASS. GEN. LAWS CHAPTER 151B §1, et. seq.

85. This is a cause of action against all Defendants for disability discrimination in violation of Massachusetts General Laws Chapter 151B § 1, et. seq.

86. Plaintiff is a disabled individual.

87. The Defendants were aware that Plaintiff is a disabled individual.

88. Plaintiff requested a reasonable accommodation for his disability, which Defendants denied.

89. Defendants failed to engage in the interactive process with Plaintiff.

90. Defendants' conduct also created a hostile work environment.

91. Defendants terminated Plaintiff due to his disability.

92. As a result of the Respondent's conduct, the Plaintiff has suffered damages.

## SECOND CAUSE OF ACTION –ASSOCIATIONAL DISABILITY DISCRIMINATION IN VIOLATION OF MASS. GEN. LAWS CHAPTER 151B §1, et. seq.

93. This is a cause of action against all Defendants for disability discrimination in violation of Massachusetts General Laws Chapter 151B § 1, et. seq.

94. Plaintiff's minor son is a disabled individual.

95. The Defendants were aware that Plaintiff's minor son is a disabled individual.

96. Plaintiff requested a reasonable accommodation to care for his son, which Defendants denied.

97. Defendants failed to engage in the interactive process with Plaintiff.

98. Defendants' conduct also created a hostile work environment.

99. Defendants terminated Plaintiff due to his obligations to care for his disabled son.

100.    As a result of the Respondent's conduct, the Plaintiff has suffered damages.

## THIRD CAUSE OF ACTION – RETALIATION IN VIOLATION OF MASS. GEN. LAWS CHAPTER 151B §1, et. seq.

101. This is a cause of action against all Defendants for retaliation.

102. The Plaintiff was subjected to retaliation, which had the purpose of creating a hostile and humiliating work environment, which interfered with the Plaintiff's ability to do his job or secure another job within his industry.

103. Due to Plaintiff's requests for accommodations to care for his disability and his son's disability, Defendants terminated Plaintiff.

104. As a result of the Defendant's conduct, the Plaintiff has suffered damages.

## FOURTH CAUSE OF ACTION – AIDING AND ABETTING IN VIOLATION OF MASS. GEN. LAWS CHAPTER 151B §1. et. seq.

105.     This is a cause of action against Ms. Urbonas and Mr. Stewart for aiding and abetting in violation of MGL c. 151B sec. 4(5).

106.     The Defendants unlawfully aided and abetted the School's discriminatory behavior.

107.     As a result of the Defendants' conduct, the Plaintiff has suffered damages.

## FIFTH CAUSE OF ACTION – THREATS, COERSION AND INTIMIDATION IN VIOLATION OF MASS. GEN. LAWS CHAPTER 151B §1. et. seq.

108.     This is a cause of action against Ms. Urbonas and Mr. Stewart for threats, coercion and intimidation in violation of MGL c. 151B sec. 4(4A).

109.     The Defendants unlawfully threatened, coerced and intimidated Plaintiff on the basis of his disability, his son's disability and Plaintiff's need for a reasonable accommodation based on both disabilities.

110.     The Defendants unlawfully threatened, coerced and intimidated Plaintiff on the basis of retaliation due to their dislike of his disability, his son's disability and Plaintiff's need for a reasonable accommodation based on both disabilities.

111.     As a result of the Defendants' conduct, the Plaintiff has suffered damages.

## SIXTH CAUSE OF ACTION – VIOLATION OF THE FAMILY MEDICAL LEAVE ACT OF 1993, 29 U.S.C. CHAPTER 28

112.     This is a cause of action against the Defendants for violation of the Family Medical Leave Act ("FMLA").

113.     Plaintiff and his son both suffer a serious health condition(s).

114.    Plaintiff required leave pursuant to the FMLA to care for himself and his son.

115.    Plaintiff worked at least 1,250 hours during the last 12 months and is otherwise covered under the FMLA.

116.    The Defendant employs 50 or more employees and is otherwise covered by the FMLA.

117.    The Defendant interfered with Plaintiff's right to take FMLA.

118.    As a result, Plaintiff has suffered damages.

## SEVENTH CAUSE OF ACTION – RETALIATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT OF 1993, 29 U.S.C. CHAPTER 28

119.    This is a cause of action against the Defendants for retaliation in violation of the Family Medical Leave Act ("FMLA").

120.    Plaintiff and his son both suffer a serious health condition(s).

121.    Plaintiff required leave pursuant to the FMLA to care for himself and his son.

122.    Plaintiff worked at least 1,250 hours during the last 12 months and is otherwise covered under the FMLA.

123.    The Defendant employs 50 or more employees and is otherwise covered by the FMLA.

124.    The Defendant retaliated against Plaintiff for attempting to and / or invoking his rights to leave under the FMLA.

125.    As a result, Plaintiff has suffered damages.

*The Plaintiff demands a jury trial on all triable issues.*

WHEREFORE, the Plaintiff hereby requests that this Honorable Court grant the following relief:

1.  Judgment against the Defendants, jointly and individually;

2. Attorney's fees, costs and expert witness fees;

3. Compensatory damages for emotional distress;

4. Punitive damages pursuant to MGL c. 151B, § 9;

5. Pre-Judgment and Post-Judgment Interest, and

6. Such other relief as the Court deems just and fair.


December 30, 2019

The Plaintiff,
Ronald F. Dantowitz
By his attorney,

Suzanne L. Herold (BBO# 675808)
Herold Law Group, P.C.
50 Terminal Street
Building 2, Suite 716
Charlestown, MA 02129
(617) 336-7196 (t)
(617) 398-2730 (f)
suzie@heroldlawgroup.com

I ATTEST THAT THIS DOCUMENT IS A
CERTIFIED PHOTOCOPY OF AN ORIGINAL
ON FILE

Deputy Assistant Clerk

3

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS                                                    SUPERIOR COURT

RONALD F. DANTOWITZ,                    )
                                        )     F Clin 3/26/2020
                  Plaintiff,            )
                                        )
v.                                      )
                                        )     CIVIL ACTION # 20-CV-0004
DEXTER SOUTHFIELD INC.,                 )
CARMEN ALIBER,                          )
STEWART TUCKER                          )
                                        )
                  Defendants.           )
                                        )

## NOTICE OF FILING OF NOTICE OF REMOVAL

Defendants Dexter Southfield Inc. (incorrectly identified as Dexter Southfield School in

the Plaintiff's Complaint), Carmen Aliber (incorrectly identified as "Carmen Urbonas" in the

Plaintiff's Complaint), and Stewart Tucker hereby notify the Court that a Notice of Removal of

the above-captioned matter was filed in the United States District Court for the District of

Massachusetts on March 18, 2020.  A copy of the Notice of Removal is attached hereto at Tab A

without exhibits.

March 18, 2020                          Respectfully submitted,
                                        DEXTER SOUTHFIELD INC.,
                                        CARMEN ALIBER, and
                                        STEWART TUCKER

                                        By their attorneys,


                                        William E. Hannum III (BBO No. 643155)
                                        Laura D. Stones (BBO No. 684569)
                                        SCHWARTZ HANNUM PC
                                        11 Chestnut Street
                                        Andover, MA 01810
                                        Telephone: (978) 623-0900    I ATTEST THAT THIS DOCUMENT IS A
                                        Facsimile:  (978) 623-0908   CERTIFIED PHOTOCOPY OF AN ORIGINAL
                                                                     ON FILE.
                                                                     Deputy Assistant Clerk

## CERTIFICATE OF SERVICE

    I, Laura D. Stones, hereby certify that on the 18th day of March, 2020, I caused a true and correct copy of the foregoing document to be served via first class mail to counsel for Plaintiff:

    Suzanne L. Herold
    Herold Law Group, P.C.
    50 Terminal Street
    Building 2, Suite 716
    Charlestown, MA 02129
    suzie@heroldlawgroup.com

    Laura D. Stones

Case 1:20-cv-10540-ADB   Document 1   Filed 03/18/20   Page 1 of 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RONALD F. DANTOWITZ,<br><br>     Plaintiff,<br><br>v.<br><br>DEXTER SOUTHFIELD INC.,<br>CARMEN ALIBER, and<br>STEWART TUCKER<br><br>     Defendants. | CIVIL ACTION NO. |

## NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT

Defendants Dexter Southfield Inc. (incorrectly identified as "Dexter Southfield School" in the Plaintiff's Complaint), Carmen Aliber (incorrectly identified as "Carmen Urbonas" in the Plaintiff's Complaint), and Stewart Tucker, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, submit this Notice of Removal of this case from the Superior Court of Norfolk County, Massachusetts to the United States District Court for the District of Massachusetts. In support of this Notice of Removal, all Defendants state as follows:

1. On December 30, 2019, counsel for Plaintiff Ronald F. Dantowitz filed a Complaint (the "Complaint") in the Superior Court of Norfolk County, Massachusetts, Case No. 20-CV-0004 (the "State Action"), against Defendants.

2. On March 2, 2020, counsel for Defendants accepted service of the Complaint on behalf of all Defendants.

3. In his Complaint, Plaintiff alleges that Defendants unlawfully interfered with his rights under the Family and Medical Leave Act, a federal statute, in the termination of Plaintiff's



Certified to be a true and
correct copy of the original
Robert M. Farrell, Clerk
U. S. District Court
District of Massachusetts
By: _____
  Deputy Clerk

Date: _03/18/2020_

employment.  Plaintiff also alleges that he was subjected to unlawful retaliation in violation of the Family and Medical Leave Act.

4.      In accordance with 28 U.S.C. § 1446(a), a copy of the Complaint is attached at Tab A.

5.      This Notice of Removal is filed in accordance with 28 U.S.C. §§ 1441(a) and 1446.

6.      Removal of this case is proper under 28 U.S.C. §§ 1331 and 1441 because the Complaint includes two causes of action arising out of Defendants' alleged violations of a federal statute, the Family and Medical Leave Act, and the remaining causes of action in the Complaint are subject to supplemental jurisdiction under 28 U.S.C. § 1367.

7.      In accordance with 28 U.S.C. § 1446(b)(2), all Defendants join in and consent to the removal of this action.

8.      This Notice of Removal is timely filed by Defendants within the timeframe allotted by this Court pursuant to 28 U.S.C. § 1446(b)(1).

9.      The undersigned has served notice of the removal of this action on Plaintiff, by serving his counsel with this Notice of Removal, and has filed a copy of this Notice of Removal with the Clerk in the State Action.  A copy of the Notice of Filing of the Notice of Removal is attached hereto at Tab B.

WHEREFORE, Defendants respectfully request that this case be entered upon the Docket of the United States District Court for the District of Massachusetts, pursuant to 28 U.S.C. §§ 1441 and 1446.

March 18, 2020

Respectfully submitted,
DEXTER SOUTHFIELD INC.,
CARMEN ALIBER, and
STEWART TUCKER

By their attorneys,

*/s/ Laura D. Stones*
William E. Hannum III (BBO No. 643155)
(whannum@shpclaw.com)
Laura D. Stones (BBO No. 684569)
(lstones@shpclaw.com)
SCHWARTZ HANNUM PC
11 Chestnut Street
Andover, MA 01810
Telephone: (978) 623-0900
Facsimile: (978) 623-0908

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, filed through the ECF system will be served electronically upon all registered participants as identified in the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered parties this 18th day of March, 2020.

Suzanne L. Herold (*counsel for Plaintiff*)
Herold Law Group, P.C.
50 Terminal Street
Building 2, Suite 716
Charlestown, MA 02129
suzie@heroldlawgroup.com

*/s/ Laura D. Stones*
Laura D. Stones

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS                                             SUPERIOR COURT

CLERK OF THE COURT
NORFOLK COUNTY

RONALD F. DANTOWITZ,                      )
                                          )
                    Plaintiff,            )
                                          )         Filed 3/26/20
v.                                        )
                                          )
DEXTER SOUTHFIELD INC.,                   )         CIVIL ACTION NO. # 20-CV-0004
CARMEN ALIBER, and                        )
STEWART TUCKER                            )
                                          )
                    Defendants.           )
                                          )

## NOTICE OF APPEARANCE

Please enter the appearances of William E. Hannum III and Laura D. Stones as counsel

for Defendants Dexter Southfield Inc. (incorrectly identified as "Dexter Southfield School" in

the Plaintiff's Complaint), Carmen Aliber, (incorrectly identified as "Carmen Urbonas" in the

Plaintiff's Complaint), and Stewart Tucker.

March 18, 2020                    Respectfully submitted,
                                  DEXTER SOUTHFIELD INC.,
                                  CARMEN ALIBER, and
                                  STEWART TUCKER

                                  By their attorneys,



                                  William E. Hannum III (BBO No. 643155)
                                  (whannum@shpclaw.com)
                                  Laura D. Stones (BBO No. 684569)
                                  (lstones@shpclaw.com)
                                  SCHWARTZ HANNUM PC
                                  11 Chestnut Street
                                  Andover, MA 01810
                                  Telephone: (978) 623-0900
                                  Facsimile:  (978) 623-0908

I ATTEST THAT THIS DOCUMENT IS A
CERTIFIED PHOTOCOPY OF AN ORIGINAL
ON FILE.
Loretta Sweeney
Deputy Assistant

## CERTIFICATE OF SERVICE

    I, Laura D. Stones, hereby certify that on the 18th day of March, 2020, I caused a true and correct copy of the foregoing document to be served via first class mail to counsel for Plaintiff:

    Suzanne L. Herold (*counsel for Plaintiff*)
    Herold Law Group, P.C.
    50 Terminal Street
    Building 2, Suite 716
    Charlestown, MA 02129
    suzie@heroldlawgroup.com

    Laura D. Stones