```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3   RONALD F. DANTOWITZ,              )
                    Plaintiff          )
 4                                     )
     vs.                               )  No. 1:20-cv-10540-FDS
 5                                     )
     DEXTER SOUTHFIELD, INC.,          )
 6                  Defendant.         )
                                       )
 7                                     )
                                       )
 8                                     )

 9


10
          BEFORE THE HONORABLE MARIANNE B. BOWLER
11              UNITED STATES MAGISTRATE JUDGE
                          HEARING
12

13

14

          John Joseph Moakley United States Courthouse
15                    One Courthouse Way
                 Boston, Massachusetts 02210
16

17
                        August 2, 2021
18                        11:05 a.m.

19


20


21             Kristin M. Kelley, RPR, CRR
                   Official Court Reporter
22       John Joseph Moakley United States Courthouse
               One Courthouse Way, Room 3209
23              Boston, Massachusetts 02210
                 E-mail: kmob929@gmail.com
24
          Mechanical Steno - Computer-Aided Transcript
25
```

```
 1   APPEARANCES:
 2
 3         Suzanne L. Herold
 4         Herold Law Group, P.C.
 5         50 Terminal Street
 6         Building 2, Suite 716
 7         Charlestown, MA 02129
 8         617-944-1325
 9         Suzie@heroldlawgroup.com
10         for Plaintiff.
11
12
13         Laura Deck Stones
14         Schwartz Hannum, PC
15         11 Chestnut Street
16         Andover, MA 01810
17         978-623-0900
18         lstones@shpclaw.com
19         for Defendant.
20
21
22
23
24
25
```

|    |                                                                 |
|----|-----------------------------------------------------------------|
| 1  | P R O C E E D I N G S                                           |
| 2  | THE CLERK:  United States District Court is now in              |
| 3  | session, the Honorable Marianne B. Bowler presiding.  Today's   |
| 4  | date is August 2, 2021, in the case of Ronald Dantowitz verse   |
| 5  | Dexter Southfield, Inc., Civil Action No. 20-10540-FDS.         |
| 6  | Would counsel please introduce themselves for the               |
| 7  | record.                                                         |
| 8  | MS. HEROLD:  Good morning, your Honor.  This is                 |
| 9  | Suzanne Herold for the plaintiff.                               |
| 10 | THE COURT:  Good morning, Ms. Herold.                           |
| 11 | MS. STONES:  Good morning, your Honor.  My name is              |
| 12 | Laura Stones for defendants.                                    |
| 13 | THE COURT:  Thank you very much.                                |
| 14 | At the outset here, having reviewed all of the papers,          |
| 15 | I want to make you aware of the fact that my stepson is a       |
| 16 | graduate of what was then the Dexter School.  Does that bother  |
| 17 | anyone with having me deal with this motion?  Miss Herold?      |
| 18 | MS. HEROLD:  I don't think so.                                  |
| 19 | THE COURT:  Yes or no?                                          |
| 20 | MS. HEROLD:  No.                                                |
| 21 | THE COURT:  Miss Stones?                                        |
| 22 | MS. STONES:  No, your Honor.                                    |
| 23 | THE COURT:  All right.  So we're here on the two                |
| 24 | docket entries, 30 and 33.  Let's go through 30.  It is         |
| 25 | defendant's motion, so I'll hear you.                           |

(Timestamps: 11:05 at line 10; 11:06 at line 20)

1           MS. STONES:  Yes, your Honor.  30 is the Motion to
2  Celestial Computing.
3           THE COURT:  Right.  And who represents Celestial?
4           MS. HEROLD:  I do.
5           THE COURT:  The court reporter doesn't know what that
6  means.  You have to identify yourself every time that you
7  speak.
8           MS. HEROLD:  Suzie Herold for Celestial Computing.
9           MS. STONES:  This is Laura Stones for defendants.  The
11:07 10  motion was filed after defendants served a Rule 45 subpoena on
11  the company.  In that subpoena, the defendant sought documents
12  that would shed light on plaintiff's activities in connection
13  with the company.  It's his company that he owned and operated
14  throughout his employment at Dexter Southfield.
15           The records that defendants are seeking are relevant
16  to the credibility of plaintiff's claims that Dexter Southfield
17  did not permit him sufficient time to complete his job
18  responsibilities.  The records are also relevant to plaintiff's
19  activities leading up to and during his FMLA leave.  The
11:08 20  records are also relevant to plaintiff's damages, particularly
21  in light of the fact that the company sold a $1 million piece
22  of company equipment shortly after plaintiff left Dexter
23  Southfield and plaintiff himself had a profit of more than six
24  times his Dexter Southfield salary soon after his employment
25  was terminated.

1          It was only after defendants followed up with the
2    company's keeper of records, who the plaintiff followed up with
3    him after the deadline of the subpoena, only then did
4    plaintiff's counsel identify herself as counsel for the
5    company.  She raised the possibility of objecting to the breath
6    of the subpoena.  The company's counsel did not provide any
7    written objections or response.
8          At that point, it was too late to object.  At that
9    point, the company had weighed its objections to the subpoena.
11:08 10 Even knowing that, defendants continued to try to confer with
11   the company even after the deadline.  We even offered to narrow
12   the subpoena in an effort to get some kind of response.
13         We got no response from the company's counsel, who is
14   also plaintiff's counsel, in response to our efforts to work
15   something out.  So, ultimately, we were forced to move to
16   compel in order to get a response to the subpoena.
17         So, in light of that, we respectfully request that the
18   Court order the company to produce the records responsive to
19   the subpoena.
11:09 20         THE COURT:  First of all, Miss Herold, I think that
21   the docket should reflect that you represent Celestial.
22   There's nothing on here to that effect.
23         MS. HEROLD:  Celestial's not a party to the lawsuit,
24   so I don't know how I would file a notice of appearance on
25   behalf of a nonparty.  I'm happy to do it if there's a

1   mechanism for that.
2           THE COURT:  Certainly, if you're here to argue on
3   their behalf.
4           MS. HEROLD:  I apologize.  I was unaware of how to
5   file a notice of appearance on behalf of an entity that's not a
6   named party.
7           THE COURT:  The same way you file it for a named
8   party, otherwise how would you expect to get any notice of any
9   ruling that I make.
11:10 10         MS. HEROLD:  Because I'm counsel for plaintiff, so I
11  would be alerted.
12          THE COURT:  That's not the way it works.  You should
13  file a notice of appearance.
14          All right.  Let me hear your argument.
15          MS. HEROLD:  Well, the argument is a little bit
16  convoluted because plaintiff testified at length about his
17  company, Celestial, at his deposition and has testified that it
18  was pretty much defunct or nonfunctioning until after his
19  termination was forced by Dexter.  Now, because plaintiff
11:10 20  testified that way, Dexter is seeking records all the way back
21  to 1994, which has no bearing on his activities with Dexter
22  that led to his termination.
23          So to the extent that they're seeking documents that
24  show his income, plaintiff has agreed to produce those records,
25  but to the extent that Dexter thinks it needs all of his

 1 communications with his contacts or the work that he does for

 2 the federal government, I just don't see how those records are

 3 relevant to a claim for discrimination and a violation of the

 4 Family Medical Leave Act.  And Dexter hasn't articulated why

 5 they think they need records back from 1994 after plaintiff has

 6 testified that the company didn't do anything really until

 7 2018.  I'm not comfortable with having him produce confidential

 8 records that he is involved with with the federal government

 9 and NASA simply because Dexter asked and is curious.

11:12 10   If the Court finds that there's a nexus between his

 11 work all the way back from 1994, which is what they're

 12 currently asking for, obviously plaintiff will comply with the

 13 Court order, but the subpoena is grossly overbroad.

 14   THE COURT:  You say you have indicated you're willing

 15 to produce income records.  Are we talking about tax returns?

 16   MS. HEROLD:  Yes.  I put that in the motion.  We will

 17 produce the federal income tax returns and his sources of

 18 income, and that, of course, speaks to plaintiff's damages and

 19 how he has been able to mitigate them, but the rest of the

11:12 20 subpoena seeks things like his communication with his

 21 employers, his licenses to do businesses in other states.

 22 Plaintiff has already testified that there's another

 23 third-party gentleman that does all of these kind of setting up

 24 the ability to do business in other states.  The contents of

 25 Celestial contracts with NASA I don't think are going to allow

1    defendants to seek discoverable information in so far as it
2    goes to plaintiff's claims for discrimination and a violation
3    of the Family Medical Leave Act.  They just haven't been able
4    to establish the nexus.
5            THE COURT:  You've agreed to produce the tax returns.
6    And what is the time period you've agreed to?
7            MS. HEROLD:  We're asking the Court to set a time
8    period.  I had recommended the last 5 years because the issues
9    with plaintiff's permission, disability, need for medical
11:13 10    leave, didn't come up until about 2018.  Obviously, he doesn't
11    have '21 yet, but he does have 2018, '19, '18, '17, '16, which
12    gives a 2-year period of time where there wasn't an issue with
13    the plaintiff's performance and wasn't a need for this Family
14    Medical Leave Act.  So I think that's a relevant period of time
15    for the last 5 years, but we are asking the Court for guidance.
16            THE COURT:  All right.  Let me hear from the
17    defendant.  As to the tax returns, the relevant period that
18    you're seeking?
19            MS. STONES:  Thank you, your Honor.  This is Laura
11:14 20    Stones speaking for defendants.
21            I do want to be clear that plaintiff's counsel slash
22    company's counsel raised for the first time in their opposition
23    to defendant's Motion to Compel that they would be willing to
24    provide tax returns from the company.  This was never offered
25    in response to defendant's efforts to confer about the subpoena

```
 1    in advance of filing the Motion to Compel.
 2            As for the time scope, our focus is also 2018 onwards.
 3    Other years are relevant to plaintiff's employment at Dexter
 4    Southfield and his performance and loyalties during that time,
 5    which do have relevance to his claims because his job
 6    performance is certainly at issue, but we would certainly
 7    prioritize 2018 onward.  This was actually reflected in our
 8    e-mail communication with the company's counsel when we
 9    unilaterally offered ways we might be able to narrow the
11:15 10  subpoena.  We did not get a response to that and were forced to
11    file this motion.
12            THE COURT:  So 2018 through 2020?
13            MS. STONES:  Yes, your Honor.  We would prioritize
14    those years.  Our position is that other years that plaintiff
15    was employed at Dexter Southfield are also relevant, but our
16    priority is 2018, 2019, 2020, and if there are records
17    regarding 2021, I understand those would not be tax returns for
18    the entire year.  Those would also be relevant for the same
19    reasons as the tax returns for the previous years.
11:15 20          THE COURT:  He doesn't have a tax return for 2021 yet,
21    so I think that that's -- so 2018 through 2020 to be produced.
22            It would seem to me I would suggest that you get those
23    tax returns, review them, and then determine whether or not
24    there's anything else that's relevant.
25            MS. STONES:  We're certainly willing to consider that
```

1  approach.

2  I do want to respond to a couple of points that
3  plaintiff's counsel slash company's counsel made a minute ago,
4  particularly that plaintiff testified that the company was
5  essentially defunct, because that is not how defendants
6  understood plaintiff's testimony.  He testified that he was
7  spending hours every week, sometimes entire days, working on
8  his company when he was supposed to be a full-time director
9  level employee at Dexter Southfield.  So I want to correct that
11:17 10  for the record.

11  THE COURT:  So the motion is allowed, in part, and
12  denied, in part, to the extent that the tax returns for 2018
13  through 2020 are to be produced.  The rest is denied without
14  prejudice, to be renewed after reviewing the tax returns.

15  MS. HEROLD:  Understood.  Thank you, your Honor.

16  MS. STONES:  Thank you, your Honor.

17  THE COURT:  Moving on to 33, docket entry 33,
18  defendant's Motion to Compel.

19  MS. STONES:  Thank you, your Honor.  This is Laura
11:17 20  Stones again for defendant.  Defendant moves to compel
21  production of plaintiff following his second day of deposition
22  when he identified numerous categories of documents that were
23  responsive to the defendant's document request and had not been
24  produced.

25  Part of the reason that plaintiff had a second day of

|       |    |                                                                            |
|-------|----|----------------------------------------------------------------------------|
|       | 1  | deposition, there were a few reasons, but one was because                  |
|       | 2  | during the first day he admitted that he had several documents             |
|       | 3  | that were responsive to defendant's request and hadn't been                |
|       | 4  | produced.  So after he produced those records, we proceeded                |
|       | 5  | with the second day of deposition.                                         |
|       | 6  | During that second day he referenced numerous other                        |
|       | 7  | categories of documents that had not been produced, which were             |
|       | 8  | plainly responsive to defendant's requests.  Among the                     |
|       | 9  | categories of documents that he testified about include text               |
| 11:18 | 10 | messages with former Dexter Southfield employee Bob Vinny.                 |
|       | 11 | Defendant had specifically inquired about those records earlier            |
|       | 12 | in discovery.  Plaintiff's counsel had indicated to us that                |
|       | 13 | those records didn't exist.                                                |
|       | 14 | So when plaintiff referenced the existence of those in                     |
|       | 15 | deposition, we made it clear that we would be following up to              |
|       | 16 | attain those records, as they are responsive to a discovery                |
|       | 17 | request that we'd made back in October of 2020.                            |
|       | 18 | THE COURT:  Did you have a meet and confer about this?                     |
|       | 19 | MS. STONES:  No.  Thank you, your Honor.  This is                          |
| 11:19 | 20 | Laura Stones again.                                                        |
|       | 21 | We did follow-up after the second day of deposition to                     |
|       | 22 | convey our position that these categories of documents came up             |
|       | 23 | in the deposition and they were responsive to the discovery                |
|       | 24 | requests, so let's talk about it.  We did not get a response               |
|       | 25 | from plaintiff's counsel.  There's been a long history of                  |

Case 1:20-cv-10540-AK   Document 57   Filed 08/31/21   Page 12 of 14

12

    1    delays in discovery in this case.  So, once more than a week

    2    had elapsed, we did go ahead and move to compel, not because we

    3    were eager to bring this matter to the Court, but because we're

    4    just not interested in further delays or extensions in this

    5    case.  These discovery requests were served nearly 10 months

    6    ago.

    7            THE COURT:  I think you have to sit down and have a

    8    meet and confer.  Miss Herold, what's wrong with that?  These

    9    were referred to in the depositions, the text messages.  Can

11:20  10    you not sit down with your sister and discuss what can be

   11    produced?

   12           MS. HEROLD:  Again, if you look at my motion, the

   13    timeline here happens very quickly.  He was deposed and

   14    identified some documents on the 21st.  On the 22nd, we had

   15    e-mail communication about a meet and confer.  Then it just

   16    never happened.  Less than 10 days later, on a Saturday, this

   17    motion was filed.  Attorney Stones and I never had the

   18    opportunity to sit down and say, yes, plaintiff testified about

   19    having this X or Y category of documents, are they actually

11:20  20    relevant and lead to the discovery of admissible evidence.  He

   21    testified that he may have had notes in a box that he was going

   22    to look over and get over to me.

   23           Before we had the opportunity to even narrow down

   24    whether or not these things that plaintiff testified to were

   25    relevant, I was hit with a Motion to Compel seeking sanctions.

1  I had offered a date to meet and confer and I didn't get a
2  response.  So the meet and confer didn't get scheduled.
3  Instead, this motion landed on my desk.  I simply think that
4  the rule is broken and the timeline of events go from
5  April 21st for his second day of deposition to Saturday,
6  May 1st, a Motion to Compel being filed.
7           So I ask the Court, how high do I have to jump and how
8  quickly if I think the requests are overbroad?  I say let's
9  meet and confer.  I don't get a response.  It didn't happen.
10 Then I get a motion.  I think I'm doing my job here, but I'm
11 not even given the opportunity to narrow these requests or to
12 see if they're actually relevant.  I feel a bit bootstrapped
13 here.
14          THE COURT:  Docket entry 33 is denied without
15 prejudice, to be renewed after the meet and confer.  You're to
16 have the meet and confer within 10 days.
17          MS. HEROLD:  Thank you, your Honor.
18          THE COURT:  Anything related to expenses and
19 attorney's fees are denied without prejudice, to be renewed at
20 the end of the case.  That's to both motions, 30 and 33.
21          We stand in recess.  Please stay safe and stay well.
22          (Whereupon, the proceedings adjourned at 11:22 a.m.)

C E R T I F I C A T E

UNITED STATES DISTRICT COURT )

DISTRICT OF MASSACHUSETTS    )

I, Kristin M. Kelley, certify that the foregoing is a correct transcript from the record of proceedings taken August 2, 2021 in the above-entitled matter to the best of my skill and ability.

/s/ Kristin M. Kelley                August 31, 2021

Kristin M. Kelley, RPR, CRR          Date
Official Court Reporter