IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                  )
RONALD F. DANTOWITZ,                 )
                                                  )
                        Plaintiff,          )
v.                                               )
                                                  )        CIVIL ACTION NO. 20-CV-10540-AK
DEXTER SOUTHFIELD, INC.,            )
CARMEN ALIBER, and                    )
STEWART TUCKER,                         )
                                                  )
                        Defendants.       )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**SCHWARTZ HANNUM PC**
William E. Hannum III (BBO No. 643155)
(whannum@shpclaw.com)
Anthony L. DeProspo, Jr. (BBO No. 644668)
(adeprospo@shpclaw.com)
11 Chestnut Street
Andover, MA 01810
Telephone: (978) 623-0900
Facsimile: (978) 623-0908

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... ii

TABLE OF AUTHORITIES ................................................................................... iii

Factual Overview ................................................................................................... 1

Summary of Plaintiff's Claims .............................................................................. 2

ARGUMENT ........................................................................................................... 3

    I.    **The School Did Not Terminate Plaintiff's Employment On The Basis Of Plaintiff's Alleged Handicap (Count I)** ................................................ 4

        A.    **Plaintiff Cannot Establish That He Is "Handicapped" Under Massachusetts Law.** ................................................................. 5

        B.    **Plaintiff Is Not A "Qualified" Handicapped Person.** ............................. 7

        C.    **Plaintiff Cannot Establish Any Connection Between His Alleged Handicap And His Employment Termination.** ...................... 8

        D.    **Plaintiff Cannot Establish That The School's Legitimate, Non-Discriminatory Reasons For Terminating His Employment Were Pretext.** ...................... 9

    II.    **The School Did Not Terminate Plaintiff's Employment Because Plaintiff's Son Has Autism Or Any Alleged Handicap (Count II)** ................................ 11

    III.  **Plaintiff Cannot Establish A Retaliation Claim Under Massachusetts Discrimination Law (Count III)** ...................................................... 12

    IV.  **Plaintiff Cannot Establish Claims Under Chapter 151B Against The Individual Defendants (Count IV and Count V)** ...................................... 13

    V.   **Plaintiff Cannot Establish That The School Interfered With Plaintiff's FMLA Rights (Count VI)** ...................................................... 14

    VI.  **Plaintiff Cannot Establish A *Prima Facie* Case Of FMLA Retaliation (Count VII)** ...................................................... 16

        A.    **Plaintiff Cannot Establish A Causal Connection Between His FMLA Leave And His Termination.** ...................................... 16

        B.    **Plaintiff Cannot Establish That The School's Legitimate, Non-Discriminatory Reasons Are Pretextual.** ...................... 18

    VII.**Plaintiff's Claim For Economic Damages Should Be Dismissed Because Plaintiff Has Suffered No Damages** ...................................... 19

CONCLUSION ................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

Araujo v. UGL Unicco-Unicco Operations, 53 F. Supp. 3d 371, 384 (D. Mass. 2014).............. 13

Archambault v. Kindred Rehab Servs., Inc., 2016 WL 4555590 at *5 (D. Mass. Aug. 31, 2016)

...................................................................................................................................... 18

Beal v. Bd. of Selectmen of Hingham, 419 Mass. 535, 540-41 (1995)...................................... 4

Call v. Fresenius Medical Care Holdings, Inc., 534 F. Supp. 2d 184, 192 (D. Mass. 2008)........ 15

Chacon v. Brigham and Women's Hospital, 99 F. Supp. 3d 207, 214 (D. Mass. 2015).............. 15

Chase v. U.S. Postal Serv., 149 F. Supp. 3d 195, 208-211 (D. Mass. 2016)............................... 16

Chase v. U.S. Postal Service, 843 F.3d 553, 558 (1st Cir. 2016) ................................................. 16

Colburn v. Parker Hannifin/Nichols Portland Div., 429 F. 3d 325, 335 n. 9 (1st Cir. 2005)....... 16

Davidowicz v. 4M Fruit Dist., Inc., 93 Mass. App. Ct. 1117 (2018) ......................................... 13

Flagg v. AliMed, Inc., 466 Mass. 23, 27 (2013)....................................................................... 11

Gourdeau v. City of Newton, 238 F. Supp. 3d 179, 183-196 (D. Mass. 2017) ........................... 16

Haglund v. Estee Lauder Cos., Inc., 466 F. Supp. 3d 292, 298 (D. Mass. 2020) ........................ 18

Henry v. United Bank, 686 F.3d 50, 57 (1st Cir. 2012)............................................................ 17

Hodgens v. General Dynamics Corp., 144 F.3d 151, 160 (1st Cir. 1998)............................. 16, 18

Kleya v. Karl Storz Endovision, Inc., 436 F. Supp. 3d 455, 457 (D. Mass. 2020)........................ 8

Kolb v. Goldring, Inc., 694 F.2d 869, 872 (1st Cir. 1982) ........................................................ 19

Lashgari v. Zoll Medical, 84 Mass. App. Ct. 1106 (2013) ....................................................... 11

Lopez v. Comm., 463 Mass. 696, 713 (2012)........................................................................... 13

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) .......................................... 4, 9, 10, 16

Mesnick v. Gen. Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991).................................................. 19

Miceli v. JetBlue Airways Corp., 914 F. 3d 73, 84 (1st Cir. 2019).............................................. 10

Mole v. Univ. of Massachusetts, 442 Mass. 582, 591-92 (2004) ............................................... 12

Pettiti v. Mass. Dep't of Mental Health, 859 F. Supp. 33, 41 (D. Mass. 1993).......................... 12

Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) ................................................................. 3

Ramirez v. The Chase Manhattan Bank, N.A., 109 F. Supp. 2d 62, 66 (D.P.R. 2000)............... 20

Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 449 (2002) ......................................... 5

Saari v. Allegro Microsytems, LLC, 436 F. Supp. 3d 457, 466 (D. Mass. 2020) ....................... 13

Soni v. Wespiser, 239 F. Supp. 3d 373, 388 (D. Mass. 2017) ....................................................... 14

Soto-Feliciano v. Villa Cofresi Hotels, Inc., 779 F.3d 19, 32 (1st Cir. 2015) ............................. 18

Stephens v. C.I.T. Group/Equip. Fin., Inc., 955 F.2d 1023, 1029 (5th Cir. 1992) ...................... 20

Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009) ...................................................... 4

Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008) .................................................... 4

Thompson v. Gold Medal Bakery, Inc., 989 F.3d 135, 145 (1st Cir. 2021) ................................. 19

Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 481-82 (1st Cir. 1993) ........................................... 10

Ventura v. Hanitchak, 719 F. Supp. 2d 132, 139 (D. Mass. 2010) ................................................ 6

Wheeler v. Pioneer Developmental Servs., 349 F. Supp. 2d 158, 164 (D. Mass. 2004) .............. 15

Wheelock College v. MCAD, 371 Mass. 130, 137-39 (1976) ........................................................ 4

Woodason v. Town of Norton School Committee, 2003 WL 554332 at *4 (MCAD Feb. 19,
    2003) ........................................................................................................................................ 14

Zades v. Lowe's Home Centers, Inc., 446 F. Supp. 2d 29, 42 (D. Mass. 2006) ........................... 6

**Statutes**

Fed. R. Civ. P. 56(a), (c) ............................................................................................................... 6

G.L. c. 151, § 4(4A) ...................................................................................................................... 17

G.L. c. 151B, § 1(17), (19) ............................................................................................................. 8

**Regulations**

29 U.S.C. § 2615(a)(1) ................................................................................................................. 17

**Factual Overview**[1]

Defendant Dexter Southfield, Inc. (the "School") terminated Plaintiff Ronald Dantowitz's employment in January 2019 due to his performance failures and his unprofessional and insubordinate behavior.  Plaintiff, an astronomer, served as the School's Director of the Clay Center Observatory (the "CCO") for almost twenty (20) years, during which he had complete autonomy at the CCO.  Plaintiff answered to no one, and he liked it that way.

In November 2017, the School requested that its employees draft job descriptions to formalize each employee's responsibilities and performance expectations.  In January 2018, facing increased oversight, Plaintiff provided the School with a January 17, 2018 letter, purportedly detailing a neuropsychological examination conducted *almost four (4) years earlier*. Per that letter, in 2014 Plaintiff had symptoms consistent with a mild autism spectrum disorder. Plaintiff testified that the letter provided him an "easy out" for avoiding School responsibilities that he found objectionable.

A new performance management appraisal system introduced in 2018 also came with a new reporting structure.  In Spring 2018, Plaintiff began reporting to Defendant Stewart Tucker, Assistant Head of School.  Thus, when Plaintiff failed or refused to meet performance expectations in mid-2018, his shortcomings became apparent.  In June 2018, Plaintiff committed to have the CCO's flagship telescope ready for the Fall 2018 semester.  Rather than fix the telescope, however, Plaintiff concentrated his efforts on a side venture where he traveled coast to coast promoting Celestial Computing, Inc. ("CCI"), a technology business Plaintiff founded in 1994.  On August 30, 2018, the last day of summer break, Plaintiff tried to "wake up" the telescope for the first time in almost three months.  The telescope failed, and Plaintiff disclosed

---

[1]       For a detailed recitation of the facts, Defendants refer the Court to their Local Rule 56.1 Statement of Undisputed Material Facts ("SOF"), filed herewith.

for the first time that the telescope was not operational and would not be for many months. The School was unable to provide academic programs that relied on that piece of equipment.

Also on August 30, 2018, Plaintiff requested an immediate leave of absence to care for his son, who has autism. The School granted his request, which Plaintiff took as FMLA leave. Rather than use his leave to care for his son, as Plaintiff had explained was needed, Plaintiff traveled extensively to promote CCI. On December 14, 2018, Plaintiff returned to work at the School, and immediately balked at fulfilling his job responsibilities. Defendant Carmen Aliber, the School's Director of Human Resources, and Mr. Tucker met with Plaintiff several times to discuss the School's expectations. Plaintiff's repeated performance failures and his unprofessional and insubordinate behavior during those meetings caused the School to terminate Plaintiff's employment.[2] Since then, Plaintiff has not applied for another job but has worked for CCI, which reported almost $3,000,000 in gross income for 2019 and 2020.

<u>**Summary of Plaintiff's Claims**</u>

Plaintiff has brought seven (7) claims, including five (5) under the Mass. anti-discrimination statute, Chapter 151B, alleging the School discriminated against him based on his alleged handicap[3] and/or association with a handicapped person (his son), as well as retaliation for engaging in unidentified protected activity. Plaintiff also claims the School violated the Family and Medical Leave Act ("FMLA") by interfering with his FMLA rights and by retaliating against him. Plaintiff seeks $4,000,000 in damages, including back pay and front pay to age 65.

---

[2]   *E.g.*, Questioning whether teaching was still one of his jobs; Stating that he did not check his voicemails; Stating that he did not read his emails; Advising that he "will get to it when I can" in response to questions about him prioritizing tasks; and repeatedly asking: "How late is late?" in response to concerns that he did not complete tasks on time.

[3]   Defendants use the term "handicap" throughout this memorandum of law because that is the term used in the relevant Massachusetts statute, G.L. c. 151B, § 4.

Plaintiff's claims lack support in the summary judgment record. *E.g.*, Plaintiff claims the School refused to grant him a reasonable accommodation for his alleged "disability." But Plaintiff never identified his alleged "disability." Indeed, upon receiving his January 17, 2018 medical evaluation from 2014, the School asked him whether he required accommodations and he said he did not. Plaintiff also claims the School discriminated against him on the basis of his son's disability. That is beyond absurd. Plaintiff cannot identity even one instance where the School expressed animus toward Plaintiff's son (born in 2010), or autism in general. Plaintiff's FMLA claims are even less sound. The School bent over backwards to accommodate Plaintiff's FMLA request, insisting that Plaintiff not report for work so Plaintiff could care for his son.

Plaintiff's claims rest on the faulty premise that the School terminated Plaintiff's employment for reasons other than his poor performance and insubordination. On the contrary, the School had legitimate, non-discriminatory, non-retaliatory reasons for terminating Plaintiff's employment: Plaintiff's poor performance before and after his FMLA leave and his repeated "condescending and dismissive" conduct upon his return to work. Plaintiff's alleged handicap (or his son's) and Plaintiff's FMLA leave played no role in the School's decision to terminate his employment. As a result, and for the reasons set forth herein, Defendants are entitled to summary judgment as a matter of law.

## ARGUMENT

Rule 56 provides that a movant is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" based on the pleadings, depositions, documents, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(a), (c); see also Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008). To defeat a motion for summary judgment, the evidence offered by Plaintiff cannot be

merely colorable or speculative.  Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008).

"Conclusory allegations, improbable inferences, and unsupported speculation" are insufficient to

create a genuine issue of material fact to survive summary judgment.  Sullivan v. City of

Springfield, 561 F.3d 7, 14 (1st Cir. 2009) (additional citations omitted).

Defendants are entitled to summary judgment because Plaintiff cannot establish the

elements of his claims.  There is no evidence that the legitimate reasons for Plaintiff's

termination – Plaintiff's repeated insubordination and unprofessional behavior – were merely

pretext for unlawful discrimination or retaliation under Massachusetts discrimination laws or the

FMLA.  Accordingly, the Court should dismiss Plaintiff's claims.

I.      **The School Did Not Terminate Plaintiff's Employment On The Basis Of Plaintiff's Alleged Handicap (Count I)**

In cases alleging unlawful termination due to a handicap under Chapter 151B of

Massachusetts Law ("Chapter 151B"), Massachusetts courts follow the three-part burden-

shifting framework set forth by the U.S. Supreme Court in McDonnell Douglas Corp. v. Green,

411 U.S. 792 (1973).  See Beal v. Bd. of Selectmen of Hingham, 419 Mass. 535, 540-41 (1995);

Wheelock College v. MCAD, 371 Mass. 130, 137-39 (1976).  Under the McDonnell Douglas

framework, Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.

Beal, 419 Mass. at 541.  If Plaintiff successfully establishes every element of the *prima facie*

case, then the burden shifts to the School to articulate a legitimate, non-discriminatory reason for

its employment actions.  Wheelock College, 371 Mass. at 138.  If the School meets this burden

of production, then Plaintiff must show by a preponderance of the evidence that the School's

proffered reasons are mere pretext for discrimination.  Id. at 139.

To establish a *prima facie* case of handicap discrimination, Plaintiff must show that (1)

he is handicapped within the meaning of Chapter 151B; (2) he is qualified to perform the

essential functions of his job, with or without a reasonable accommodation; and (3) he was discharged because of his handicap.  Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 449 (2002).  Plaintiff's discrimination claim fails on each of these three grounds: he cannot show that he is "handicapped," or that he was capable of performing the essential functions of his job with or without an accommodation, or that he was terminated "because of" any alleged handicap.

Even if Plaintiff could establish a *prima facie* case, Plaintiff's claim would still fail because he cannot show that the School's legitimate, non-discriminatory reasons for terminating his employment – Plaintiff's poor performance, insubordination, and unprofessional conduct – were pretext.  Thus, the Court should dismiss Count I as a matter of law.

### A.   Plaintiff Cannot Establish That He Is "Handicapped" Under Massachusetts Law.

A person is "handicapped" under Chapter 151B if the person (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of having such impairment, or (3) is regarded by his employer as having a qualifying impairment.  See G.L. c. 151B, § 1(17), (19).  In this case, the **only** evidence of Plaintiff's alleged handicap is Dr. Pamela Friedman's January 17, 2018 letter, describing Plaintiff's 2014 neuropsychological examination.  (SOF, ¶ 17).  This letter does not contain a medical "diagnosis," but rather only "diagnostic impressions."  That is a critical distinction.  A "diagnostic impression" is a provisional diagnosis, wherein there is "enough information to make a working diagnosis but the clinician wishes to indicate a significant degree of scientific uncertainty."  DSM-IV-TR, American Psychiatric Association, 2000.

Plaintiff testified that for almost twenty (20) years, he performed "exceptionally well" in his role as CCO Director, both before and after the 2014 evaluation.  (SOF, ¶ 25).  In January 2018, when Plaintiff disclosed Dr. Friedman's letter for the first time, Plaintiff told Ms. Aliber:

> I have no doubts about my ability to communicate or teach astronomy, and am confident that I do my job well!  I am not complaining but communicating to you so that you might understand my challenges, ***all of which I have overcome***.

(SOF, ¶ 21) (emphasis added).  Indeed, Dr. Friedman's letter noted that Plaintiff had "demonstrated remarkable compensatory strategies" and that he was "extremely intelligent and committed to improving himself, both of which have enabled him to compensate for his difficulties and function well in multiple roles."  (SOF, ¶ 18).

On February 14, 2018, Ms. Aliber met with Plaintiff to discuss this letter.  (SOF, ¶ 24). Ms. Aliber asked Plaintiff if he needed any accommodations, and Plaintiff said he did not.  (Id.) That closed the book on that issue, until December 13, 2018, when Plaintiff requested that he be allowed to record his December 14, 2018 meeting with Ms. Aliber and Mr. Tucker (or have another employee present).  (SOF, ¶ 60).  Ms. Aliber responded that she did not understand Plaintiff to have a disability or to have requested an accommodation previously, but that she would be happy to talk about accommodations if Plaintiff wanted to request one.  (SOF, ¶ 61). Ms. Aliber further stated that she and Mr. Tucker would not agree to the meeting being recorded or another faculty member being present, but that Plaintiff could take breaks during the meeting as needed to take notes.  (SOF, ¶ 61).  Plaintiff did not request any breaks or take any notes during the meeting.  (SOF, ¶ 63).

Other than the January 2018 letter, which is not a diagnosis, Plaintiff "has produced no medical records describing the nature of [his] [condition] or its effects on [his] daily functioning."  Ventura v. Hanitchak, 719 F. Supp. 2d 132, 139 (D. Mass. 2010); see also Zades v. Lowe's Home Centers, Inc., 446 F. Supp. 2d 29, 42 (D. Mass. 2006) (holding that plaintiff's conclusory statement that she was disabled, without any documentary medical evidence, was insufficient to establish a disability).  Notably, Dr. Friedman did not recommend in 2014 that

Plaintiff seek accommodations at the School, nor did Dr. Friedman suggest that Plaintiff should seek additional time to complete his work.  (SOF, ¶ 19).

It is telling that Plaintiff disclosed his 2014 medical evaluation concurrently with the School's increased focus on Plaintiff's (and all employees') job responsibilities and professional standards.  When asked to teach physics in or around 2016 (a course Plaintiff had never taught), Plaintiff testified that he believed he had an "easy out" and could avoid the assignment if he disclosed the results of Dr. Friedman's evaluation.  (SOF, ¶ 23).  Plaintiff's testimony suggests Dr. Friedman's 2014 medical evaluation was a means to avoid responsibility and oversight. Contrary to Dr. Friedman's 2014 recommendation, Plaintiff never worked with a clinician with experience in autism spectrum disorders, and he did not seek treatment with Dr. Friedman or any other provider following receipt of the 2014 letter.  (SOF, ¶ 20).

**B.      Plaintiff Is Not A "Qualified" Handicapped Person.**

Even if Plaintiff could establish he were "handicapped" under Massachusetts law (which he cannot), Plaintiff cannot make the required showing that he was capable of performing the essential functions of his job with or without accommodation.  G.L. c. 151B, §§ 1(16), 4(16).

As part of his job, Plaintiff acknowledged the following essential responsibilities:

- •      To perform quality work within deadlines;

- •      To interact professionally with other employees, including administrators;

- •      To communicate and coordinate work efforts with other employees including administrators; and

- •      To inform an administrator if a particular deadline could not be met.

(SOF, ¶ 15).  In 2018, in connection with Dr. Friedman's letter, Plaintiff did not request additional accommodations.  (SOF, ¶ 24).  Plaintiff has testified that whatever "challenges " existed, he had "overcome" them.  (SOF, ¶ 21).

But Plaintiff was unable to meet his own self-identified job expectations.  He failed to ensure that the CCO's flagship telescope was operational for the Fall 2018 semester, as he had promised.  (SOF, ¶ 31).  He also failed to keep administration updated on his progress (or lack thereof).  (SOF, ¶ 30).  When the School attempted to address these problems, Ms. Aliber testified that Plaintiff "redirect[ed] the conversation away from his responsibilities and accountability."  (SOF, ¶ 87).  Thus, Plaintiff failed to perform his core job responsibilities.

### C.      Plaintiff Cannot Establish Any Connection Between His Alleged Handicap And His Employment Termination.

Even if Plaintiff were "handicapped" and "qualified" for purposes of Chapter 151B, Plaintiff cannot establish that the School terminated his employment "because of" his alleged handicap.  "[N]otice of a medical condition does not, standing alone, suffice to show that Defendants [took actions] *because of* [plaintiff's] disabilities and/or handicaps."  Kleya v. Karl Storz Endovision, Inc., 436 F. Supp. 3d 455, 457 (D. Mass. 2020) (emphasis in original).

Plaintiff provided the School with Dr. Friedman's letter on January 19, 2018.  (SOF, ¶17).  But a few weeks later, on February 5, 2018, he advised the School that he had "overcome" his challenges and did not require any accommodations.  (SOF, ¶ 21).  Following his meeting with Ms. Aliber on February 14, 2018, Plaintiff never again discussed with the School his alleged mild autism spectrum disorder, nor did he provide the School with additional documentation about it.  (SOF, ¶ 24).  Plaintiff's poor job performance was exposed in August 2018, after he failed to provide timely notice to administration and have the CCO's flagship telescope ready, which ultimately led to certain academic programming being suspended.  (SOF, ¶¶ 31-32).[4]  He did not allege, nor does he allege now, that the School's dissatisfaction with his

---

[4]      Plaintiff has testified that in July 2018, while the School's flagship telescope lay in pieces, he spent at least eight days on two trips to California for Celestial Computing, Inc., admittedly working 10-12 hours per day.  (SOF, ¶ 38).  Plaintiff further testified that in August 2018, he spent at least five days on trips to Texas and California to

failure to maintain properly the flagship telescope is somehow associated with his alleged autism disorder.

Plaintiff's job performance declined precipitously in January 2019.  During that month, Ms. Aliber and Mr. Tucker met with Plaintiff on at least three occasions to discuss the School's expectations.  (SOF, ¶¶ 69- 83).  In his discussions with them, Ms. Aliber noted that Plaintiff "demonstrated extremely unprofessional behavior.  He was insubordinate, and [the School] made the determination that his employee conduct did not align with the expectations of the School." (SOF, ¶ 84).  In those meetings, Defendants did not discuss Plaintiff's alleged "handicap" (or his son's), nor did they discuss autism in general.  (SOF, ¶¶ 73, 78).  Rather, they discussed the tasks Plaintiff had failed to perform, as well as his increasingly unprofessional and insubordinate behavior.  (SOF, ¶¶ 69-83).  The School terminated Plaintiff on January 22, 2019, purely on the basis of Plaintiff's poor performance and insubordination.  (SOF, ¶¶ 84-88).  Plaintiff cannot identify any evidence that the School terminated him based on his alleged "handicap."

> **D.    Plaintiff Cannot Establish That The School's Legitimate, Non-Discriminatory Reasons For Terminating His Employment Were Pretext.**

Even if Plaintiff could establish a *prima facie* case of discrimination on the basis of handicap under Chapter 151B, Plaintiff's claim still fails because the School had legitimate, non-discriminatory reasons for terminating Plaintiff's employment, *i.e.*, Plaintiff's failure to perform his core job responsibilities before and after his FMLA leave, and his repeated insubordinate and unprofessional conduct upon his return to work following his leave.

In assessing pretext under the McDonnell Douglas burden-shifting framework, the focus is not on a plaintiff's subjective feelings about the employment action, but on whether the

---

generate business and/or complete work for CCI.  (SOF, ¶ 39)  During Plaintiff's trip to California, Plaintiff admittedly worked "approximately 10-12 hours per day." (Id.)  On August 31, 2018, one day after notifying the School that the flagship telescope was non-operational, Plaintiff registered CCI to do business in the state of Colorado.  (SOF, ¶ 40).

employer had a sincere belief in its stated reasons.  See Miceli v. JetBlue Airways Corp., 914 F. 3d 73, 84 (1st Cir. 2019) ("Chapter 151B was never intended to 'protect against all instances of arbitrary action or from poor managerial judgment'"); Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 481-82 (1st Cir. 1993) (holding that, under McDonnell Douglas framework, a plaintiff's subjective belief that discrimination occurred is insufficient to sustain a claim as a matter of law).

Here, Plaintiff failed or refused to perform his work consistent with the School's (and his own) expectations, and exhibited continuing "condescending and dismissive" behavior in his meetings with Ms. Aliber and Mr. Tucker in January 2019.  (SOF, ¶ 87).  In those meetings, Plaintiff demonstrated multiple examples of unprofessional and insubordinate behavior toward Mr. Tucker and Ms. Aliber:

- Questioning whether teaching was still one of his job expectations;

- Stating that he had not checked his voicemails since 2017;

- Stating that he did not always read his emails, especially if they were "too long;"

- Advising Mr. Tucker and Ms. Aliber that he "will get to it when I can" in response to questions concerning Plaintiff prioritizing tasks; and

- Repeatedly asking: "How late is late?" in response to concerns that Plaintiff did not complete tasks on time.

(SOF, ¶¶ 70, 71, 75, 76, 81, 82).

Plaintiff  cannot possibly show that his 2014 medical evaluation played a role in his termination.  The School offered him employment for the 2018-19 school year, four (4) months *after* Plaintiff disclosed Dr. Freidman's 2014 medical evaluation.  (SOF ¶ 25).  Plaintiff can identify no evidence, other than his subjective feelings, that the School's actions were insincere, pretextual, or that they involved any alleged handicap.

II.     **The School Did Not Terminate Plaintiff's Employment Because Plaintiff's
        Son Has Autism Or Any Alleged Handicap (Count II)**

In order to establish a claim of associational discrimination under Chapter 151B, Plaintiff
must show that he is the victim of discriminatory animus toward a handicapped person with
whom he associates.  Flagg v. AliMed, Inc., 466 Mass. 23, 27 (2013).  "Conclusory or
speculative" allegations regarding associational discrimination are insufficient to raise a right to
relief.  Lashgari v. Zoll Medical, 84 Mass. App. Ct. 1106 (2013) (Rule 1:28 decision).

Plaintiff's associational discrimination claim rests solely on the allegation that the School
denied Plaintiff's request for a reasonable accommodation to care for his son.  (Complaint, ¶ 96).
That is demonstrably false.  On August 30, 2018, Plaintiff requested an immediate leave of
absence to care for his son.  (SOF, ¶ 42).  Ms. Aliber immediately called Plaintiff and advised
him that he could either take FMLA leave, or take leave pursuant to the School's personal leave
of absence policy.  (SOF, ¶ 44).

Thereafter, Ms. Aliber provided Plaintiff with the applicable FMLA forms, and requested
that he clarify his intent to take leave.  (SOF, ¶ 45).  He did not do so until September 14, 2018,
when he emailed Ms. Aliber: **"I need to take FMLA leave to care for my son, beginning on or
before October 1, preferably from my perspective as soon as possible, and continuing for
12 weeks thereafter."**  (SOF, ¶ 46).  The School granted Plaintiff a personal leave of absence
effective that day, and Ms. Aliber provided him with instructions on how to convert his personal
leave to FMLA leave, which Plaintiff ultimately did.  (SOF, ¶ 47).

There is no evidence in the summary judgment record that anyone at the School
expressed animus toward Plaintiff's son or autism in general.  Plaintiff has testified that in
general he did not discuss his son or his son's medical condition with employees at the School,
and he does not recall anyone ever saying anything disparaging or negative about his son or his

son's condition.  (SOF, ¶ 42).  Plaintiff's associational discrimination claim is without merit.

The Court should dismiss Count II as a matter of law.[5]

### III.     Plaintiff Cannot Establish A Retaliation Claim Under Massachusetts Discrimination Law (Count III)

In order to establish a *prima facie* case of retaliation under Chapter 151B, Plaintiff must

demonstrate that he engaged in protected activity, he suffered some adverse action, and there is a

"causal connection" between his protected activity and the adverse action.  Mole v. Univ. of

Massachusetts, 442 Mass. 582, 591-92 (2004).  Here, Plaintiff cannot demonstrate that he

engaged in any activity protected by Chapter 151B, and even if he could, he cannot establish the

necessary "causal connection" between any such activity and his termination.

Plaintiff fails to identify the specific activity upon which he bases his retaliation claim.

In his Complaint, Plaintiff claims that the School terminated him because he requested

accommodations.  (Complaint, ¶ 103).  But Plaintiff testified that he never sought

accommodations following disclosure of Dr. Friedman's 2014 medical evaluation.  (SOF, ¶ 24).

Plaintiff's retaliation claim fails on that basis alone.

Even if Plaintiff could establish that he engaged in protected activity, he could not show

he was terminated *because* of such activity.  The mere fact that one event followed another is not

sufficient to establish the necessary causal link.  Mole, 442 Mass. at 595.  Plaintiff cannot

identify any evidence that the School's actions were motivated by any such protected activity,

rather than Plaintiff's performance failures and his unprofessional and insubordinate behavior.

Pettiti v. Mass. Dep't of Mental Health, 859 F. Supp. 33, 41 (D. Mass. 1993) ("It is well

established that engaging in protected activity does not provide immunity for subsequent

---

[5]     To the extent Plaintiff relies on an allegation that Mr. Tucker "pressured" Plaintiff to avoid taking time off to care for his son in 2014 (see Complaint, ¶ 11), any such claim would be barred by the applicable statute of limitations.  See G.L. c. 151B, § 9.

unsatisfactory performance and misconduct.").  Again, the School terminated Plaintiff's employment for legitimate, non-discriminatory reasons, and he can point to *no* evidence that the School's reasons were pretextual.  Thus the Court should dismiss Count III as a matter of law.

## IV.   Plaintiff Cannot Establish Claims Under Chapter 151B Against The Individual Defendants (Count IV and Count V)

Plaintiff cannot make the evidentiary showing necessary to support either of his two claims against the individual Defendants, Ms. Aliber and Mr. Tucker.  Such claims require evidence that the individuals committed a "wholly individual and distinct wrong … separate and distinct from the claim in main."  Lopez v. Comm., 463 Mass. 696, 713 (2012) (citations omitted).  Here, Plaintiff has not alleged any acts of discrimination by Ms. Aliber or Mr. Tucker separate and distinct from the School.  Because his claims against Ms. Aliber and Mr. Tucker, and the School, are premised on the same conduct, his aiding and abetting claim fails as a matter of law.  Saari v. Allegro Microsytems, LLC, 436 F. Supp. 3d 457, 466 (D. Mass. 2020).[6]

Plaintiff's claim rests on one purely conclusory allegation, that "Defendants unlawfully aided and abetted the School's discriminatory behavior."  (Complaint, ¶ 106).  That is the totality of Plaintiff's claim, and it is insufficient to survive summary judgment.  See Araujo v. UGL Unicco-Unicco Operations, 53 F. Supp. 3d 371, 384 (D. Mass. 2014) (conclusory aiding and abetting allegations insufficient to withstand motion to dismiss); see also Davidowicz v. 4M Fruit Dist., Inc., 93 Mass. App. Ct. 1117 (2018) (Rule 1:28 decision) (aiding and abetting claim dismissed at summary judgment).  Because Plaintiff's Complaint fails to plead facts that show two distinct acts by different parties in a common scheme to discriminate, Plaintiff's aiding and

---

[6]   An aiding and abetting claim is "entirely derivative" of an underlying discrimination claim.  Lopez, 463 Mass. at 713.  Because Plaintiff cannot prevail on his underlying discrimination claims, Plaintiff's aiding and abetting claim fails as well.

abetting claim fails.  See Soni v. Wespiser, 239 F. Supp. 3d 373, 388 (D. Mass. 2017).  The

Court should dismiss Count IV as a matter of law.

Plaintiff's claim of "threats, coercion, and intimidation" in violation of Section 4(4A) of

Chapter 151B is similarly baseless.  Absent direct evidence of discrimination, a finding of

liability under Section 4(4A) requires that a plaintiff show that an individual acted with

"deliberate disregard" for his rights under Ch. 151B, allowing an inference that the individual

intended to discriminate or interfere with plaintiff's rights.  Woodason v. Town of Norton School

Committee, 2003 WL 554332 at *4 (MCAD Feb. 19, 2003).  There is no such evidence here.

On the contrary, the record shows that following receipt of his medical evaluation in

January 2018, Ms. Aliber immediately contacted Plaintiff to discuss the matter.  (SOF, ¶ 21).

Ms. Aliber promptly followed up with him, and repeatedly invited further discussions and

accommodation requests, all of which Plaintiff declined.  (SOF, ¶ 24).  The same holds true for

Ms. Aliber's handling of his FMLA leave.  Ms. Aliber worked promptly and diligently to ensure

that Plaintiff had the information necessary to make an informed decision.  (SOF, ¶¶ 44-47).

When Plaintiff demanded he be allowed to take leave "immediately," Ms. Aliber facilitated that.

Likewise, Mr. Tucker was supportive after Plaintiff advised the School for the first time

that the flagship telescope was non-operational.  (SOF, ¶ 43).  Mr. Tucker's focus was on

supporting Plaintiff's need to take leave, and ensuring that academic programming was in place.

(Id.)  There is no evidence that Ms. Aliber or Mr. Tucker, in their individual capacities,

intentionally violated G.L. c. 151, § 4(4A).  The Court should dismiss Count V.

## V.      Plaintiff Cannot Establish That The School Interfered With Plaintiff's FMLA Rights (Count VI)

To succeed on his FMLA "interference" claim pursuant to 29 U.S.C. § 2615(a)(1),

Plaintiff must show (1) he was eligible for FMLA; (2) his employer was covered by the FMLA;

(3) he gave his employer appropriate notice; and (4) his employer denied him benefits to which he was entitled under the FMLA. Call v. Fresenius Medical Care Holdings, Inc., 534 F. Supp. 2d 184, 192 (D. Mass. 2008) (citing Wheeler v. Pioneer Developmental Servs., 349 F. Supp. 2d 158, 164 (D. Mass. 2004)).[7] Plaintiff cannot show that the School denied him FMLA benefits.

On August 30, 2018, the day Plaintiff advised the School that the flagship telescope was non-operational, Plaintiff requested an immediate leave of absence. (SOF, ¶ 42).[8] Shortly thereafter, Ms. Aliber requested that he clarify whether he intended to take FMLA leave or personal leave pursuant to the School's leave of absence policy. (SOF, ¶ 44). Plaintiff subsequently decided to take FMLA leave, and Ms. Aliber immediately provided him with the applicable forms. (SOF, ¶ 45).

On September 14, 2018, Plaintiff emailed Head of School Todd Vincent and Ms. Aliber: **"I need to take FMLA leave to care for my son, beginning on or before October 1, preferably from my perspective as soon as possible, and continuing for 12 weeks thereafter."** (SOF, ¶ 46) (emphasis in original). The School granted Plaintiff a personal leave of absence effective that day, September 14, 2018, and Ms. Aliber provided him with instructions on how to convert his personal leave to FMLA leave, which he did. (SOF, ¶ 47).[9]

It is undisputed that Plaintiff took FMLA leave for twelve (12) weeks, until December 14, 2018, when he returned to work at the School. (SOF, ¶ 48). Accordingly, Plaintiff's FMLA

---

[7]     To the extent that Plaintiff's FMLA interference claim is merely a "repackaging" of his FMLA retaliation claim, it should be dismissed. Chacon v. Brigham and Women's Hospital, 99 F. Supp. 3d 207, 214 (D. Mass. 2015).

[8]     Plaintiff claims he took FMLA leave "to care for *himself* and his son." (Complaint, ¶ 114) (emphasis added). There is no evidence to support any claim that Plaintiff took leave to care for himself.

[9]     While on FMLA leave, from September 14, 2018 to December 13, 2018, Plaintiff testified that he took at least four business trips (for a total of more than two weeks) to Virginia and various locations in California to generate business for and/or to complete work for CCI. (SOF, ¶ 48). During his three trips to California, Plaintiff admittedly worked "10-12 hours a day" for CCI. (Id.) Clearly, Plaintiff did not use his FMLA leave only to "care for [his] son." (SOF, 46).

interference claim lacks any basis in fact.  The Court should dismiss Count VI of Plaintiff's

Complaint as a matter of law.

## VI.     Plaintiff Cannot Establish A *Prima Facie* Case Of FMLA Retaliation (Count VII)

The First Circuit applies the <u>McDonnell Douglas</u> burden-shifting framework to FMLA

retaliation claims.  In order to establish a *prima facie* case of FMLA retaliation, Plaintiff must

show that (1) he availed himself of a protected right under the FMLA; (2) he was adversely

affected by an employment decision; and (3) there is a "causal connection" between the

employee's protected activity and the adverse action.  <u>Chase v. U.S. Postal Service</u>, 843 F.3d

553, 558 (1st Cir. 2016) (citing <u>Hodgens v. General Dynamics Corp.</u>, 144 F.3d 151, 160 (1st Cir.

1998)); <u>see also</u> <u>Colburn v. Parker Hannifin/Nichols Portland Div.</u>, 429 F. 3d 325, 335 n. 9 (1st

Cir. 2005) (affirming application of <u>McDonnell Douglas</u> to FMLA retaliation claims).  Plaintiff

cannot meet his burden because he cannot establish a causal connection between his FMLA

leave and his employment termination.  Accordingly, the Court should dismiss Count VII.

### A.     Plaintiff Cannot Establish A Causal Connection Between His FMLA Leave And His Termination.

The legal standard applicable to the "causal connection" requirement is unresolved in the

First Circuit.  <u>Compare</u> <u>Gourdeau v. City of Newton</u>, 238 F. Supp. 3d 179, 183-196 (D. Mass.

2017) (noting lack of clarity in causation standard and concluding that "but-for" causation was

appropriate) <u>with</u> <u>Chase v. U.S. Postal Serv.</u>, 149 F. Supp. 3d 195, 208-211 (D. Mass. 2016)

(holding that an FMLA retaliation plaintiff need show only that FMLA leave was a "negative

factor" in the employment decision).  In this case, the record is devoid of evidence to establish

causation under either standard.  Plaintiff cannot show that, but for his FMLA leave, his

employment would not have been terminated; nor can Plaintiff show that his FMLA leave was a "negative factor" in the School's decision to terminate his employment.

The School had significant concerns about Plaintiff's job performance before he notified the School that he required FMLA leave. See Henry v. United Bank, 686 F.3d 50, 57 (1st Cir. 2012). On or about May 30, 2018, Plaintiff met with Ms. Aliber and Mr. Tucker to discuss Plaintiff's summer plans to prepare the CCO for the 2018-2019 school year. (SOF, ¶ 26). On June 19, 2018, Plaintiff created a list of 36 items in the CCO that were "in need of maintenance, repair, or replacement before we welcome back students in the fall." (SOF, ¶ 27). Plaintiff's list of items included various maintenance and repairs to the School's flagship telescope and to the CCO's planetarium. (SOF, ¶ 28). Also on June 19, 2018, Plaintiff advised Mr. Tucker that the flagship telescope's "control system has possibly had its end of life event," but that Plaintiff was "pretty certain" he could "solve the problem, if only temporarily." (SOF, ¶ 29).

During the summer, Plaintiff did not express any concerns about the flagship telescope or otherwise provide the School with any updates regarding his progress at the CCO. (SOF, ¶ 30). Rather, Plaintiff waited until August 30, 2018, only days before classes would begin, to inform the School of his failure to get the flagship telescope working again. Id. Specifically, on August 30, 2018, Plaintiff informed Mr. Vincent that the flagship telescope was not operational, that it would remain non-operational for at least another three months, and that it would cost $37,000 to repair. (SOF, ¶ 31). Although Plaintiff himself knew in June that the telescope had suffered a possible "end of life event," Plaintiff did nothing to confirm whether or not the telescope was operational until August 30, 2018, the last day of summer break. (SOF, ¶ 32).

Plaintiff also did not complete several other of his self-identified 36 job tasks that he said needed to be done at the CCO before the 2018-2019 school year. (SOF, ¶ 33). Not only was the

School's flagship telescope not operational at the start of the 2018-2019 school year, but also the

planetarium was not fully repaired and ready for use.  (SOF, ¶¶ 34-35).  Because the CCO did

not operate at full capacity, the School was unable to offer several academic experiences to its

students.  (SOF, ¶ 36).  Thus, the School had grounds for disciplining Plaintiff before he took

FMLA leave.  See Hodgens, supra, 144 F.3d at 171 (affirming summary judgment for employer

where plaintiff's poor performance predated FMLA leave).

### B.      Plaintiff Cannot Establish That The School's Legitimate, Non-Discriminatory Reasons Are Pretextual.

"In order to establish pretext, [a plaintiff] must show more than that the defendants'

asserted reason for taking adverse action… was not the real reason, [plaintiff] must show that the

reason given was cover for [FMLA] retaliation.'"  Archambault v. Kindred Rehab Servs., Inc.,

2016 WL 4555590 at *5 (D. Mass. Aug. 31, 2016) (quoting Soto-Feliciano v. Villa Cofresi

Hotels, Inc., 779 F.3d 19, 32 (1st Cir. 2015)).  "Although temporal proximity is a factor from

which a court can an infer an employer's bad motive, it is insufficient to establish causation

'especially if the surrounding circumstances undermine any claim of causation.'"  Haglund v.

Estee Lauder Cos., Inc., 466 F. Supp. 3d 292, 298 (D. Mass. 2020) (additional citations omitted).

There is no evidence that the School retaliated against Plaintiff when it terminated his

employment.  On the contrary, the School delayed addressing his performance while he was on

FMLA leave, and upon his return to work, the School sought to provide him with clarity

regarding his job expectations in light of his prior performance failures.  (SOF, ¶¶ 69-83).  Upon

his return to work, however, Plaintiff responded to School administrators' efforts by repeatedly

"redirecting the conversation away from his responsibilities and accountability" in an

unprofessional manner  (SOF, ¶ 87); see also supra, at pp. 10-11.  Plaintiff's protected leave does

"not clothe [him] with immunity for past and present inadequacies, unsatisfactory performance,

-18-

and uncivil conduct." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991) (affirming summary judgment for employer on employee's age discrimination and retaliation claims).

In light of the School's legitimate reasons for terminating Plaintiff's employment, and the utter lack of evidence to suggest that the School's reasons were pretext for retaliation, Defendants are entitled to summary judgment on Plaintiff's FMLA retaliation claim. See Thompson v. Gold Medal Bakery, Inc., 989 F.3d 135, 145 (1st Cir. 2021) (affirming summary judgment on FMLA retaliation claim where plaintiff's policy violation occurred after returning from FMLA leave, as temporal proximity "affords no basis in and of itself" to infer pretext).

## VII.   Plaintiff's Claim For Economic Damages Should Be Dismissed Because Plaintiff Has Suffered No Damages

"Damages are meant to put the plaintiff in the economic position he would have occupied but for the discrimination." Kolb v. Goldring, Inc., 694 F.2d 869, 872 (1st Cir. 1982). "Thus cases like this one call for a simple tabulation of 'items of pecuniary or economic loss such as wages, fringe and other job-related benefits.'" Id. (citation omitted). "*From these must be subtracted post-termination economic benefits*." Id. (emphasis added). Here, Plaintiff's post-termination earnings far exceed what he could earn at the School in the next ten years.

Plaintiff never applied for a single job following his termination. (SOF, ¶ 89). But he has worked for his company, CCI, instead; and CCI has reported almost $3,000,000 in gross income since Plaintiff's termination. (SOF, ¶¶ 93, 95).[10] In March 2019, CCI sold a telescope mount for $1,050,000. (SOF, ¶ 92). CCI reported $991,707 in gross income for 2019. (SOF, ¶ 93). Plaintiff reported $694,637 in adjusted gross income on his individual 2019 federal tax return. (SOF, ¶ 93). This amount constitutes more than six times Plaintiff's annual salary at the

---

[10]     Even while allegedly working full time at the School, CCI reported $595,518 in gross income for 2018. (SOF, ¶ 51).  In August 2018, with additional money being generated by CCI, Plaintiff and his wife purchased a new home in Chestnut Hill, Massachusetts for more than $900,000.  (SOF, ¶ 41)

School at the time of his termination in January 2019 ($106,500).  Id.; see also Stephens v. C.I.T. Group/Equip. Fin., Inc., 955 F.2d 1023, 1029 (5th Cir. 1992) (damages are "settled and complete" when the plaintiff begins earning more at his new job than he did at the job from which he was discharged).

In 2020, Plaintiff and CCI received payment for work on behalf of the National Aeronautics and Space Administration ("NASA"), including a project that required Plaintiff to travel to Australia for two weeks in December 2020.  (SOF, ¶ 94).  CCI reported $1,781,966 in gross income on its 2020 tax return.  (SOF, ¶ 95).  As of April 2021, CCI had only two other employees, and Plaintiff paid them collectively approximately $120,000 per year.  (SOF, ¶ 97). Thus Plaintiff's income since his termination far exceeds what he could have earned at the School, and Plaintiff's claim for economic damages should be dismissed.  See Ramirez v. The Chase Manhattan Bank, N.A., 109 F. Supp. 2d 62, 66 (D.P.R. 2000) (motion in limine to limit damages held proper where plaintiff could not prove post-termination economic damages).

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court dismiss all claims against them with prejudice.

December 15, 2021

DEXTER SOUTHFIELD, INC.,
CARMEN ALIBER, and
STEWART TUCKER,
By their attorneys,

/s/Anthony L. DeProspo, Jr.
William E. Hannum III (BBO No. 643155)
(whannum@shpclaw.com)
Anthony L. DeProspo, Jr. (BBO No. 644668)
(adeprospo@shpclaw.com)
SCHWARTZ HANNUM PC
11 Chestnut Street
Andover, MA 01810
Telephone: (978) 623-0900/Fax: (978) 623-0908

-20-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document, filed through the ECF system will be served electronically upon all registered participants as identified in the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered parties this 15th day of December  2021.

Suzanne L. Herold (*counsel for Plaintiff*)
Herold Law Group, P.C.
50 Terminal Street
Building 2, Suite 716
Charlestown, MA 02129
suzie@heroldlawgroup.com

/s/Anthony L. DeProspo, Jr.
Anthony L. DeProspo, Jr.