IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD F. DANTOWITZ, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 20-CV-10540-AK |
| DEXTER SOUTHFIELD, INC., CARMEN ALIBER, and STEWART TUCKER, | ) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Ronald Dantowitz ("Plaintiff" or "Dantowitz") has brought an action against his former employer, Dexter Southfield, Inc. ("School") and his former supervisors, Carmen Aliber ("Aliber") and Stewart Tucker ("Tucker") (collectively "Defendants") alleging disability discrimination (failure to accommodate and hostile work environment) (Count I), associational disability discrimination (Count II) and retaliation (Count III) aiding and abetting (Count IV), threats and coercion (Count V) in violation of M.G.L. c. 151B sec. 1 et seq. and violation of the Family Medical Leave Act on the basis of interference (Count VI) and retaliation (Count VII). The Plaintiff respectfully requests that the Defendants' Motion for Summary Judgment be denied in its entirety.

**STATEMENT OF FACTS**

The Plaintiff relies on and incorporates herein the Parties' Rule 9A(b)(5) Statement of Material Facts.

Further summarizing the areas of disputed Facts, this Court must consider the following major areas of dispute:

1. Plaintiff disclosed his disability to Ms. Aliber in 2017. His doctor's note expressly states that he has a cognitive disability commonly known as Autism Spectrum Disorder and as the result of his disability are a "significantly reduced processing speed" and "his difficulty interpreting social behaviors and reading social cues". When he discussed his disability with Aliber in 2017, he stated that he did not need new accommodations because he currently had in place the accommodations of a dark, quiet office without a roommate, a door that closes and extra time to complete assignments. SOF 15, 24.

2. Plaintiff did not delay informing the School that its "flagship" telescope was not operational until the start of the 2018-2019 school year. Rather, in June, the School knew that it may have had an "end of life" event and so, Plaintiff proactively contacted the telescope's manufacturer in June 2018 to get a quote to fix it. As of June 2018, the Company informed the School that it had a six-month lead time for the repair, which Plaintiff communicated to Mr. Tucker. That means that, as of June 2018, the earliest anticipated date that the telecope could be repaired (if it needed to be) was December 2018. Indeed, after Plaintiff confirmed that the telescope had its "end of life" event, the telescope was fixed by December 2018. SOF 29-32. However, the telescope being non-operational <u>is not</u> why Defendants state that they fired Plaintiff. SOF 84-85. *See also* SOF 62-83.

3. At the same time the Plaintiff confirmed that the telescope needed a greater repair than he could provide, the Plaintiff also requested a medical leave to care for his severely autistic son, Emmett. Plaintiff indicated that he would like the leave to begin no later than October 1, 2018 but that he also wanted time to stay and finish getting the Clay Center Observatory ready for the start of the 2018-2019 academic year. Plaintiff and Ms. Aliber were set to meet on September 14, 2018 to discuss the specifics of his departure, but after learning from Mr. Vincent that Plaintiff had expressed concerns that Ms. Aliber was setting him up to fail, Ms. Aliber put Plaintiff on leave, effective immediately, thereby thwarting his ability to finish the tasks on his list, which she and Mr. Tucker would raise immediately upon his return to School. SOF 45-47, 59.

4. Two important things happened during Plaintiff's protected FMLA leave: One, the School had him working on having the telescope's manufacture fix the telescope, and two, the School began interviewing for Plaintiff's replacement. SOF 48, 54-59.

5. When Plaintiff returned from leave on December 14th, 12 weeks after Ms. Aliber put him on immediate leave on September 14th, Mr. Tucker, Ms. Aliber and Plaintiff all met. Plaintiff requested to record the meeting or have a note-taker present to accommodate his disability. Unbelievably, Ms. Aliber feigned ignorance that Plaintiff is a disabled individual and refused both requests. SOF 60-61. Despite his contract specifying that he is not required to work during the Winter Break, Ms. Aliber and Mr. Tucker retaliated against Plaintiff by requiring him to work over the Winter Break. SOF 64-65, 68.

6. After the winter break, and knowing that Plaintiff's disability "significantly reduced processing speed" and "his difficulty interpreting social behaviors and reading social cues", Mr. Tucker and Ms. Aliber went on an all-out blitz to assign Plaintiff extraordinary tasks on short or impossible timelines, then used his failure to accomplish every trivial and arbitrary task as a basis to terminate him, knowing it had Dr. Santos to replace Plaintiff. SOF 69-88.

7. Defendants blatantly ignored the Affidavit (and deposition testimony) of a corroborating witness, Michael Williams. SOF 84-88.

8. Defendants blatantly conflate Plaintiff's company's income with Plaintiff's income in an attempt to somehow convince the Court that he is not entitled to damages. SOF 89-97.

**ARGUMENT**

I. Standard of Law; Rule 56 Motions in Employment Discrimination Cases Must Be Heavily Scrutinized and Rarely Granted.

It is well recognized that courts disfavor summary judgment in employment discrimination cases. Bulwer v. Mount Auburn Hospital, 473 Mass. 672, 689 (2016). "In cases involving employment discrimination, a defendant employer faces a heavy burden if it seeks to obtain summary judgment: summary judgment is disfavored in discrimination cases based on disparate treatment because the question of the employer's state of mind (discriminatory motive) is 'elusive and rarely is established by other circumstantial evidence." Sullivan v. Liberty Mutual Insurance Co., 444 Mass. 34 (2005) citing Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 439 (1995) (emphasis added). This requires "*the jury* to weigh the credibility of conflicting explanations" of the adverse decision. Sullivan at 39 (internal citations omitted) (emphasis added).

Summary judgment is only appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Mass. R. Civ. P. 56(c). A "genuine" issue means that the evidence would permit a reasonable fact finder to resolve the point in favor of the nonmovant. Mulvihill v. The Top-Flight Golf Co., 225 F.3d 15, 19 (1st Cir. 2003). A "material fact" is one that might affect the outcome of the suit under the applicable law. Id. The trial court must "view the entire record in the light most hospitable to the party opposing summary judgment, including all reasonable inferences in that party's favor." Griggs Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

When reviewing a summary judgment motion in employment discrimination cases, all facts must be considered in their light most favorable to the nonmoving party, drawing all reasonable inferences in Plaintiff's favor. Id. at 39. 365 Mass. 824 (1974); Blare v. Husky Injection Molding Sys. Boston, Inc., supra at 438. The SJC reaffirmed the language of its decision in Sullivan once again in Bulwer v. Mt. Auburn Hospital, 473 Mass. 672, 680 (2016).

II.     Plaintiff Has Established His Handicap Under The Law

In order to establish a *prima facie* case of disability discrimination, Plaintiff must show that (1) he is a qualified handicap person capable of performing the essential functions of the job with or without a reasonable accommodation; (2) he made a request for an accommodation; (3) his employer refused the accommodation, and (4) he suffered harm as a result of the refusal. Finlan v. Verizon New England, Inc. 74 Mass. App. Ct. 1127, *1 (2009).

The plaintiff's *prima facie* case is "not intended to be onerous." Sullivan v. Liberty Mutual Insurance Co., 444 Mass. 34, 45 (2005) It is meant to be a "small showing" that is "easily made." Id. Once the *prima facie* case is established, the plaintiff is entitled to a presumption of discrimination. Trustees of Health and Hospitals of City of Boston, Inc. v. Massachusetts

Commission Against Discrimination, 449 Mass. 675, 687 (2007).

Plaintiff has established that he has Autism Spectrum Disorder, and although his doctor recognized that he is "extremely intelligent" the result of his disability are a "significantly reduced processing speed" and "his difficulty interpreting social behaviors and reading social cues". SOF 15, 17, Exhibits H, I. Because Plaintiff's disability impacts his major life function of working, Plaintiff requested and worked with his then supervisor, Ellen Hinman, the reasonable accommodations of of a dark, quiet office without a roommate, a door that closes and extra time to complete assignments. SOF 24 – 25.

For Defendant to state that Plaintiff has not established that he is disabled because "there is no diagnosis" is absurd. Dr. Friedman's note specifically states that Plaintiff has mild autism spectrum disorder that, as a result, interferes with his major life function of reading and reading rate which in turn affects another major life function of work. Exhibit H. The Centers for Disease Control classify Autism Spectrum Disorder as a developmental disability that can cause significant social, communication and behavioral challenges[1]. The Americans with Disabilities Act recognizes Autism Spectrum Disorder as a disability that protects employees from employment discrimination on that basis.[2]

III.     Plaintiff is a Qualified Handicap Person Within the Meaning of the Law

The record reflects that Plaintiff was a qualified handicap person within the meaning of the law because he had been successfully doing his job at the School since his diagnosis in 2014 and since he and his then supervisor, Ms. Hineman had in place the reasonable accommodations

---

[1] https://www.cdc.gov/ncbddd/autism/facts.html
[2] https://adata.org/legal_brief/autism-spectrum-disorder-and-employment

of working in a darker room with no door and no roommate and additional time to complete tasks. SOF 15, 17, 24-25. Exhibits H, I.

IV.     The New Pre-Text Standard Under Massachusetts Law; Plaintiff Has Established Pre-Text and Causation

Plaintiff can establish that he suffered the adverse action of termination and that a causal connection existed because of the timing of his return from FMLA, his second request for a reasonable accommodation, the bombardment of tasks hurled his way, the requirement that he work over Winter Break when his contract explicitly says he is not required to, the fact that his replacement was hired while he was on leave, the fact that he was terminated within 5 weeks of returning from leave and the fact that every single instance of "insubordination" or "failure to complete a task" is disputed by Plaintiff. SOF 62-83. Finally, Plaintiff's colleague, Michael Williams confirmed that the School was making a push to terminate its older, disabled workers. SOF  See Bennett v. Capitol BC Rests, LLC, 54 F. Supp. 3d 139, 145-146 (D.Mass. 2014).

It was not until Ms. Aliber and Mr. Tucker joined the School and learned of his disability that he was first denied any request for a reasonable accommodation. Specifically, when Plaintiff requested the reasonable accommodation of being able to record meetings related to his assignments and tasks, or alternatively, a third-party to take notes for him, he was denied. SOF 60—63. As the result of being unable to record the meetings or have someone take notes for him, Plaintiff was forced to ask for clarification, forced to ask Ms. Aliber ro reduce the parties' understandings to emails to Plaintiff, and forced into situations that Defendants now claim are "argumentative" and "insubordinate" which ultimately led to Plaintiff's termination. SOF 69—83. While Plaintiff denies that he was argumentative or insubordinate, Defendants' refusal to engage in the interactive process to determine why allowing him to record the sessions or have

his own note-taker was unreasonable, or otherwise exploring if there was an alternate solution to Plaintiff's request, is a violation of the law. Ms. Aliber simply said "no" with nothing further – which is was then detrimental to Plaintiff and resulted in his termination. SOF 86.

The interactive process requires an employer to engage in a direct, open, and meaningful communication with an employees. An employer's "rigid and unyielding approach to the interactive process violates the principle that there should be a flexible dialogue designed to achieve a mutually beneficial goal".. *See* Anderson v. United Parcel Service, 32 MDLR 45 (2010); *See also* Ralph v. Lucent Techs., 135 F.3d 166, 172 (1st Cir. 1998) ("The duty to provide reasonable accommodation is a continuing one, . . . and not exhausted by one effort."") It is not disputed that Ms. Aliber immediately shut down Plaintiff's request and made no further effort to discuss the issue with Plaintiff. SOF 60-61. This necessarily violates M.G.L. c. 151B. Ms. Aliber's e-mail to Plaintiff that she "did not understand Plaintiff to have a disability" is incredible, given that the Plaintiff provided her a doctor's note outlining his diagnosis and how it impacts his daily life functions, as well as the fact that the two of them went on to have a conversation as to whether Plaintiff needed a reasonable accommodation, to which (at that time, and outside of the request to record the later meetings) Plaintiff stated that he did not because he and Ms. Hinman already had them in place. SOF 15, 17, 24-25. Exhibits H, I.

In situations like this, the employer bears to burden of proving that the requested accommodation would pose an undue hardship to the employer's business in order to justify their refusal to accommodate. *See* Barbuto v. Advantage Sales & Mktg., LLC, 477 Mass. 456, 463 (2017). Specifically, in Massachusetts, M.G.L. c. 151B has been interpreted to mean that " an employer has the burden to *prove* undue hardship. Brown v. F.L. Roberts at 683. (internal citations omitted). In the absence of a search for a reasonable accommodation, an employer is

required to "conclusively demonstrate that all conceivable accommodations would impose an undue hardship on the *course of its business*" (emphasis added). Id.  Such a demonstration is a factual inquiry. Id. (examining whether voluntary employee swaps would have constituted undue hardship); New York & Mass. Motor Serv., Inc. v. Massachusetts Comm'n Against Discrimination, 401 Mass. 566, 571, 576 (1988) (engaging in factual inquiry into specific nature and operations of employer's business; assessing whether employer could have exercised its managerial discretion to accommodate religious beliefs without undue hardship). Blanket assertions that an employee's "demand for relief").

      Defendants have not offered any evidence as to why Plaintiff could not record the meetings or have a third-party notetaker.  It is particularly relevant given that Defendants now come to summary judgment with an unauthenticated set of Exhibits (Exhibits S and T) that purport to be Ms. Aliber's lengthy notes from the sessions and are inconsistent with Plaintiff's testimony and record evidence.  SOF  70, 71, 75, 76, 81, 82.

      Defendant's justification for its adverse action must be "clear and reasonably specific . . . supported by specific facts that would justify a judgment for the employer." Ruffino v. State Street Bank, 908 F. Supp. 1019, 1045 n. 45 (D. Mass. 1995), *citing* Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 255 n. 9, 258 (1981). The Defendants have stated that Plaintiff's "poor performance" and "insubordination" are reasons for Plaintiff's termination.

      Assuming the Defendants show credible evidence of a legitimate, non-discriminatory reason for the challenged action (which here, they cannot because the record does not support that Plaintiff's performance or attitude was legitimately an issue), the burden shifts back to the plaintiff to show that the defendant's reason is a pretext. Bulwe*r*, 473 Mass. at 681; Verdrager, 474 Mass. at 397. Significantly, a plaintiff does not need to ***prove*** pretext to successfully oppose

a motion for summary judgment. Bulwer clarified that a plaintiff needs "only [to] present evidence from which a reasonable jury could infer that [Defendant's] facially proper reasons given for its action against [Plaintiff] were not the real reasons for that action." Bulwer, 473 Mass. at 682.

Plaintiff can further establish pretext because the 38 point list was never meant to be completed prior to the 2018-2019 academic year.  On the face of the document there are items that specifically were identified as being on hold until 2019.  There are items on the document that contradict one another, such as "fix the telescope" versus "replace the telescope".  To be held to a standard to completing all items, which any rational person can understand cannot be completed all at once offers the necessary pre-text.  SOF 27, 81, Exhibits J, K.

Plaintiff can further establish pre-text because the record shows that the School hired Plaintiff's replacement while he was out on leave. Mr. Phinney never taught astronomy, and so the temporary hire was to cover the class Plaintiff would have taught in Fall 2018.  However, assuming Plaintiff would have returned the next semester (which he did), Mr. Phinny's absence wasn't relevant because he didn't teach astronomy. It therefore begs the question; if the School had a temporary replacement in Mr. Beatty, why did it also hire Dr. Santos?  Furthermore, the job posting listed a job responsibility of directing the Clay Center Observatory, which was Plaintiff's job.  SOF 54-59. There is plenty of evidence to establish that Plaintiff's termination was pre-determined.

V.      Material Facts Are In Dispute As to Whether Plaintiff's Son's Condition Caused Plaintiff's Termination

Associational disability claims are analyzed the same way a traditional disability discrimination claim is analyzed.  Hertog v. Wasatch Academy, et. al., 129 F.3d 1076 (1997);

<u>Dewitt v. Proctor Hospital</u>, 07-1957 (7th Cir. Feb. 27, 2008).  A *prima facie* case of associational discrimination requires that Complainant establish the following:

(1) he was qualified for the job at the time of the harassment and discrimination,

(2) he was subjected to adverse employment action(s),

(3) that Respondents knew that Complainant's fiancée was a black woman from the Caribbean, and

(4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of Plaintiff's son was a determining factor in the adverse employment action and creation of the hostile work environment.

Plaintiff incorporates his analysis of his own disability discrimination claim into that of his son's, discussed *supra*.  The obvious question for a jury to consider here, is why, after Plaintiff disclosed his son's severe autism, and why, after 19+ years of stellar performance, was Plaintiff suddenly targeted and held to unreasonable standards?  Why did the Defendants skip the progressive disciplinary path it typically utilized?  SOF 7, 69-88.

Again, Plaintiff can establish pre-text because the record shows that the School hired Plaintiff's replacement while he was out on leave. Mr. Phinney never taught astronomy, and so the temporary hire was to cover the class Plaintiff would have taught in Fall 2018.  However, assuming Plaintiff would have returned the next semester (which he did), Mr. Phinny's absence wasn't relevant because he didn't teach astronomy. It therefore begs the question; if the School had a temporary replacement in Mr. Beatty, why did it also hire Dr. Santos?  Furthermore, the job posting listed a job responsibility of directing the Clay Center Observatory, which was Plaintiff's job.  SOF 54-59. There is plenty of evidence to establish that Plaintiff's termination was pre-determined.

VI.     Plaintiff Can Show Retaliation Pursuant to MGL c. 151B

A Plaintiff in a retaliation claim can defeat summary judgment the same way he beats summary judgment in her overlying discrimination claim: by presenting indirect or circumstantial evidence of discriminatory animus and causation under the three-stage burden-shifting paradigm set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973). Sullivan v. Liberty Mutual Insurance Co., 444 Mass. 34, 39-40 (2005). The same burden-shifting framework is applied to the retaliation claim. Id. at 55.

Plaintiff can show retaliation in multiple ways: Ms. Aliber accelerated his leave without discussing it with Plaintiff, as they had planned to do on September 14, 2018. SOF 47. As a result of accelerating his leave, Plaintiff was unable to complete items on his to-do list to have the CCO ready for incoming students, and then when he returned he was punished for it. SOF 47, 69-88. Then, Ms. Aliber and Mr. Tucker required Plaintiff to work through the Winter Break, despite it being a part of his contract that he is not required to, and then spun it as an issue of Plaintiff not having requested vacation time (again, not a requirement) SOF 64-66. Then, Defendants ignored his request for a reasonable accommodation of a note-taker or recording their meetings, SOF 60-61 and firing him 5 weeks after his return from medical leave (again with two of those weeks being the Winter Break). SOF 88.

Furthermore, Mr. Tucker testified that the School employs a series of progressive discipline, although egregious actions like theft may accelerate the process. Here, Plaintiff was terminated for "poor performance" and "insubordination" with no benefit of the progressive discipline policy. SOF 7. Deviation by an employer from its established policy or practice in the course of disciplining an employee is evidence of pretext. See Brennan v. GTE Gov't Sys. Corp., 150 F.3d 21, 29 (1st Cir. 1998) (reversing directed verdict for employer in age

discrimination case); Ctr. for Behavioral Health v. Barros, 710 A.2d 680, 686-87 (R.I. 1998) (finding employer's "failure to follow its own policies and procedures" when it terminated employee was evidence of pretext in a gender/pregnancy discrimination case). In this case, it should certainly warrant a jury deliberation as to why a 19+ year employee was not given the benefit of the progressive discipline through warnings or a Performance Improvement Plan, knowing that the School has done so for other employees, and jumped right to termination after only 5 weeks back from medical leave.

VII. Individual Liability Is Clear

  It is well settled that when a decisionmaker terminates an employee based on a discriminatory motive, or who harasses an employee due to a protected characteristic, the individual, as well as the corporate entity, may be held individually liable. Beaupre v. Cliff Smith & Associates, 50 Mass. App. Ct. 480, 490-91 (2000); *see also* Dragonis v. School Committee of Melrose, 64 Mass. App. 429, 445 n.30 (2005) (an individual defendant who served on a hiring committee that rejected the plaintiff, is subject to a trial on aiding and abetting claim). This Court need only look to the plain language of the statute to confirm that that any **person or entity** can be held liable for discrimination pursuant to M.G.L. c. 151B sec. 4(4A).

  M.G.L. v. 151B confers liability on individuals pursuant to sec. 4(4A) even if liability cannot be established pursuant to sec. 4(1). Thomas O'Connor Constructors, Inc. v MCAD, 72 Mass. App. Ct. 549, 556 (2008). Specifically, "employer" status only matters for an analysis under M.G.L c. 151B sec. 4(1), but both individuals and entities can be held liable for discrimination under sections 4(4), 4(4a) and 4(5). Id.

  In O'Connor, the appellate court stretched liability to non-employer, third party individuals, holding that, even if no employment relationship existed between Plaintiff and a

third party entity and its employee, liability still exists under G. L. c. 151B, § 4(4A), inserted by St. 1989, c. 722, § 14, which makes it an unlawful practice "For any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter…" Id at 554.  The Court wrote:

> "We agree with the MCAD that O'Connor could not be liable to Aldridge under § 4(1) because there was no employment relationship between O'Connor and Aldridge. Indeed, no Massachusetts appellate decision ever has interpreted § 4(1) to apply to an action brought by or against someone outside the employment unit. (internal citations omitted.)
>
> …
>
> Although no Massachusetts appellate decision ever has interpreted § 4(4A) to make an employer liable to someone other than its employee, the statutory language admits of such a result.  General Laws c. 151B, § 4(4A), makes it unlawful for "any person" to "coerce, intimidate, threaten, or interfere with another "person" in the exercise or enjoyment of rights granted under the chapter. O'Connor, Aldridge, and Daley are all "persons" as defined in G. L. c. 151B, § 1(1), and the right to work in an environment free from unlawful racial harassment is unquestionably among the rights encompassed by the statute."

Id. at 556-557.

Here, Section 4(1) confers liability on Mr. Tucker and Ms. Aliber as Plaintiff's supervisors.

VIII.    Plaintiff Can Show That the School Interfered With His Use of the FMLA

The FMLA statute is remedial in nature for the benefit of employees and should be construed broadly to affect its purposes.  See Hodgens v. General Dynamics Corp., 144 F.3d 151, 164 (1st Cir. 1998).   Interference with an employee's right to take FMLA leave includes discouraging an employee from using FMLA leave.  See Fact Sheet # 77B, attached as Exhibit 14.

It is not disputed that when on leave, Plaintiff was required to work. This automatically interferes with Plaintiff's FMLA leave. SOF 48, Exhibit CC.

Furthermore, when Plaintiff expressed his need for leave, Ms. Aliber discouraged him from taking FMLA and rather suggested he take a non-protected "medical" leave. Further, Aliber took approximately 11 days to send Plaintiff the FMLA paperwork, and then placed him on the "medical leave" earlier than Plaintiff had anticipated, therefore interfering with his ability to complete assignments. SOF 47.

In Jennings v. Ford Motor Co., 129 F.ed 119 (7th Cir. 1997) Ford argued that Jennings could not establish an unlawful interference claim because Jennings was not denied FMLA benefits. Id. Ford relied on language from Burnett v. LFW, Inc. 472 F.3d 471, 477 (7th Cir. 2006) that placed the burden on Plaintiff to establish a 5 part test: (1) eligibility for FMLA's protections; (2) the employer was covered by FMLA; (3) entitlement to leave under FMLA; (4) sufficient notice and, (5) the employer denied FMLA benefits to which the employee was entitled. The Court in Ford amended the 5th prong of the Burnett Court's test, and followed the Court in Hoge v. Honda of Am. Mfg, 384 F.3d 238, 244 (6th Cir. 2004) which modifies the 5th prong to state that the employee must show that the FMLA benefits were denied or interfered with. Id.

Here, Plaintiff can show that the School knew and permitted him to work during his leave, and Ms. Aliber discouraged and interfered with his right to take FMLA. Therefore, summary judgment is not warranted on Hurley's FMLA interference claim.

IX.     Plaintiff Can Show That the School Retaliated Against Plaintiff For Using FMLA

The FMLA prohibits retaliation against an employee for exercising or attempting to exercise his statutory rights under the Act.  See 29 U.S.C.§ 2615; Hodgens w. General Dynamics Corp., 144 F.3d 151, 159-160 (1st Cir. 1998); Colburn v. Parker Hannifin/Nichols Portland Division, 429 F.3d 325 (1st Cir. 2005) (court recognizes a cause of action for retaliation under 29 U.S.C. § 2615(a).)  "[The Court's] approach to an FMLA claim of retaliation is to permit proof directly *or by inference*, with the ultimate burden of proof remaining on the plaintiff to prove by a preponderance of the evidence that the employer's adverse employment action was in retaliation for exercise of protected rights."  (Emphasis added). Colburn v. Parker Hannifin/Nichols Portland Division, 429 F.3d 325 (1st Cir. 2005).  An FMLA Plaintiff may pursue a retaliation claim even if there is no claim (or finding) of a violation of substantive rights to leave.  Colburn v. Parker Hannifin / Nichols Portland Division, 429 F.3d 325, 333 (1st Cir. 2005).  Therefore, even if this Court should dismiss Count I of Plaintiff's claims, Count II may still survive.

Plaintiff establishes retaliation for taking FMLA the same way he shows retaliation pursuant to M.G.L. c. 151B:  Plaintiff can show retaliation in multiple ways:  Ms. Aliber accelerated his leave without discussing it with Plaintiff, as they had planned to do on September 14, 2018.  SOF 47. As a result of accelerating his leave, Plaintiff was unable to complete items on his to-do list to have the CCO ready for incoming students, and then when he returned he was punished for it.  SOF 47, 69-88.  Then, Ms. Aliber and Mr. Tucker required Plaintiff to work through the Winter Break, despite it being a part of his contract that he is not required to, and then spun it as an issue of Plaintiff not having requested vacation time (again, not a requirement) SOF 64-66.  Then, Defendants ignored his request for a reasonable accommodation of a note-

taker or recording their meetings, SOF 60-61 and firing him 5 weeks after his return from medical leave (again with two of those weeks being the Winter Break). SOF 88.

Furthermore, Mr. Tucker testified that the School employs a series of progressive discipline, although egregious actions like theft may accelerate the process. Here, Plaintiff was terminated for "poor performance" and "insubordination" with no benefit of the progressive discipline policy. . SOF 7. Deviation by an employer from its established policy or practice in the course of disciplining an employee is evidence of pretext. See Brennan v. GTE Gov't Sys. Corp., 150 F.3d 21, 29 (1st Cir. 1998) (reversing directed verdict for employer in age discrimination case); Ctr. for Behavioral Health v. Barros, 710 A.2d 680, 686-87 (R.I. 1998) (finding employer's "failure to follow its own policies and procedures" when it terminated employee was evidence of pretext in a gender/pregnancy discrimination case). In this case, it should certainly warrant a jury deliberation as to why a 19+ year employee was not given the benefit of the progressive discipline through warnings or a Performance Improvement Plan, knowing that the School has done so for other employees, and jumped right to termination after only 5 weeks back from medical leave.

X.    Plaintiff Has Suffered Significant Economic Damage

There is absolutely no merit to the notion that Plaintiff cannot pursue a claim for liability because he may not have economic damages, and no citation provided by Defendants supports such a proposition. However, Defendant is simply flat wrong that Plaintiff has not suffered economic damages. SOF 89-97; Exhibit DD. Furthermore, Plaintiff is pursuing emotional distress damages.

Dated: January 21, 2022

        For Plaintiff,

        */s/ Suzanne L. Herold*
        Suzanne L. Herold (BBO# 675808)
        Herold Law Group, P.C.
        50 Terminal Street
        Building 2, Suite 716
        Charlestown, MA 02129
        (617) 944-1325 (t)
        (617) 398-2730 (f)
        suzie@heroldlawgroup.com

CERTIFICATE OF SERVICE

I, Suzanne L. Herold, hereby certify that this document was served upon Defendants' counsel via electronic filing on January 21, 2022.

        */s/ Suzanne L. Herold*
        _____
        Suzanne L. Herold