IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD F. DANTOWITZ, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) CIVIL ACTION NO. 20-CV-10540-AK |
| DEXTER SOUTHFIELD, INC., | ) |
| CARMEN ALIBER, and | ) |
| STEWART TUCKER, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' MOTION TO STRIKE

Defendants Dexter Southfield, Inc. (the "School"), Carmen Aliber and Stewart Tucker move to strike the following:

- Those portions of Plaintiff's January 21, 2022 affidavit that materially contradict Plaintiff's deposition testimony; and

- Plaintiff's denials to Defendants' Statements of Material Facts for which no reasonable denial could be asserted.

## ARGUMENT

"As a general matter, only evidence that would be admissible at trial may be considered by the Court on summary judgment." Inner-Tite Corp. v. DeWalch Tech., Inc., 2007 WL 2507737, at *3 (D. Mass. Aug. 31, 2007) (citing Garside v. Osco Drug, Inc., 895 F.2d 46, 49-51 (1st Cir. 1990)). "A motion to strike is the proper vehicle for challenging the admissibility of evidence offered at summary judgment." Inner-Tite Corp., supra (citing Casas Office Machs., Inc. v. Mita Copystar Am, Inc., 42 F.3d 668, 682 (1st Cir. 1994)).

Here, the Court should strike portions of Plaintiff's affidavit, as well as Plaintiff's denials of Defendants' statements of undisputed material facts, to the extent that they materially

contradict Plaintiff's testimony and/or because facts cannot reasonably be denied, for the reasons set forth below.

### Plaintiff's Affidavit

"It is bedrock law in this Circuit that a party cannot vary his deposition testimony with an affidavit unless there is an explanation of the variance." Spilman v. Mosby-Yearbook, Inc., 115 F. Supp. 2d 148, 155 (D. Mass. 2000). In support of his Opposition, Plaintiff attaches an affidavit dated January 21, 2022. In two (2) key paragraphs of that affidavit, Plaintiff materially contradicts his prior deposition testimony.

#### Paragraph 2 of Plaintiff's Affidavit

"I understand that Dexter is accusing me of 'waiting' until August 30, 2018 to inform them that the telescope was non-operational. ***I did not wait to tell them***. Rather, that was the first day I knew my attempt to repair the telescope had failed and that it had had its 'end of life' events."

(Emphasis added).

#### Response

At his deposition, Plaintiff testified as follows:

Q: When did you inform [Mr. Tucker], [Ms. Aliber], or anyone else at the school that the telescope would not be in working order for the 2018-19 school year?

A: When I found out when I powered up the system at the end of the summer and it was not working. ***I let them know as soon as I could.***

Q: Do you remember what that date was?

A: ***Oh, it was the end of August.***

(Pl. Dep., Exh. D at 306: 14-21) (emphasis added).[1]

---

[1] Unless otherwise indicated, cited exhibits are attached to the Declaration of Anthony L. DeProspo, Jr. filed with this Court on December 15, 2021.

Plaintiff has testified that he, on his own, was responsible for maintaining the School's flagship telescope (Pl. Dep., Exh. D at 140: 5-7), and that it was vital that Plaintiff have the telescope ready to greet students in the fall. Plaintiff has admitted that the telescope was not ready for the incoming students and that the School's academic programming suffered as a result. (Pl. Dep., Exh. D at 306: 9-13; see also Pl. Response to SOF, ¶ 36 (admitted)).

Now, Plaintiff is trying to change his testimony on this issue, in a desperate attempt to mitigate his failure to have the flagship telescope ready for the 2018-19 academic year (after he promised to do so). The Court should strike paragraph 2 of Plaintiff's Affidavit.

**Paragraph 10 of Plaintiff's Affidavit**

"I also understand that Dexter is taking the position that Bob Phinny (*sic*) taught astronomy and physics. To my knowledge, in my 19+ years at Dexter, **Mr. Phinney never taught astronomy** or physics. Rather, he taught some after-school programming at the Clay Center and Clay Center Observatory, but he primarily taught Latin and Health."

(Emphasis added).

**Response**

At his deposition, Plaintiff testified as follows:

Q:  Who ended up teaching astronomy in the fall of 2018?

A:  ***Robert Phinney, Bob Phinney.***

(Pl. Dep., Exh. E at 415: 14-16) (emphasis added).

This is important because Plaintiff's admission at his deposition undermines his specious theory that the School purportedly hired his "replacement" while he was out on FMLA leave.

Mr. Phinney left the School in November 2018. (Pl. Dep., Exh. E at 415: 17-20). Accordingly, the School needed to hire another replacement. On or about November 2, 2018, Mr. Kelly Beatty, who substituted for Plaintiff and whose temporary role as a substitute would end in January, sent an email to the Harvard & Smithsonian Center for Astrophysics, advising

-3-

the postdoctoral fellows that the School was looking for another substitute teacher.  (See Supp. Decl., Tab D at ¶ 3).  The School did not hire anyone to replace Plaintiff.  The Court should strike paragraph 10 of Plaintiff's Affidavit.

## Plaintiff's Denials To Statement of Undisputed Material Facts

Plaintiff's response to Defendants' statement of undisputed facts contains several unsupported (and frivolous) denials.  The Court should strike those denials and accept the stated facts as undisputed.  Plaintiff's improper denials of Defendants' undisputed fact statement include the following:

**(SOF, 7)**.  Plaintiff testified that he understood that his employment at the School was "'at will,' meaning that either [Plaintiff] or the School may terminate [his] employment at any time, with or without notice, for any reason or for no reason." (Pl. Dep., Exh. D at 283: 20-24, 284: 1-6; Exh. F).  Plaintiff understood that he was free to resign at any time if he was unhappy with his job, and that the School was free to end Plaintiff's employment if the School was unhappy with his performance.  (Pl. Dep., Exh. D at 284: 7-12).

**Plaintiff's Response:  Denied in part.**

**Defendants' Rebuttal:**

At his deposition, Plaintiff testified as follows:

Q: Did you understand that your employment at Dexter Southfield was at will?

A: Yeah, I've read that and I've read what that it is, so I do understand that phrase.

Q: In other words, you understood that either you or Dexter Southfield were free to end the employment relationship at any time?

A: I understand that … what that means, yes.

Q: For instance, you were free to resign at any time if you were unhappy in your job?

A: Yeah, I think that makes sense.

>   Q:      And Dexter Southfield was free to end your employment if it was unhappy with your performance?
>
>   A:      I understand that's what that means too.

(Pl. Dep., Exh. D at 283: 20-24, 284: 1-12).

>   **(SOF, 15)**. As part of Plaintiff's job, Plaintiff acknowledged the following

responsibilities:

>   - To perform quality work within deadlines;
>
>   - To interact professionally with other employees, including administrators;
>
>   - To communicate and coordinate work efforts with other employees including administrators; and
>
>   - To inform an administrator if a particular deadline could not be met.

(Pl. Dep., Exh. E at 328: 3-22).

>   **Plaintiff's Response: Denied in part.**
>
>   **Defendants' Rebuttal:**
>
>   At his deposition, Plaintiff testified as follows:
>
>   Q.  Did you understand that it was a responsibility of your position to perform quality work within deadlines?
>
>   A.  *Of course. That's a yes.*
>
>   Q.  Did you understand that it was a responsibility of your position to interact professionally with other employees, including administrators at the school?
>
>   A.  *Yes.*
>
>   Q.  Did you understand that it was a responsibility of your position to communicate and coordinate your work efforts with other employees, including administrators?
>
>   A.  *Yes.*
>
>   Q.  Would that include informing an administrator if you thought that you could

>   not meet a particular deadline?
>
> A.  *I would think so, yes.*

(Pl. Dep., Exh. E at 328: 3-22) (emphasis added).

**(SOF, 19).**  Dr. Friedman's 2014 letter did not recommend that Plaintiff seek accommodations at the School, nor did Dr. Friedman suggest that Plaintiff should seek additional time to complete his work.  (Exh. H).

**Plaintiff's Response:  Denied in part.**

**Defendants' Rebuttal:**

Dr. Friedman's 2014 letter speaks for itself.  She did not recommend that Plaintiff seek accommodations at the School or seek additional time to complete his work.  (Exh. H).

**(SOF, 21).**  Upon receiving the letter, Ms. Aliber requested a meeting with Plaintiff. (Exh. I).  Having not heard from Plaintiff, Ms. Aliber emailed Plaintiff on February 5, 2018 to request that they meet to discuss the letter.  (Id.)  Plaintiff responded via email, agreed to meet, and stated:

> I have no doubts about my ability to communicate or teach astronomy, and am confident that I do my job well!  I am not complaining but communicating to you so that you might understand my challenges, *all of which I have overcome*.

(Id.) (emphasis added).

**Plaintiff's Response:  Denied in part.**

**Defendants' Rebuttal:**

On January 19, 2018, Ms. Aliber, after receiving the letter, contacted Plaintiff:  "Feel free to stop by my office.  I will be here until around 7 PM tonight."  (Exh. I).  On February 5, 2018,

Ms. Aliber wrote to Plaintiff: "As a follow up to my [January 19th] message below, please let me know when you can stop by my office to discuss the envelope you dropped off for me." (Id.) That same day, Plaintiff responded as follows:

> I have no doubts about my ability to communicate or teach astronomy, and am confident that I do my job well! I am not complaining but communicating to you so that you might understand my challenges, ***all of which I have overcome***.

(Id.) (emphasis added).

**(SOF, 27).** On June 19, 2018, Plaintiff created a list of 36 (*sic*) items in the CCO that were "in need of maintenance, repair, or replacement before we welcome back students in the fall." (Exhs. J, K).

**Plaintiff's Response: Denied.**

**Defendants' Rebuttal:**

Exhibit J speaks for itself. It is an email from Plaintiff dated June 19, 2018 which states as follows: "I have attached a breakdown of the thirty-eight concrete areas that are in need of maintenance, repair, or replacement before we welcome back students in the fall." (Exh. J). Exhibit K is the list of the items to be addressed.

**(SOF, 29).** Also on June 19, 2018, Plaintiff advised Mr. Tucker that the flagship telescope's "control system has possibly had its end of life event," but that Plaintiff was "pretty certain" he could "solve the problem, if only temporarily." (Exh. J).

**Plaintiff's Response: Denied.**

**Defendants' Rebuttal:**

Exhibit J speaks for itself.  In the same June 19, 2018 email, Plaintiff advised Mr. Tucker as follows:

> The telescope is currently stuck in one position (south, about 60 degrees elevation) and the control system has probably had its end of life event.  I will be back in this evening to clean all the contracts on the boards, and I am pretty certain that will solve the problem, if only temporarily, and I will continue down the list of maintenance.

(Exh. J).

**(SOF, 33).**  Plaintiff admittedly did not complete several of the 36 job tasks that Plaintiff himself identified as needing to be done at the CCO before the start of the 2018-2019 school year.  (Pl. Dep., Exh. D at 303: 5-8).

**Plaintiff's Response: Denied.**

**Defendants' Rebuttal:**

At his deposition, Plaintiff testified as follows:

Q:   And all the items in this spreadsheet on Exhibit 13, were all these items completed in the summer of 2018?

A.   *No.*

(Pl. Dep., Exh. D at 303: 5-8) (emphasis added).

**(SOF, 46).**  Plaintiff did not clarify his request until September 14, 2018, when he emailed Mr. Vincent and Ms. Aliber that he had retained counsel and, in bold text, stated: **"I need to take FMLA leave to care for my son, beginning on or before October 1, preferably from my perspective as soon as possible, and continuing for 12 weeks thereafter."**  (Pl. Dep., Exh. E at 395: 16-24, 396: 1-5; Exh. O) (emphasis in original).

**Plaintiff's Response:  Denied.**

**Defendants' Rebuttal:**

At his deposition, Plaintiff testified as follows:

Q:  So there's some bold text about two-thirds the way down the page –

A:  Yes.

Q:  - the sentence begins, to be clear and concise.  Can you please read that sentence?

A:  To be clear and concise, **I need to take FMLA leave to care for my son, beginning on or before October 1, preferably from my perspective as soon as possible, and continuing for 12 weeks thereafter.**

(Pl. Dep., Exh. E at 395: 16-24, 396: 1-5) (emphasis added).

**(SOF, 64)**.  In the [December 14, 2018] meeting, Plaintiff objected to working during the School's winter break.  (Pl. Dep., Exh. E at 446: 21-24, 447: 1-18).

**Plaintiff's Response:  Denied.**

**Defendants' Rebuttal:**

At his deposition, Plaintiff testified as follows:

Q.   Did you raise any concerns about working the week of December 17th?

A.   *Absolutely, I did.*  I was very concerned in that meeting on December 14th, that I didn't understand why I was being asked to, not to do these things.  These things were fine.  The tasks, I had no problem with them.  But being asked to suddenly work during the Christmas break for the first time in 20 years, you know, it's like a Christmas Carol when Ebenezer Scrooge has to go to school and stay there during Christmas break.

(Pl. Dep., Exh. E at 446: 21-24, 447: 1-9) (emphasis added).

**(SOF, 65)**.  Plaintiff, however, specifically admitted that he was a year-round employee:

> I worked through the summers and did astronomy and – yeah.
> I never took vacations.  I was always there.

(Pl. Dep., Exh. D at 286: 2-4).

**Plaintiff's Response:  Denied.**

**Defendants' Rebuttal:**

At his deposition, Plaintiff testified as follows:

Q:    Were you a year-round employee at Dexter Southfield?

A:    Year-round – so I worked through the summers and did astronomy and – yeah.  I never took vacations.  I was always there.

Q:    So did you have summers off?

A:    *No.  I worked through the summers.*

(Pl. Dep., Exh. D at 285: 24, 286: 1-6) (emphasis added).


**(SOF, 66).**  Ms. Aliber emailed Plaintiff on December 19, 2018 to provide additional information about making vacation requests and requesting disability accommodations, among other topics, and she directed Plaintiff to the relevant policies in the School's employee handbook.  (Exh. R).

**Plaintiff's Response:  Denied.**

**Defendants' Rebuttal:**

Exhibit R speaks for itself.  On December 19, 2018 Ms. Aliber emailed Plaintiff as follows:  "Thank you for your message seeking clarification on vacation time, accommodations, and technology.  I have summarized those key points below and added a fourth around performance, reiterating our offer to meet with you to discuss your concerns and our expectations."  (Exh. R).

## **CONCLUSION**

Plaintiff's attempts to rewrite the record should not be allowed to stand. Plaintiff has materially changed his deposition testimony and asserted improper denials to Defendants' statement of material facts. For the reasons set forth herein, the Court should allow Defendants' Motion to Strike.

February 3, 2022

DEXTER SOUTHFIELD, INC.,
CARMEN ALIBER, and
STEWART TUCKER,

By their attorneys,

/s/Anthony L. DeProspo, Jr.
William E. Hannum III (BBO No. 643155)
(whannum@shpclaw.com)
Anthony L. DeProspo, Jr. (BBO No. 644668)
(adeprospo@shpclaw.com)
SCHWARTZ HANNUM PC
11 Chestnut Street
Andover, MA 01810
Telephone: (978) 623-0900
Facsimile:  (978) 623-0908

-12-

**Certificate of Compliance with Local Rule 7.1(a)(2)**

I, Anthony L. DeProspo, Jr., counsel for Defendants, certify that on January 31, 2022, I conferred with Plaintiff's counsel in an effort to narrow or resolve the issues that are the subject of this Motion, and that Plaintiff's counsel does not assent to the relief sought in this Motion.

/s/Anthony L. DeProspo, Jr.                                      February 3, 2022
Anthony L. DeProspo, Jr.

-13-

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document, filed through the ECF system will be served electronically upon all registered participants as identified in the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered parties this 3rd day of February 2022.

    Suzanne L. Herold (*counsel for Plaintiff*)
    Herold Law Group, P.C.
    50 Terminal Street
    Building 2, Suite 716
    Charlestown, MA 02129
    suzie@heroldlawgroup.com

                                              /s/Anthony L. DeProspo, Jr.
                                              Anthony L. DeProspo, Jr.