# Tab A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD F. DANTOWITZ, <br><br> Plaintiff, <br><br> v. <br><br> DEXTER SOUTHFIELD, INC., <br> CARMEN ALIBER, and <br> STEWART TUCKER, <br><br> Defendants. | CIVIL ACTION NO. 20-CV-10540-FDS |

## PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES

Pursuant to Fed. R. Civ. P. 33, Plaintiff objects and responds to Defendants' First Set of Interrogatories as follows:

## OBJECTIONS AND RESPONSES

1. State the name, address, telephone number, occupation and business address of the person responding to these Interrogatories.

   Response: Ronald F. Dantowitz: 405 VFW Parkway, Chestnut Hill, Massachusetts. (617) 959-9945. My occupation is astronomer and my business address is 405 VFW Parkway, Chestnut Hill, Massachusetts.

2. State the name and address of any person known to you that has knowledge of or information concerning any of the facts and/or defenses to the facts alleged in the Complaint and/or the Answer, and for each such person identified, describe in detail the knowledge and/or information possessed by each person.

   Response: Please see Plaintiff's Initial Disclosures. Further responding:

I have tried to supplement the contact information as best as I can, as follows:

Name: Michael Williams
Address: 39 Bayberry Lane, Holliston, MA 01746
Telephone Number: (508) 868-7247
e-mail address:

Name: Ellen Hinman (linkedin.com/in/ellen-hinman-88431845)

Name: Emilia Guy (at Dexter Southfield)
e-mail address: EGuy@dextersouthfield.org

Name: William Pine (at Dexter Southfield)
e-mail address: wpine@dextersouthfield.org

Name: Dr. C James Smith
Address: 6 Aberdeen, Plymouth, MA 02360
Telephone Number: (617) 365-8285
e-mail address: cjamessmith123@gmail.com

Name: Robert (Bob) Phinney
Address: 16 Tech Circle, Natick MA 01760
Telephone Number: 617 529 0532 or 508-720-4179
e-mail address: BobPhinney@nescitech.org or bobphinney@comcast.com

Name: Susan Domke
Address: 126 Chapman Street, Canton, Massachusetts
Telephone Number: 781 424 6689
e-mail address: susan.domke@gmail.com

Name: Emily Moore (at Dexter Southfield)
e-mail address: EMoore@dextersouthfield.org

Name: Beth Nunes (at Dexter Southfield)
e-mail address: BNunes@dextersouthfield.org

Name: Dr. Daniel Steinberg (spouse: Robyn Steinberg)
Address: 65 Westgate Rd Newton 02459
Telephone Number: (617) 678-1690
e-mail address: danielgsteinberg@gmail.com

Name: Ms. Robyn Steinberg (spouse: Dr. Daniel Steinberg)
Address: Robyncs1@gmail.com      (corrected from Initial Disclosure)
65 Westgate Rd Newton 02459
Telephone Number: (617) 680-3329

Name: Dr. Denise Faustman
Address:
Telephone Number: (617) 901-6443
e-mail address: DFaustman@mgh.harvard.edu

Name: Stella Karavas
Address:
Telephone Number: 781 858 4939 (cell) and 781 821 1820 (home)
e-mail address:

Name: Kathy Rochefort
Name: Bill Weber
Address:
Telephone Number: 1 (617) 842-9283
e-mail address: SJKaravas@gmail.com

Name: Professor Jay Pasachoff
Address:
Telephone Number: 413 458 8346 (home)
e-mail address: jmp@williams.edu

3. State the name, address, telephone number and e-mail address for each witness identified in Plaintiff's Initial Disclosures dated September 10, 2020.

Response: Please see Plaintiff's Initial Disclosures. Further responding, please see Response 2.

4. Do you contend that Defendants have caused you to sustain damages? If your answer is anything other than an unqualified "no," please provide an itemized account of any and all damages you allege to have suffered, including, but not limited to:

(a) the amount of each claimed loss and the dates upon which each occurred;

(b) a description of the method by which you calculated any and all alleged damages; and

(c) a description of the documents reviewed or relied upon in determining the claimed damages.

Response: Please see Plaintiff's Initial Disclosures. Further responding, I

-3-

have incurred lost wages. From the date of my termination to present I should have been my full salary along with the value of all of my fringe benefits like health insurance and retirement contributions. The salary I would have made, to date, is $212,000 ($106k per year). I used to pay $0 / year in health insurance, and now I pay $29,812/year plus additional expenses for care for my autistic son. I used to receive $6,000 / year toward my health care deductible and now I do not receive that. The retirement contribution I used to receive was $10,600 / year ($21,200 to date) and now I receive nothing. I am also seeking future lost wages in the amount of my salary, cost of living increases, the cost of health insurance I am now forced to pay, and my retirement contributions up until my planned retirement. I am also seeking damages for out of pocket medical expenses I have incurred. I am seeking damages for the loss of the free tuition at Dexter Southfield for my children. The estimated value of that is $49,210 / year for six years, and $98,420 to date). I am seeking damages for the loss of the summer tuition for my children, which is in excess of $7000 / year. I am also seeking emotional distress, but I do not know how to calculate this and I understand that it is up to a jury to decide. I am also seeking attorney's fees, interest, costs and any other remedy available to me by law that I might not know of because I am not an attorney.

5. Please list and identify completely each person that you expect to call as an expert witness at trial, stating as to each such expert witness:

   (a) his or her full name, address, occupation, business address and relationship to the Plaintiff or Defendants, if any;

   (b) his or her educational background; and

   (c) his or her experience in the subject matter at issue in the Complaint.

   Response: Plaintiff has not yet made such a determination but will supplement his

response, if necessary.

6. As to each person referred to in the answer to the preceding Interrogatory, please state in full detail:

    (a)     the subject matter or area on which each such person expects to testify;

    (b)     the substance of the facts and opinions to which each such person is to testify;

    (c)     a summary of the grounds for each opinion; and

    (d)     a list of books, treatises, articles and other works relied upon or considered by each such person regarding the subject matter on which the expert witness is expected to testify.

Response: A response is not applicable at this time, however Plaintiff will supplement his response, if necessary.

7. Does Plaintiff claim he is disabled? If your answer is anything other than an unqualified "no," please identify the disability, any and all treatment sought for your disability, and how the alleged disability impacts your daily life functions.

Response: Yes, I do claim that I am disabled. Specifically, my disability is Autism Spectrum Disorder. I was diagnosed in 2014. There is limited treatment for Autism Spectrum Disorder, and the primary way that I treat it is through years of working to develop coping skills. If it is about astronomy, it is the only thing I know in depth- very monochromatic yes, narrow, but it is the one thing I know.

My disability impacts my daily life functions of working, concentrating, learning, and communicating. Specifically, I do not read as well as others, and comprehending any reading takes repeatedly going over sentences, and a quiet space, a dark place, and extra time. I need to have things in writing as a backup so I can parse it out, literally in a word doc to see it all. To make things make sense, I take emails, paragraphs, and lists of things I need to do, put them in

Microsoft word, and then pull out and remove the useless words and punctuation, then boil it down to the action words and what I need to do, have to remove the useless words to see what it is I am being asked to do - then I can do it very well indeed. I constantly have a hard time understanding what people are saying- I often need a few more seconds to figure out what they are saying. Conversation sounds are just not always words though I know that they are supposed to be. Cannot explain. I can hear things with my ears just fine, but I do not understand them all of the time. Everything takes me longer, not because I am lazy but because I have to go over the task many times to make sure I am on the right path. But I always get it done. I am not obsessive compulsive, not at all. I just need to go over everything to see what it means. I also have an aversion to fluorescent lights.

8.  Identify any accommodations you sought as a result of your disability while employed at Dexter Southfield.

Response:   <u>Disability discussions with DXSF</u>

Supervisor Ellen Hinman

In 2016 I met on multiple occasions with Ellen Hinman, my supervisor and the Head of the Upper School (DXSF high school). We formally discussed my 2014 diagnosis and I presented Ellen with a copy of my medical letter, which she read beginning to end during one of our meetings. We openly discussed my condition and how it affected my work, and how I have successfully worked hard to overcome limitations. She was supportive, and said that she had some experience with ASD in the past.

Ellen and I discussed my condition in detail and she was very patient and offered accommodations, including allowing me enough time to learn new tasks that I might have to

-7-

learn to do my job - like when I was told I had to teach physics for the first time - ten days before the school year began ( a teacher had quit during the summer). I did it- but it was excruciating.

Ms. Hinman provided me with accommodations of additional time and support in order to provide her office with the required written evaluations for each of my students which I needed to do multiple times per year in each class. Grades and progress reports of all kinds were constantly completed and with excellence - it just took me longer and with enormous effort - but I always got them done and done well. and my own work was well reviewed by her (my supervisor).

I shared with Ms. Hinman that even with my 2014 diagnosis and documents, that I was concerned that it would be dangerous for my job security to share that letter specifically with Mr. Tucker. the assistant head of school (and Ms. Hinman's boss). From when I started in 2000. DXSF had no HR department or HR person until somewhere in 2017. I had nowhere to go with my Doctor's letter - so naturally I shared it with her - my supervisor. I wanted it known to DXSF through my supervisor and senior administrator. that I had significant challenges and that I was open to support and the goal of overcoming them successfully.

Ms. Hinman was aware of my having to work longer days than everyone else to be able to read and grade my students' daily labs and materials in physics - which I did with excellence and with exhaustion every day of the year. I received superior reviews from Ms. Hinman. whether teaching high school astronomy or physics. not a single negative received on performance.

Ms. Hinman came by my office every so often. sometimes just to say hello. and she was very aware of my accommodation of a dark workspace - a room without lights on and no windows- which I had in place for the entire 19 years of my work at DXSF. I had literally the

only office at DXSF without a window (this is the part of the building that I helped design). I also did not have an office mate, and required a quiet workplace so I could function without background sound.

Ms. Hinman left the school in June 2018 after 5 years, was knowledgeable about and supportive of my condition and was an excellent manager. As I said, Ms. Hinman provided me with accommodations for extra time for paperwork and reports, which helped enormously, and my student reviews which had to be written were always given additional time for submission and review.

After teaching physics one year, Ellen Hinman told me how proud she was of the hard work I did - learning to teach physics as I went that year... I sat in the front office with her on the last day of school and I said that I would be ok teaching physics again if she needed me to, and that if the school wanted to it could give me more of the students with learning disabilities like mine, because I was good at finding ways to reach them- and teach them - because I might understand some of their limitations. Ellen was appreciative.

Head of Human Resources (HR) Carmen Urbonas

I met with Carmen Urbonas in February 2018 and provided her a copy of my medical letter for my personnel files. I wanted to ensure she and DXSF were aware of my disability, and specifically let them know – in email and in person – that I was comfortable calling it a *disability*, the specific word I used. I submitted paperwork to my file at DXSF so that my employer would understand how challenging it is for me to do what it is I do, so they could understand my limitations, and understand how I worked to overcome them, and how I could become even better at my job – for my students and the school as well as for myself. It ended up being used as a weapon against me.

Discussions with Carmen (Feb 2018) included:

Presenting and discussing my diagnosis letter

Discussions of how it affected my work

Discussions of how I have found coping skills to enable me to do my work to meet and exceed expectations (no poor performance or anything bad in my reviews in 19 years).

Discussion of my reading issues and the need for extra time to complete written work, and that I had to work longer days and stay extra hours each day to complete my work- even beyond the astronomy tasks I had to do at night.

I discussed with Carmen my accommodations from supervisor Ellen Hinman, and also that the people that specifically knew about my disability were Ellen, Robert Phinney, and Dr. Norman Wittels. I discussed with Carmen that I was concerned to let many people at DXSF know that a faculty member had reading and writing issues, that I was concerned that it would be used against me. Carmen said that she was there to help. We also discussed my difficulty with faces. She nodded. I shared with Carmen that I needed a dark space in order to slowly read or write - and that is why my office is always dark and quiet. I explained that not having an office mate and having a single office with a door that closed was helpful, so much so that to avoid noise I tried to avoid having lunch in the cafeteria. I rarely ate with everyone - it was just too much - and when I was fired it had probably been years since I had lunch sitting down with anyone. I discussed the college office allowing me extra time to work on college recommendations for students, and the Director of Admissions (Ms. Emily Moore) was aware of my significant issues in writing - and that her office had been very supportive.

-10-

We had a very detailed discussion. Carmen asked if there were any additional accommodations that I could think of that would help, and I told her that as the Director of the CCO, and with my input in the design of the Clay Center, the accommodations I outlined to her were working well, and that I was able to do my work with excellence, and was not complaining. We also discussed my challenges with comprehension - I always hear what people are saying, but I frequently do not understand the words which takes me longer than the average person to process.

I went out of my way to let Carmen Urbonas know that I was able to do all of my work, and that the accommodations in place were great. I specifically requested that if I were to be asked to do anything additional or different, that I would be happy to do anything as needed, and requested enough time to learn what I needed to learn to get the work done perfectly. I told her that I was completely able to do my work. At no time did Carmen say anything about any poor performance - and I had never ever heard of any such thing in my many years at DXSF.

[THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK]

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 23rd DAY OF DECEMBER 2020.

_____
Ronald Dantowitz

December 23, 2020

As to the objections,
Ronald Dantowitz
By his attorney,

_____
Suzanne L. Herold (BBO# 675808)
Herold Law Group, P.C.
50 Terminal Street
Building 2, Suite 716
Charlestown, MA 02129
(617) 944-1325 (t)
(617) 398-2730 (f)
suzie@heroldlawgroup.com

## CERTIFICATE OF SERVICE

I, Suzanne L. Herold, hereby certify that this document was served upon Defendants' counsel via e-mail on _December 29, 2020_.

_____
Suzanne L. Herold