UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD F. DANTOWITZ,<br><br>          Plaintiff,<br><br>v.<br><br>DEXTER SOUTHFIELD INC.,<br>CARMEN ALIBER, and<br>STEWART TUCKER,<br><br>          Defendants. | Civil Action No. 20-CV-10540-AK |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF PLAINTIFF'S PRIOR OFFER LETTERS (DKT. 114)**

Because Plaintiff's prior offer and salary letters are relevant to the course of dealing between the parties, Plaintiff's reasonable expectations, and the terms of the Parties' contractual relationship, Defendants' Motion should be denied. Motions in limine are not intended to serve as vehicles "to resolve factual disputes or weigh evidence," *Sanders v. University of Idaho, College of Law*, --- F. Supp. 3d --- , 2022 WL 5257714 (D. Idaho Oct. 5, 2022) (citing *C&E Servs., Inc. v. Ashland Inc*., 539 F. Supp. 2d 316, 323 (D.D.C. 2008). "To exclude evidence on a motion in limine 'the evidence must be inadmissible on all potential grounds.' Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Research*

*Corp. Technologies, Inc. v. Microsoft Corp.*, No. CV-01-658, 2009 WL 2971755 *1 (D. Ariz. Aug. 19, 2009) (citations omitted).[1]

Over the course of Plaintiff's employment at Dexter Southfield, each year the Head of School provided Plaintiff with a letter that he was expected to countersign and return to express his intent to work for that academic year. For some years, the School gave him an offer letter, i.e., a letter offering employment and setting forth some of the terms of that employment in detail For instance, in 2014, the Head of School wrote that he was "pleased to offer [Plaintiff] a full-time faculty position at Dexter Southfield." (Exhibit A at 1.) The 2014 offer letter was a contract with an integration clause, stating, "[t]his offer constitutes the entire agreement between you and the School and supersedes all prior and contemporaneous agreements…." (Exhibit A at 2.) In other years, the School's annual letter merely updated Plaintiff's salary and benefits for the year. Thus, in 2017, the Head of School referred to the 2014 offer letter and wrote, "[t]he terms of that offer letter continue to be applicable to your employment with Dexter Southfield. This letter describes any changes in salary, position, etc., that will apply during your employment at the School during the 2017-2018 Fiscal Year." (Exhibit B at 1.) Similarly, the 2018 letter merely "outline[d] the changes that [would] apply to [Plaintiff's] base salary… during the 2018-2019 Academic Year." (Exhibit C at 1.) The sequence of letters is strong, if not conclusive, evidence of the Parties' intent that the employment relationship should be governed by the 2014 offer letter, subject to the salary increases provided in the salary letter for each year. *See Lanier Pro. Servs., Inc. v. Ricci*, 192 F.3d 1, 4 (1st Cir. 1999) (parties' intent should govern meaning of

---

[1] In addition to the substantive reasons to deny Defendants' Motion, Defendants did not include in their Motion a certificate of compliance with Local Rule 7.1, and they did not in fact "confer[] and… attempt[] in good faith to resolve or narrow the issue" as required by Local Rule 7.1(a)(2). This failure, by itself, is sufficient grounds for denial of the Motion. *See Martinez v. Hubbard*, 172 F. Supp. 3d 378, 383 (D. Mass. 2016).

ambiguous contract); *Den Norske Bank AS v. First Nat. Bank of Bos.*, 75 F.3d 49, 53 (1st Cir. 1996) (parties' course of performance and prior course of dealing are relevant to interpretation of contract).

One area of dispute where the terms of the annual letters are important concerns Plaintiff's vacation time and expectations concerning work over winter break. Plaintiff returned from FMLA leave on December 14, 2018, which was the last day before the School's winter break (during which students were absent from campus). Defendants immediately assigned Plaintiff a number of time-sensitive tasks with deadlines of December 14, 2018 (that same day); January 2, 2019 (during winter break); and January 15, 2019 (immediately after the beginning of the spring term). Whether Plaintiff was expected to work during winter break is one factor the jury will consider in determining whether those time frames were reasonable or whether Plaintiff was being set up to fail with the strict deadlines as a pretext for discrimination and/or retaliation. Plaintiff testified that he had never before been expected to work during winter break (although he sometimes had worked during summer and winter breaks, because he was passionate about the work he did at the School). Plaintiff's 2014 offer letter specifically states, "[a]s a year-round, administrative faculty member of the School, you will receive paid time off when the students are not in school as described in the School's Employee Handbook." (Exhibit A at 2.) Nothing in his 2017-2018 or 2018-2019 salary letters contradicts this. (*See generally* Exhibits B and C.)

The Employee Handbook applicable in December 2018 differentiated "Regular Full-Time Employees (12-month), who accrued vacation, sick, and personal time, from "Regular Full-Time Academic Employees (12-month), who did not. (Exhibit D at 2-3.) The former category included "the Head of School and his direct reports" while the latter included "administrative faculty… and all other full-time faculty members," which describes Plaintiff.

(Exhibit D at 3.) In any case, the Handbook's policy on vacation time did not use these categories. (Exhibit D at 4.) Instead, it provided that "Regular full-time (12-month) *non-faculty* employees are eligible to take up to five (5) weeks of paid vacation annually…." (Exhibit D at 4 (emphasis added).) And it stated that "Regular full-time 11-month and 10-month employees (*including faculty members*) are not eligible to accrue paid vacation time but will be paid during School vacation breaks during the academic year." (Exhibit D at 4 (emphasis added).) Plaintiff had, as his 2014 offer letter stated, a "faculty position." (Exhibit A at 1.) That never changed, as Plaintiff continued to teach one or more courses each term through his termination. The Handbook did not have any provision for 12-month faculty members, but indicated that faculty members received paid vacation during School vacations. This was consistent with longstanding practice by which Plaintiff was not expected to work during winter break.

Based on the annual letters Plaintiff and the Head of School signed, the 2014 offer letter established the terms of Plaintiff's employment and stated that he would receive paid vacation during School breaks. The Handbook also states this, or at a minimum is ambiguous on this point. In light of the inconsistencies within the Handbook, and the lack of specificity within the 2018-2019 salary letter, it is important that the jury be able to consider all three letters. They are plainly relevant and describe the Parties' contractual terms, understandings, and expectations.

For the foregoing reasons, Defendants' Motion should be denied.

Respectfully submitted,
RONALD DANTOWITZ

By his attorneys,

/s/ Inga S. Bernstein
Inga S. Bernstein (BBO #627251)
David A. Russcol (BBO #670768)
Zalkind Duncan & Bernstein LLP
65a Atlantic Avenue
Boston, MA 02110
(617) 742-6020
ibernstein@zalkindlaw.com
drusscol@zalkindlaw.com

Dated: January 17, 2023

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by electronic filing and that paper copies will be sent to those indicated as non-registered parties on January 17, 2023.

/s/ Inga S. Bernstein
Inga S. Bernstein