IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

———————————————————————
                                             )
RONALD F. DANTOWITZ,                         )
                                             )
                    Plaintiff,               )
v.                                           )
                                             )       CIVIL ACTION NO. 20-CV-10540-AK
DEXTER SOUTHFIELD, INC.,                     )
CARMEN ALIBER, and                           )
STEWART TUCKER                               )
                                             )
                    Defendants.              )
                                             )
———————————————————————

## EXHIBITS

### Defendants' Objections To Plaintiff's Proposed Exhibits

A - Withdrawn

   B.      INV Form 41 dated July 30, 2012.  (Tab 1)

This form is relevant to Dexter Southfield's knowledge of Mr. Dantowitz's outside work for NASA (the reason why he was subject to a federal background investigation in 2012), and to the identity of Mr. Dantowitz's direct supervisor. Dexter Southfield's responses indicate that Todd Vincent was Mr. Dantowitz's supervisor, that the School had no reason to question his honesty or trustworthiness, that it had no adverse information about his employment, and that he was recommended for security clearance. That is also relevant to the School's state of mind given that, after Mr. Dantowitz later requested FMLA leave, it suddenly developed a different view of his performance. This document is admissible as a statement of a party opponent, particularly under Fed. R. Evid. 801(d)(2)(B).

Defendants' Objection:

        Defendants do not dispute that Plaintiff worked with NASA or that Mr. Vincent was Plaintiff's direct supervisor in 2012.  Whether Defendants had reason to believe Plaintiff was untrustworthy in 2012 is entirely irrelevant as to whether Plaintiff was untrustworthy any time thereafter.  Indeed, Plaintiff misrepresented the need for FMLA leave when he took four business trips for CCI while he was out on leave, rather than caring for his son.  Defendants did not develop a different view of Plaintiff's performance after he returned from FMLA leave.  There had been performance concerns for years.  The document is completely irrelevant, cumulative and prejudicial.

D - Withdrawn.

E.      Withdrawn

F.      Email dated July 21, 2014 from R. Dantowitz to R. Saul.  (Tab 2).

This email chain shows that, in 2014, Mr. Dantowitz made the School aware of the special needs
of his son, and the strains that was putting on his family. It includes responsive status updates
concerning Mr. Dantowitz's work. It also shows that the School was concerned about whether it
would have to pay to support a research trip sending students to Australia, and Mr. Dantowitz
responded to assure the School that it would not. This chain contrasts with the School's later
position that Mr. Dantowitz provided no benefit to students and was not responsive to
supervision, and the School did not know what he was doing. It is admissible in part under Fed.
R. Evid. 801(d)(2) and for non-hearsay purposes like Defendants' knowledge and state of mind.

Defendants' Objection:

        Defendants do not dispute that the School has known that 2012 that Plaintiff's son is
autistic.  Mr. Saul's email to Plaintiff may be admissible under Fed. R. Evid. 801(d)(2), but
Plaintiff's emails to Mr. Saul are the definition of hearsay.  They are self-serving statements
offered for the truth of the matter asserted.  There is no hearsay exception applicable to
Plaintiff's emails to Mr. Saul.  Plaintiff also failed to previously produce this document (although
he forwarded the emails to his private email address on May 19, 2015) so Defendants had no
way of cross-examining Plaintiff at his deposition.  The document is completely irrelevant,
cumulative and prejudicial.

H.      Photographs of Dexter Southfield Hallway and wall display "Tracking Virgin Galactic's
Race to Space."  (Tab 3).

These photographs depict prominent displays in Dexter Southfield of Mr. Dantowitz's work with
astronomy, incorporating CCI resources in astronomical projects for Dexter Southfield, and
involving students in these projects. This hallway was prominently featured in admissions tours.
These statements by the School contrast with the School's later position that Mr. Dantowitz
provided no benefit to students, and the School did not know what he was doing. The statements
herein are admissible under Fed. R. Evid. 801(d)(2).

Defendants' Objection:

        Defendants do not dispute that Plaintiff participated in some projects for the benefit of his
outside interests while employed at the School and that School students participated.  The
evidence is cumulative and will cause confusion with the jury.  Defendants also has failed to
identify when the pictures were taken.

I.      Photograph of telescope mirror before and after Summer 2018 cleaning.  (Tab 4).

This illustrates the condition of the School's "flagship" telescope and the nature and quality of
the work Mr. Dantowitz performed during the summer of 2018, when the School claims he was
shirking his responsibilities and performing poorly. It is relevant to Plaintiff's claim of pretext.

Defendants' Objection:

Plaintiff failed to previously produce this document although it appears he has had it for some time.  Defendants had no way of cross-examining Plaintiff at his deposition.  The document is not relevant to anything.  The image is undecipherable.  It will be confusing to the jury.

J.      Email dated September 14, 2018 from T. Vincent to R. Dantowitz.  (Tab 5).

This is a statement of Mr. Vincent showing that he and Ms. Aliber were aware of both Mr. Dantowitz's request for leave and his expression of concern about how Ms. Aliber was handling his leave request before the School put Mr. Dantowitz on leave. This is relevant to Mr. Dantowitz's retaliation and interference claims at a minimum, and it is admissible pursuant to Fed. R. Evid. 801(d)(2). The email to Mr. Vincent quoted in Mr. Vincent's response is admissible for a non-hearsay purpose because it has independent legal significance, i.e., requesting FMLA leave, which is protected activity.

Defendants' Objection:

Mr. Vincent's email to Plaintiff may be admissible under Fed. R. Evid. 801(d)(2), but Plaintiff's email to Mr. Vincent is the definition of hearsay.  It is a self-serving statement offered for the truth of the matter asserted.  There is no hearsay exception applicable to Plaintiff's email to Mr. Vincent.

K.      Email dated September 14, 2018 from R. Dantowitz to S. Tucker.  (Tab 6).

This email shows that, before the School placed Mr. Dantowitz on leave, it was aware that he had been working, that Mr. Tucker had given him work responsibilities, and Mr. Dantowitz had been making progress on those tasks. This contrasts with Ms. Aliber's later statement that Mr. Dantowitz had been reporting to work despite having no responsibilities. It bears on Defendants' state of mind and is evidence of pretext.

Defendants' Objection:

Hearsay, and does not fall under any hearsay exception.  Moreover, Defendants do not dispute that Plaintiff refused to clarify for the School the reason for his FMLA leave and that Plaintiff worked before going on leave.

L.      Dexter Southfield Astronomy Teacher job posting.  (Tab 7).

Defendants posted for Mr. Dantowitz's job while he was on FMLA leave. This is the job posting they issued in October 2018. It is relevant to all of Mr. Dantowitz's claims to show that the School had decided to terminate Mr. Dantowitz before he allegedly performed poorly or engaged in insubordination in December 2018 and January 2019. It is admissible under Fed. R. Evid. 801(d)(2).

Defendants' Objection:

 The posting is irrelevant. The testimony in this case has been consistent in that the School did not seek to replace Plaintiff while he was on FMLA leave, nor does the job posting seek someone with Plaintiff's qualifications. It is unduly prejudicial and will cause confusion with the jury.

M. Astronomy Teacher job posting on Indeed. (Tab 8).

Like Exhibit L, this is a version of the posting for Mr. Dantowitz's job, which Mr. Dantowitz saw while he was on FMLA leave. It is relevant to all of Mr. Dantowitz's claims to show that the School had decided to terminate Mr. Dantowitz before he allegedly performed poorly or engaged in insubordination in December 2018 and January 2019. It is admissible under Fed. R. Evid. 801(d)(2).

Defendants' Objection:

 The testimony at trial will be that the School does not post jobs on "Indeed," so the School has no control over the contents. The document is also materially different from the alleged School job posting. The first three job requirements are excluded in the Indeed posting.

N. Email dated December 19, 2018 from R. Dantowitz to C. Aliber. (Tab 9).

This email includes a request for reasonable accommodation and refers back to Dr. Friedman's January 2018 letter as documentation for that request. It also shows the School's awareness of Mr. Dantowitz's understanding at the time about the expectations for his work over Winter Break, which is relevant to Plaintiff's contention that the School set unreasonable deadlines in an attempt to generate a pretext for his termination.

Defendants' Objection:

 Hearsay, and does not fall under any hearsay exception.

Q. R. Dantowitz handwritten notes from January 18, 2019 meeting. (Tab 10).

These are Mr. Dantowitz's contemporaneous notes of a meeting with Ms. Aliber and Mr. Tucker concerning Mr. Dantowitz's performance. Although Mr. Dantowitz will need to interpret and explain the meaning of the notes in his testimony, the jury should be able to refer to his notes just as it will be able to refer to Ms. Aliber's notes of the same meeting (which are an agreed exhibit). The document is admissible pursuant to Fed. R. Evid. 803(1) and, to the extent that Mr. Dantowitz's memory of the meeting is incomplete, 803(5).

Defendants' Objection:

 Defendants do not object as long as Plaintiff does not object to the introduction of notes taken contemporaneously by Ms. Aliber.

S.      "Community Telescope Nights – Dexter Southfield" printout from Dexter Southfield website.  (Tab 11).

This is a statement on Defendant's website concerning the date when Dr. Felipe Santos became the Director of the Clay Center Observatory – either before or immediately after Mr. Dantowitz's termination. It is admissible pursuant to Fed. R. Evid. 801(d)(2).

Defendants' Objection:

        Plaintiff cannot identify when the website posting was made or whether the information thereon is accurate.  The same information can be obtained through witness testimony.  The undated website posting will cause confusion with the jury.

**Plaintiff's Objections to Defendants' Proposed Exhibits:**

A.      Dantowitz medical notes dated June 5, 2014.  (Tab 12).

        Plaintiff relies heavily on a letter from Dr. Friedman dated January 17, 2018, which purportedly outlines Plaintiff's limitations.  Defendants are entitled to introduce records of Plaintiff's initial outreach to his physician which laid the ground work for Dr. Friedman's subsequent diagnostic impressions.  The notes also show Plaintiff self-diagnosed himself with autism in an effort to get out of teaching physics.  The notes are highly relevant.  The notes are admissible pursuant to Fed. R. Evid. 803(b)(4).

Plaintiff's Objection: This is not relevant, and any limited relevance is substantially outweighed by the risk of jury confusion or presentation of cumulative evidence under Fed. R. Evid. 403. The relevant medical information concerning Mr. Dantowitz's autism diagnosis is the information the School had at the time it made decisions about Mr. Dantowitz's employment. The School only had Dr. Friedman's January 17, 2018, letter, which is an agreed exhibit. These notes are from before Dr. Friedman performed testing or gave Plaintiff a diagnosis. Further medical evidence will be cumulative and will only serve to confuse the jury.

B.      Dantowitz medical notes dated August 5, 2014.  (Tab 13).

        Plaintiff relies heavily on a letter from Dr. Friedman dated January 17, 2018, which purportedly outlines Plaintiff's limitations.  The medical notes from August 5, 2014 specifically describe in depth the steps Dr. Friedman took in evaluating Plaintiff.  The notes are highly relevant and obviate the need for Plaintiff to call Dr. Friedman as a witness.  The notes are admissible pursuant to Fed. R. Evid. 803(b)(4).

Plaintiff's Objection: Any limited relevance is substantially outweighed by the risk of jury confusion or presentation of cumulative evidence under Fed. R. Evid. 403. The relevant medical information concerning Mr. Dantowitz's autism diagnosis is the information the School had at the time it made decisions about Mr. Dantowitz's employment. The School only had Dr. Friedman's January 17, 2018, letter, which is an agreed exhibit. Dr. Friedman's testing is

described and summarized in that letter. Further medical evidence will be cumulative and will only serve to confuse the jury.

D.      E-mail dated January 11, 2019 from C. Aliber to R. Dantowitz.  (Tab 14).

This email was sent in response to an email sent to Plaintiff on the same day.  The email indicates that Defendants were willing to work with Plaintiff to achieve his goals.  The email also summarizes the contents of a meeting held with Plaintiff at which Plaintiff demonstrated unprofessionalism and insubordination.  It is admissible for non-hearsay purposes like Plaintiff's knowledge and state of mind.

Plaintiff's Objection: This email is a statement of Ms. Aliber, offered by Defendants. It is therefore inadmissible hearsay, and Defendants have identified no exception.

E.      Declaration of Ronald F. Dantowitz dated September 28, 2021.  (Tab 15).

Plaintiff drafted this declaration in lieu of appearing for a third day of deposition. Defendants treat this document as a designation of deposition testimony.

The document is highly relevant.  Defendants are entitled to introduce evidence of Plaintiff's activities with CCI when (a) he should have been working at the School in the summer of 2018, and (b) he should have been taking FMLA leave.  This information is not only highly relevant, but it goes to Plaintiff's credibility.  Plaintiff has not moved *in limine* to exclude this evidence at trial.

Plaintiff's Objection: This declaration summarizes Mr. Dantowitz's work for CCI while he was on FMLA leave. As previously briefed in Plaintiff's Opposition to one of Defendants' Motion in Limine (*see* Dkt. 118), Mr. Dantowitz was permitted under FMLA and School policies to work for an outside employer while on FMLA leave. It does not pertain to any relevant issue in dispute. The declaration is therefore irrelevant, unduly prejudicial, and likely to confuse the jury.

F.      2018 Celestial Computing Federal Tax Return.

G.      2018 Dantowitz Federal Tax Return.

H.      2019 Celestial Computing Federal Tax Return.

I.      2019 Dantowitz Federal Tax Return.

J.      2020 Celestial Computing Federal Tax Return.

K.      2020 Dantowitz Federal Tax Return.

L.      2021 Celestial Computing Federal Tax Return.

M.    <u>2021 Dantowitz Federal Tax Return</u>.[1]

Plaintiff's income is highly relevant to show the hundreds of thousands of dollars Plaintiff has earned since the School terminated his employment.  This goes directly to Plaintiff's claim for back pay and front pay.  Defendants have proposed a stipulation showing Plaintiff's taxable income for calendar years 2018-2020.  Plaintiff has not responded.

Plaintiff vigorously opposes the introduction of Plaintiff's income information, arguing that Plaintiff in fact earned almost no income for those years.  Indeed, Plaintiff seeks to call a CPA to "explain" to the jury how Plaintiff's stated taxable income is actually zero.

Plaintiff initially refused to respond to an interrogatory requesting income information. The Court had to intervene and order Plaintiff to produce his tax returns.  It is the only evidence of Plaintiff's income Defendants have.

Jurors understand tax returns.  They understand the concept of taxable income.  If the parties cannot agree on a stipulation, the jury should be able to see the tax returns and make their own conclusions.

<u>Plaintiff's Objection</u>: Defendants seek to present the jury with tax returns for both Plaintiff and a corporation, when no witness may be able to testify to explain the tax returns or their relationship. Although Plaintiff's <u>earnings</u> may be relevant to issues of damages, and Plaintiff has offered to stipulate to the same, his <u>taxable income</u> as such is not. Because Celestial Computing Incorporated was, for the years 2018-2021, an S corporation, its corporate income was passed through and taxed on Mr. Dantowitz's personal income tax return. The net income of the corporation, most of which remained in and was reinvested in the corporation, is not reflective of or relevant to the earnings Mr. Dantowitz received from his employment/self-employment. Even if a jury understands personal tax returns (which is dubious), the jury will not understand lengthy corporate tax returns for a nonparty to the case. Any relevance of these documents is substantially outweighed by the risk of jury confusion. In addition, Defendants have not identified a hearsay exception covering these documents.

N.    <u>Colorado Secretary of State Filing August 31, 2018</u>.  (<u>Tab 16</u>).

This document shows that one day after Plaintiff requested an immediate leave of absence, and one day after Plaintiff informed the School that the flagship telescope was not operational, Plaintiff found time to incorporate CCI in another state.  It is highly relevant to showing where Plaintiff's priorities lie.  Plaintiff is identified as "the individual causing the document to be delivered for filing."

<u>Plaintiff's Objection</u>: This document is irrelevant because, even if Mr. Dantowitz filed this document (which is disputed), he was permitted to engage in outside employment while employed at the School and/or while on FMLA leave. It has a strong potential to mislead or confuse the jury. Defendants have also not authenticated this document. It is also hearsay and

---

[1] For the Court's convenience, the parties are not filing Plaintiff's tax returns.

lacks foundation because, among other reasons, Mr. Dantowitz has denied filing this document and Defendants have no evidence that he did file it.

P.      Celestial Computing Inc. Coronavirus Bailout.  (Tab 17).

Plaintiff claims that CCI has been mostly dormant.  This document shows that CCI employs at least five persons and that CCI sought a refund for payroll paid out to these employees.

Plaintiff's Objection: Whether or not CCI has mostly been dormant is not a relevant issue in this case. Nor is CCI's receipt of PPP loans, a subject about which some jurors may have strong feelings for political reasons entirely unrelated to this matter. This document is irrelevant, unduly prejudicial, and likely to confuse the jury. In addition, the publication by a news organization (ProPublica) is hearsay not within any exception, and lacks foundation or authentication.

Q.      Conversation with Ron Dantowitz.  (Tab 18).

Admissible pursuant to Fed. R. Evid. 803(1) and, to the extent that Defendants' memory of the meaning is incomplete, 803(5).

Plaintiff's Objection: Hearsay, and cumulative of uncontested Exhibit 31.


Respectfully submitted,

RONALD DANTOWITZ,                    DEXTER SOUTHFIELD, INC.,
                                     CARMEN ALIBER, and
                                     STEWART TUCKER,

By his attorneys,                    By their attorneys,
/s/David A. Russcol                  /s/ Anthony L. DeProspo, Jr.
Inga S. Bernstein (BBO #627251)      Anthony L. DeProspo, Jr. (BBO No. 644668)
David A. Russcol (BBO #670768)       (adeprospo@shpclaw.com)
Zalkind Duncan & Bernstein LLP       Cara E. Murphy (BBO No. 709521)
65a Atlantic Avenue                  (cmurphy@shpclaw.com)
Boston, MA 02110                     SCHWARTZ HANNUM PC
(617) 742-6020                       11 Chestnut Street
ibernstein@zalkindlaw.com            Andover, MA 01810
drusscol@zalkindlaw.com              Telephone: (978) 623-0900
                                     Facsimile:  (978) 623-0908


Date:  January 26, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document, filed through the ECF system will be served electronically upon all registered participants as identified in the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered parties this 26th day of January 2023.

*/s/ Anthony L. DeProspo, Jr.*

Anthony L. DeProspo, Jr.
