Case 1:20-cv-10540-AK   Document 153-1   Filed 02/06/23   Page 1 of 7

Bruneau v. South Kortright Cent. School, 962 F.Supp. 301 (1997)
118 Ed. Law Rep. 892

962 F.Supp. 301
United States District Court,
N.D. New York.

Eve BRUNEAU, Plaintiff,
v.
SOUTH KORTRIGHT CENTRAL SCHOOL
and South Kortright School Board, Defendants.

No. 94–CV–864 (LEK/DNH).
|
March 19, 1997.

**Synopsis**
Former student sued school, school board, assistant superintendent, and teacher under Title IX and § 1983 for alleged sexual harassment by fellow students while student was in the sixth grade. On motion of defendants for summary judgment, the District Court, McAvoy, Chief Judge, 935 F.Supp. 162, granted in part and denied in part defendants' motion. Following entry of jury verdict in defendants' favor, student moved for new trial. The District Court, Kahn, J., held that: (1) former student was not entitled to new trial on her claims that she was victim of sexual harassment, which defendant school and school board failed to take appropriate steps to prevent, notwithstanding student's unsubstantiated assertion that presence at hearing of teacher and of superintendents had created a coercive atmosphere that caused student-witnesses to testify falsely; (2) witnesses did not have to be sequestered; and (3) restriction on terminology that student's attorney could employ in describing school's and school board's alleged failure to take appropriate remedial steps did not entitle student to new trial.

Motion denied.

West Headnotes (8)

[1]  **Federal Civil Procedure** ⇐ Grounds
Former student was not entitled to new trial on her claims that she was victim of sexual harassment, which defendant school and school board failed to take appropriate steps to prevent, notwithstanding student's unsubstantiated assertion that presence at hearing of teacher and of superintendents had created a coercive atmosphere that caused student-witnesses to testify falsely regarding this alleged harassment; student failed to demonstrate any actual coercion, and only evidence that she presented that student-witnesses testified falsely was her own contrary testimony as to events in question. Fed.Rules Civ.Proc.Rule 59, 28 U.S.C.A.

1 Case that cites this headnote

[2]  **Federal Civil Procedure** ⇐ Separation and Exclusion of Witnesses
Teacher and former assistant superintendent of school which was named as defendant in civil rights action brought by former student for school's alleged failure to prevent sexual harassment against her did not have to be sequestered at student's request, where teacher was only responsible adult with direct knowledge of alleged acts of harassment, which allegedly occurred in teacher's classroom, and former assistant superintendent had direct contact with student's guardian and knew what steps were taken to remedy any problems that existed at school; both parties came within exception to witness sequestration rule for "person whose presence is shown ... to be essential to the presentation of the party's cause." Fed.Rules Evid.Rule 615, 28 U.S.C.A.

1 Case that cites this headnote

[3]  **Federal Civil Procedure** ⇐ Separation and Exclusion of Witnesses
Current superintendent of school which was named as defendant in civil rights action brought by former student for school's alleged failure to prevent sexual harassment against her did not have to be sequestered at student's request; rather, current superintendent had to be viewed as school's "designated representative," under exception to witness sequestration rule. Fed.Rules Evid.Rule 615, 28 U.S.C.A.

[4]  **Federal Civil Procedure** ⇐ Weight of Evidence

Case 1:20-cv-10540-AK   Document 153-1   Filed 02/06/23   Page 2 of 7

Bruneau v. South Kortright Cent. School, 962 F.Supp. 301 (1997)
118 Ed. Law Rep. 892

Mere fact that former student may have presented sufficient evidence to establish that she suffered sexual harassment because of her gender, or that she suffered from intimidating, hostile, abusive, or offensive educational environment, did not entitle her to new trial on her Title IX gender discrimination claims against school and school board, on theory that jury's verdict was against manifest weight of evidence; jury could have accepted student's claims in this respect and still ruled in favor of school and school board on theory that they did not have actual notice of situation, or that they took proper corrective action. Education Amendments of 1972, § 901 et seq., 20 U.S.C.A. § 1681 et seq.; Fed.Rules Civ.Proc.Rule 59, 28 U.S.C.A.

1 Case that cites this headnote

[5]   **Civil Rights** ⟶ Sexual Harassment; Sexually Hostile Environment

To be liable on Title IX gender discrimination claim for failing to take appropriate steps to prevent sexual harassment of one of its students, school and school board would have to have actual, and not just constructive, notice of alleged harassment. Education Amendments of 1972, § 901 et seq., 20 U.S.C.A. § 1681 et seq.

[6]   **Civil Rights** ⟶ Sexual Harassment; Sexually Hostile Environment

Only school employees who had direct contact with, and exposure to, events underlying former student's Title IX gender discrimination claim could have sufficient first-hand knowledge of events that their knowledge could be imputed to school and school board for purposes of holding them liable for failure to take appropriate remedial action. Education Amendments of 1972, § 901 et seq., 20 U.S.C.A. § 1681 et seq.

[7]   **Federal Civil Procedure** ⟶ Reception of Evidence

Memorandum written by former superintendent of school which was named as defendant in Title IX gender discrimination claim brought by former student, in which superintendent described her encounter with student's guardian, did not have to be received as relevant to school's knowledge of alleged acts of discrimination, where memorandum was dated several months after student left school and did not provide any new information that was not cumulative of testimony presented at trial. Education Amendments of 1972, § 901 et seq., 20 U.S.C.A. § 1681 et seq.; Fed.Rules Evid.Rule 403, 28 U.S.C.A.

[8]   **Federal Civil Procedure** ⟶ Evidence

Restriction on terminology that former student's attorney could employ in describing school's and school board's alleged failure to take appropriate steps to remedy alleged sexually discriminatory conduct and hostile learning atmosphere existing at school did not entitle student to new trial on her Title IX gender discrimination claims, where student's counsel was permitted to use the terms discriminatory conduct and hostile learning environment throughout trial in varying contexts, and student failed to demonstrate any prejudice. Education Amendments of 1972, § 901 et seq., 20 U.S.C.A. § 1681 et seq.; Fed.Rules Civ.Proc.Rule 59, 28 U.S.C.A.

**Attorneys and Law Firms**

**\*302** Schulte, Roth & Zabel (Brooks Burdette, of counsel), New York City, Cuny Law School (Merrick T. Rossein, of counsel), Flushing, for Plaintiff.

Coughlin & Gerhart (Frank W. Miller, of counsel), Binghamton, Ferrara & Fiorenza (Benjamin J. Ferrara, of counsel), Syracuse, for Defendants.

*MEMORANDUM–DECISION AND ORDER*

KAHN, District Judge.

Case 1:20-cv-10540-AK   Document 153-1   Filed 02/06/23   Page 3 of 7

Bruneau v. South Kortright Cent. School, 962 F.Supp. 301 (1997)
118 Ed. Law Rep. 892

Presently before the Court is the plaintiff's motion pursuant to Fed.R.Civ.P. 59 to set aside the judgment entered on November 25, 1996 in the above captioned action and to grant a new trial. The motion was taken on submission and no oral argument was heard.

## I. FACTS

This § 1983 civil rights action stems from incidents which allegedly took place while the plaintiff was a student at the defendant South Kortright Central School District ("South Kortright" or "School"). Specifically, plaintiff Eve Bruneau ("Bruneau") asserts that she was sexually harassed by several of her male classmates and that this sexual harassment was not prevented by the School despite her protests. Bruneau brought suit against both the School and the South Kortright School Board (the "Board"). The matter went to trial on November 4, 1996, in Binghamton, New York. On November 21, 1996, the jury returned a verdict for the defendants.

**\*303** **II. *DISCUSSION***

Rule 59 provides in pertinent part that:

> "A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...."

The rule further sets forth that a motion for a new trial shall be filed no later than ten days after the entry of judgment.

"The authority to grant a new trial is. confided almost entirely to the exercise of discretion on the part of the trial court."

*Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 191, 66 L.Ed.2d 193 (1980). A trial court may exercise its discretion to grant a new trial for reasons such as the "verdict is against the weight of the evidence, [ ] the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury."

*Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940)

"The district court's grant of a new trial motion is usually warranted only if it 'is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.' " *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 875 (2d Cir.1992) (quoting *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir.1988); citing *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir.1978)). In *Bevevino,* the Second Circuit discussed the standard by which the trial judge should exercise discretion:

> The trial judge, exercising mature judicial discretion, should view the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply the facts; and abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice. If convinced that there has been, then it is his [or her] duty to set the verdict aside; otherwise not.

574 F.2d at 684 (citing 6A Moore's Federal Practice ¶ 59.08[5], at 59–160–59–161 (1973)). A district judge may not grant a new trial simply because he or she disagrees with the verdict. *Id* at 685. "The trial judge is free to weigh the evidence himself [or herself] and need not view it in the light most favorable to the verdict winner." *Id.* at 683 (citations omitted). The Second Circuit will reverse a district court's denial of a motion for new trial only if there has been an abuse of discretion. *Ball v. Interoceanica Corp.* 71 F.3d 73, 76 (2d Cir.1995) (citing *Blissett v. Coughlin*, 66 F.3d 531, 535 (2d Cir.1995)). An abuse of discretion includes the granting of a new trial when " 'there is no great weight of the evidence in any direction.' " (*Williams v. City of Valdosta*, 689 F.2d 964, 976 (11th Cir.1982)).

Case 1:20-cv-10540-AK   Document 153-1   Filed 02/06/23   Page 4 of 7

Bruneau v. South Kortright Cent. School, 962 F.Supp. 301 (1997)
118 Ed. Law Rep. 892

The plaintiff has set forth several arguments which she claims entitle her to a new trial. First, Bruneau asserts that she was unable to establish that she was the victim of unwelcome sexual harassment because the child witnesses called presented false testimony due to an atmosphere of coercion created in part by the presence in the courtroom of their former teacher, principal, and superintendent during their testimony. Second, plaintiff contends that she did in fact establish that she was harassed due to her gender. Third, Bruneau contends that the coercive atmosphere which resulted in false testimony prevented her from establishing the third element of her case which required a showing that she was subjected to an intimidating, hostile, abusive, or offensive educational environment. Fourth, plaintiff contends that the Court erred by holding that the proper standard of notice in this case was actual, not constructive notice, and that she did in fact establish notice. Finally, Bruneau submits that the standard for remedial action taken by the School, specifically that the School must have taken "corrective action to remedy the situation," was improperly restrictive and thus prevented her from establishing the fifth element of her case. For the reasons set forth below, the Court denies the plaintiff's motion for a new trial.

*304 A. *Atmosphere of Coercion and False Testimony*

[1] Plaintiff submits that she was unable to establish the first element of her case, that she was a victim of sexual harassment, because the defendants presented child witnesses whose testimony was so severely tainted by their continued enrollment at the School that their testimony must be considered to be false. Bruneau further argues that a ruling by the Court which allowed the students' teacher, a superintendent and former principal to be present at the defense table was erroneous and contributed to an atmosphere of coercion which led in part to the alleged false testimony.

The atmosphere was certainly stressful for the students who were testifying. However, having witnessed the testimony, the Court is satisfied that there is no evidence of coercion. Furthermore, the plaintiff does not raise any evidence to establish that the student witnesses did actually testify falsely. In fact, the only thing which Bruneau can rely upon to support her contention is that she presented an entirely different version of the events which allegedly occurred at the School. Fact finding is, of course, the classic function of a jury. The jurors were presented with two opposing viewpoints and had within their powers of perception and reasoning the ability to weigh the testimony and determine the credibility of all of the witnesses, including the children who testified. It would be improper for this Court to "usurp [ ] the jury's function of judging credibility." *Sorlucco,* 971 F.2d at 875 (citing *Tennant v. Peoria & Pekin Union Ry. Co.,* 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944); *Wade v. Orange County Sheriff's Office,* 844 F.2d 951, 955 (2d Cir.1988); *Williams,* 689 F.2d at 976). Furthermore, it is crucial to note that Bruneau had to establish all five remaining elements in order to prevail. In reaching a verdict, it is very possible that the jury chose not to believe the child witnesses who portrayed a different image of the events.[1] In reviewing the testimony of the children, the Court cannot say that the verdict reached by the jury is against the clear weight of the evidence or that it is based on false evidence.

---

[1] The verdict form did not distinguish the five separate elements and therefore there is no way to determine the jury's decision on any particular component.

[2] [3] Plaintiff's second argument that it was error not to sequester William Parker ("Parker"), a teacher, Lynda Race ("Race"), a former assistant superintendent, and Roger Thompson ("Thompson"), a school superintendent, is also unavailing. The Federal Rules of Evidence provide that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses...." Fed.R.Evid. 615. However, the rule

> does not authorize the exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

*Id.* "Rule 615 codified a well-established common law tradition of sequestering witnesses 'as a means of discouraging and exposing fabrication, inaccuracy, and collusion.'" *United States v. Jackson,* 60 F.3d 128, 133 (2d. Cir.1995) (quoting Fed.R.Evid. 615 advisory committee's note; citing *Government of the Virgin Islands v. Edinborough,* 625 F.2d 472, 475–76 (3d Cir.1980);

Case 1:20-cv-10540-AK   Document 153-1   Filed 02/06/23   Page 5 of 7

Bruneau v. South Kortright Cent. School, 962 F.Supp. 301 (1997)
118 Ed. Law Rep. 892

*Frideres v. Schiltz*, 150 F.R.D. 153, 158 (S.D.Iowa 1993)). Sequestration "serves two purposes: it 'exercises a restraint on witnesses "tailoring" their testimony to that of earlier witnesses; and it aids in detecting testimony that is less than candid.' " *Id.* (quoting *Geders v. United States*, 425 U.S. 80, 87, 96 S.Ct. 1330, 1335, 47 L.Ed.2d 592 (1976)).

Although there is a clear inclination toward sequestration, a judge has "discretion in determining whether the witness in question falls within one of the Rule 615 exemptions." *Id.* (citing *United States v. Payan*, 992 F.2d 1387, 1394 (5th Cir.1993)). While the language in Rule 615 seems to suggest that only one individual can be exempt from sequestration in each category, the Second Circuit has held that a district judge has the discretion to exempt more than one witness under one category. "Because the Rule does **\*305** not expressly limit to one the number of exemptions per provision, we conclude that this discretion extends to deciding whether, in a particular case, more than one witness should be exempt under a particular subdivision." *Id.* at 135. The Second Circuit has set out six criteria to consider in making a sequestration exemption:

> 1) how critical the testimony in question is, that is, whether it will involve controverted and material facts; 2) whether the information is ordinarily subject to tailoring, ... such that cross-examination or other evidence could bring to light any deficiencies; 3) to what extent the testimony of the witness in question is likely to encompass the same issues as that of other witnesses ... 4) the order in which the witnesses will testify, 5) any potential for bias that might motivate the witness to tailor his testimony ... and 6) if the court is considering exempting the witness from sequestration under Rule 615(3), whether the witness' presence is 'essential' rather than simply desirable.

*Id.* at 135 (citing *United States v. Prichard*, 781 F.2d 179, 183 (10th Cir.1986); *United States v. Womack*, 654 F.2d 1034, 1040–41 (5th Cir.1981), cert. denied, 454 U.S. 1156, 102 S.Ct. 1029, 71 L.Ed.2d 314 (1982); *United States v. Pulley*, 922 F.2d 1283, 1286–87 (6th Cir.1991); *United States v. Agnes*, 753 F.2d 293, 307 (3d Cir.1985)). The Second Circuit further held that "the burden to demonstrate lack of prejudice, or harmless error, properly falls on the party that had opposed sequestration."[2] *Id.* at 136.

2   In criminal trials involving government agents who have been exempted under Rule 615, "a new trial is in order 'unless it is manifestly clear from the record that the error was harmless or unless the prosecution proves harmless error by a preponderance of the evidence.' " *Jackson*, 60 F.3d at 137 (citing *United States v. Brewer*, 947 F.2d 404, 411 (9th Cir.1991)).

Parker, Race, and Thompson were properly exempted under Rule 615. Parker and Race fall under Rule 615(3) and Thompson is exempt under Rule 615(2). Since Parker was the plaintiff's teacher, it was essential for preparation of the School's defense to have him easily accessible to counsel. Parker was the only legally responsible adult directly aware of what occurred in his classroom during the time in question. Race, as assistant superintendent, had essential knowledge of the School's Title IX policy, had direct contact with the plaintiff's guardian regarding the allegations presented in this case, and knew what actions had been taken to remedy any problems that existed. Finally, Thompson, as the School's current superintendent, has essential knowledge of the development of Title IX policy and must be viewed as the school's "designated representative" under 615(2). It should also be noted that Thompson never testified.

In conclusion, the plaintiff's claim that the presence of Race, Parker, and Thompson created an atmosphere of coercion and resulted in false testimony and that it was error to permit their presence is without merit.

**B. *Harassment Due to Gender***

[4]   In her second argument for a new trial, plaintiff asserts that she was able to establish that she suffered sexual harassment because of her gender. One of the decisions that

Case 1:20-cv-10540-AK   Document 153-1   Filed 02/06/23   Page 6 of 7

Bruneau v. South Kortright Cent. School, 962 F.Supp. 301 (1997)
118 Ed. Law Rep. 892

the jury had to reach was whether the alleged behavior of the boys in the classroom was directed at Bruneau because of her gender or was rather mere misbehavior without gender as a motivating factor. At trial, there was a considerable amount of conflicting evidence on this question. The jury had an abundance of testimony to weigh in reaching its ultimate conclusion that Bruneau did not prove her case. The Court notes that Bruneau had to establish five separate elements, including harassment due to gender, in order to prevail. See *Davis v. Monroe County Bd. of Educ.*, 74 F.3d 1186, 1194, vacated 91 F.3d 1418 (11th Cir.1996).[3] Thus, the plaintiff may have persuaded the jury on this point yet failed to prevail on others. In conclusion, the argument that this element was established, by itself, does not warrant a new trial.

3   *Davis* has been vacated pending a rehearing en banc. Nevertheless, the Court finds that the rationale used in arriving at the five elements needed to establish a hostile learning environment created by peer sexual harassment is sound.

*306 **C. Intimidating, Hostile, Abusive or Offensive Educational Environment**

In the third argument, Bruneau asserts that false testimony of the eight child witnesses who still attend the School prevented her from establishing the necessary element that she suffered from an intimidating, hostile, abusive, or offensive educational environment. As discussed earlier, Bruneau does not offer any evidence in support of her claim that eight child witnesses testified falsely, only her conclusion to that effect. In addition, it is possible that the jurors found that the plaintiff had in fact met the burden of proving this element yet failed in another. This argument alone is not sufficient to grant a new trial.

**D. Actual or Constructive Notice**

[5] Bruneau argues that the Court erred in holding that the proper standard of notice in this case is actual rather than constructive notice. Plaintiff submits that in Title IX cases, the proper standard is constructive notice and it was improper to apply the Title VII standard of actual notice in this case. As set forth in the Court's Memorandum–Decision and Order, dated July 24, 1996, Title VII elements were applied to this Title IX case. *Bruneau v. South Kortright Central School Dist.*, 935 F.Supp. 162, 174 (N.D.N.Y.1996). As Chief Judge McAvoy determined, the "reasoning for applying constructive notice to Title VII claims arises out of agency principles ... [and]

[a]lthough an employee is an agent of an employer, a student, of an educational institution, is not, *per se* an agent of that institution." Memorandum–Decision and Order at 173 (citing *Meritor Savings Bank, F.S.B. v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986)). The plaintiff has provided no governing authority that warrants a departure from the requirement that the plaintiff prove actual notice.

[6] Plaintiff further submits that the Court erred in excluding certain School employees from a list of individuals to whom knowledge of the alleged harassment would constitute actual notice to the School. The jury was instructed that knowledge on the part of Parker, Race, and Debra Joyal–Reinish ("Joyal–Reinish"), the plaintiff's guidance counselor, would establish actual notice on the part of the School. However, plaintiff argues that knowledge on the part of Patrick Clark ("Clark"), a School counselor, Richard Stinson ("Stinson"), a School Board member, and Donna Chinchen ("Chinchen"), Parker's teaching assistant, should also have been imputed to the School. In addition, Bruneau argues that knowledge on the part of three other individuals, specifically Bonnie Denison ("Denison"), a gym teacher, Lucy Kelly ("Kelly"), a fourth grade teacher, and Ann Cole ("Cole"), a student intern in the counseling office, should also be imputed to the School.

This subject was debated at length at both the pre-trial conference and during the trial itself. In the motion papers for a new trial, plaintiff's counsel expresses confusion over why notice to the first three individuals constitutes notice to the School yet notice to the remaining six does not. The answer is very simple: the six people who plaintiff contends should be included are too far removed to have actual knowledge of the events to impute knowledge to the School. Parker, Race, and Joyal–Reinish each had direct contact and exposure to the alleged events. As the plaintiff's teacher, Parker was the individual with the most knowledge. Race had direct contact with the plaintiff's guardian during the events in question and was Parker's direct supervisor. Joyal–Reinish also had first-hand knowledge of the events since the plaintiff approached her for guidance in the School counseling office.

On the other hand, Clark was only employed by the School for one month before Bruneau withdrew and he testified that he never spoke with her about sexual harassment in Parker's class. Stinson, although a School Board member, did not have any first-hand knowledge of the events that occurred in Parker's classroom other than what the plaintiff's guardian had informed him shortly before Bruneau's departure. Chinchen, while in Parker's class as an assistant, did not have the

Case 1:20-cv-10540-AK   Document 153-1   Filed 02/06/23   Page 7 of 7

Bruneau v. South Kortright Cent. School, 962 F.Supp. 301 (1997)
118 Ed. Law Rep. 892

authority to remedy any situation which may have existed. While plaintiff may have discussed problems in Parker's class with Denison, her gym teacher, Denison *307 was too far removed from the situation to substantiate any allegations or act in a remedial capacity. Kelly, plaintiff's fourth grade teacher, was also too far removed to act in a remedial capacity. Finally, Cole, as a student intern, lacked any official capacity whatsoever. Thus, there is no evidence presented by the plaintiff that the Court committed a clear error of law that would warrant a new trial. Furthermore, there has been no showing that the holding prejudiced the plaintiff. Once again, the jury may have reached the conclusion that the School did in fact have actual notice but determined that the plaintiff failed to meet her burden on one of the other remaining elements of her cause of action.

[7]   Finally, plaintiff asserts that the Court erred in declining to admit into evidence a memorandum written by Race which describe her encounter with Pat Schofield, the plaintiff's guardian. Bruneau contends that the memorandum sets forth the specific concerns of the events occurring in the classroom and constitutes actual notice on its face. The memorandum in question is dated June 9, 1994, months after Bruneau left the School. Furthermore, the letter does not present any new or different information than what was revealed at trial. The letter offers only cumulative testimony to what Race testified subject to cross-examination. *See* Fed.R.Evid. 403.[4] Therefore, the letter was properly excluded.

4      Rule 403 states:
> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

### E. *"Corrective Action to Remedy the Situation"*

[8]   In the final argument for a new trial, plaintiff asserts that the Court improperly restricted counsel from using the appropriate legal language throughout the trial when arguing that the School failed to take corrective action. Specifically, Bruneau argues that even though the Court used broader language in the jury charge, counsel was restricted to using the term "corrective action to remedy the situation" at trial. Plaintiff further contends that they did indeed show that the School failed to take corrective action and therefore the jury verdict is clearly erroneous.

In the jury charge, the term used was: "corrective action to remedy the discriminatory conduct and hostile learning environment." There is little difference between that term and the term that counsel used during the trial and it is very unlikely that any confusion on the part of the jury resulted. Plaintiff's counsel was permitted to use the terms discriminatory conduct and hostile learning environment throughout the trial in varying contexts. There has been no showing by the plaintiff that there was prejudice or that the ruling was erroneous. Therefore, on that ground, a new trial cannot be granted.

Plaintiff's contention that the vast weight of the evidence at trial confirmed that the School took no appropriate corrective action to remedy any problems that existed is simply not true. There were conflicting accounts of the corrective action taken by the defendants in this case. Plaintiff argued that the School actually exacerbated the problem and the defendants argued that any misbehavior was quickly and effectively handled. Once again, it was the jury's responsibility to resolve this question of fact. It would be improper for this Court to substitute its opinion for that of the jury when there are two conflicting presentations of fact. *See Sorlucco,* 971 F.2d at 875.

Accordingly, it is

ORDERED that the plaintiff's motion for a new trial is DENIED; and it is further

ORDERED that the Clerk of the court shall serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.

**All Citations**

962 F.Supp. 301, 118 Ed. Law Rep. 892

End of Document     © 2023 Thomson Reuters. No claim to original U.S. Government Works.