**Gourdeau v. City of Newton, 238 F.Supp.3d 179 (2017)**
97 Fed.R.Serv.3d 102, 2017 Wage & Hour Cas.2d (BNA) 65,496

🚩 KeyCite Yellow Flag - Negative Treatment
Declined to Follow by Gomes v. Steere House, D.R.I., November 2, 2020

238 F.Supp.3d 179
United States District Court, D. Massachusetts.

Jo Anne GOURDEAU, Plaintiff,
v.
CITY OF NEWTON, Newton Police Department, Defendants.

CIVIL ACTION NO. 13–12832–WGY
|
Signed 03/02/2017

**Synopsis**
**Background:** Female employee of city police department brought action against city and department, asserting claims for gender discrimination and retaliation under Massachusetts law, and for retaliation in violation of Family and Medical Leave Act (FMLA). After summary judgment was granted in favor of defendants on Massachusetts law claims, jury trial on FMLA claim was held.

**Holdings:** The District Court, Young, J., held that:

[1] uncertainty as to correct causation standard applicable to FMLA retaliation cases warranted charging jury to return special verdict, and

[2] retaliation claims brought under the FMLA must be proved according to a but-for causation standard.

Ordered accordingly.

West Headnotes (9)

[1]  **Federal Civil Procedure** ⚬ Conformity to issues; several issues
General verdicts are acceptable even when multiple theories of liability or guilt are submitted to the jury under a single count, and the verdict does not specify which of the theories the jury relied upon.

[2]  **Federal Civil Procedure** ⚬ Special Verdict
By using special verdicts in appropriate cases, courts can better focus the jury's attention on specific material issues of fact, and preserve important issues for appeal. Fed. R. Civ. P. 49(a)(1).

[3]  **Federal Civil Procedure** ⚬ Particular actions or issues
At close of FMLA retaliation trial, uncertainty as to correct causation standard applicable to FMLA retaliation cases warranted charging jury to return special verdict, which applied both "negative factor" standard and heavier "but-for" standard; court's only alternative was to delay jury deliberations until it decided issue of appropriate causation standard, which would have caused burdensome delays and prevented court from examining topic with care justice required. Family and Medical Leave Act of 1993 § 105, 29 U.S.C.A. § 2615(a); Fed. R. Civ. P. 49(a)(1).

3 Cases that cite this headnote

[4]  **Labor and Employment** ⚬ Motive or intent in general
When an employee sues under an FMLA retaliation theory, the employer's motive is key, and the specific issue becomes whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason. Family and Medical Leave Act of 1993 § 105, 29 U.S.C.A. § 2615(a).

2 Cases that cite this headnote

[5]  **Labor and Employment** ⚬ Retaliation in general
To make out a prima facie case for FMLA retaliation, the employee must demonstrate that: (1) he availed himself of a protected right under

the FMLA; (2) he was adversely affected by an employment decision; and (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action. Family and Medical Leave Act of 1993 § 105, 29 U.S.C.A. § 2615(a).

7 Cases that cite this headnote

[6]  **Labor and Employment** ⚞ Presumptions and burden of proof

If the employee successfully makes out a prima facie case of FMLA retaliation, the burden of production then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's termination that is legally sufficient to justify a judgment for the employer; if the employer produces such evidence, the presumption of discrimination drops from the case, and the plaintiff retains the ultimate burden of showing that the employer's stated reason for terminating him was in fact a pretext for retaliating against him for having taken protected FMLA leave. Family and Medical Leave Act of 1993 § 105, 29 U.S.C.A. § 2615(a).

2 Cases that cite this headnote

[7]  **Administrative Law and Procedure** ⚞ Deference to Agency in General

Congressional delegation of rulemaking authority to an agency is merely a necessary condition for 🚩 *Chevron* deference, not a sufficient one.

[8]  **Administrative Law and Procedure** ⚞ Plain, literal, or clear meaning; ambiguity or silence

🚩 *Chevron* deference is rooted in a background presumption of congressional intent, namely, that Congress, when it left ambiguity in a statute administered by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency, rather than the courts, to possess whatever degree of discretion the ambiguity allows.

[9]  **Labor and Employment** ⚞ Retaliation in general

Retaliation claims brought under the FMLA must be proved according to a but-for causation standard. Family and Medical Leave Act of 1993 § 105, 29 U.S.C.A. § 2615(a).

3 Cases that cite this headnote

**West Codenotes**

**Held Invalid**

🚩 29 C.F.R. § 825.220(c)

**Attorneys and Law Firms**

**\*180** Jeffrey M. Simons, Matthew J. Fogelman, Fogelman & Fogelman LLC, Newton, MA, for Plaintiff.

Angela C. Smagula, City of Newton Law Department, Newton, MA, Donnalyn B. Kahn, City Solicitor's Office City of Newton Law Department, Newton Centre, MA, for Defendants.

## MEMORANDUM OF DECISION

WILLIAM G. YOUNG, U.S. DISTRICT JUDGE

### I. INTRODUCTION

In this action, Jo Anne Gourdeau ("Gourdeau"), employed by the Newton Police Department (the "Department"), brought suit against the City of Newton (the "City", collectively, with the Department, the "Defendants") and the Department for gender discrimination in violation of 🚩 Massachusetts General Laws chapter 151B, section 4 (count I), retaliation for filing an internal gender discrimination complaint in violation of 🚩 Massachusetts General Laws chapter 151B, section 4 (count II), and retaliation for use of protected family and medical leave in violation of the Family and Medical Leave Act ("FMLA" or the "Act"), 🚩 29 U.S.C. sections 2601–2619 (count III). After the Court granted summary judgment in favor of the City as to counts I

Gourdeau v. City of Newton, 238 F.Supp.3d 179 (2017)
97 Fed.R.Serv.3d 102, 2017 Wage & Hour Cas.2d (BNA) 65,496

and II, count III proceeded to trial. Following a three-day trial, the jury returned a verdict for the Defendants.

This straightforward narrative belies an important and difficult legal question that arose at the end of the trial. Before the case concluded, this Court consulted the parties about its plans to charge the jury to return a general verdict. Both parties objected, raising a dispute about the appropriate causation standard applicable in FMLA retaliation cases. Recognizing the uncertainty concerning the correct legal standard, this Court concluded that a general verdict would be inappropriate, and instead decided to charge the jury to return a special verdict under Federal Rule of Civil Procedure 49(a). This memorandum **\*181** explains this Court's reasoning for doing so.

### A. Factual Background

The Department has employed Gourdeau since June 1, 1998. Statement Undisputed Facts Supp. Mot. Summ. J. Defs. ("Defs.' Statement Facts") ¶ 12, ECF No. 41; Pl.'s Concise Statement Material Facts R. ("Pl.'s Statement Facts") ¶ 1, ECF No. 48. Initially hired as a patrol officer, Gourdeau has also occupied the positions of Traffic Officer (2004–2009) and Safety Officer (2009–2014). Defs.' Statement Facts ¶ 17; Pl.'s Statement Facts ¶¶ 1–4. Between 2008 and 2012, Gourdeau took several days off for personal and family-related medical reasons. Defs.' Statement Facts ¶ 14; Pl.'s Statement Facts ¶ 29.

On November 23, 2012, the Department created a temporary Traffic Officer specialist position. Defs.' Statement Facts ¶ 30; Pl.'s Statement Facts ¶ 5. Four officers, including Gourdeau, applied for the position. Defs.' Statement Facts ¶ 34; Pl.'s Statement Facts ¶ 9. The Department did not select Gourdeau for the new position. Defs.' Statement Facts ¶ 41; Pl.'s Statement Facts ¶¶ 11–12.

After her non-selection, Gourdeau's union filed a grievance alleging that the City had violated an existing Collective Bargaining Agreement by not selecting her as the temporary Traffic Officer due to her seniority. Defs.' Statement Facts ¶¶ 46–48; Pl.'s Statement Facts ¶ 46. Ultimately, the grievance was settled and Gourdeau received $4,992 from the Department.[1] Defs.' Statement Facts ¶¶ 49–51; Pl.'s Statement Facts ¶ 47.

[1] Although Gourdeau ultimately received the full $4,992, she never signed the settlement because she disputed the amount. Pl.'s Statement Facts ¶¶ 47–48.

Gourdeau claims that she was a victim of retaliation for using FMLA-protected leave, as well as for complaining about not being selected for the temporary Traffic Officer position. Pl.'s Statement Facts ¶¶ 28, 33–35. Specifically, Gourdeau argues that the Department did not select her for the position in retaliation for taking FMLA-protected leave. Id. at ¶ 28.

### B. Procedural History

Gourdeau initiated this action on October 23, 2013, in the Middlesex County Massachusetts Superior Court sitting in and for the County of Middlesex. Notice Removal, Ex. 3, Compl. and Jury Demand, ECF No. 1–3. The Defendants removed the case to this Court on November 8, 2013. Notice Removal, ECF No. 1.

On November 25, 2015, the Defendants filed a motion for summary judgment, Mot. Summ. J. Defs., ECF No. 37, along with a supporting memorandum, Mem. Supp. Mot. Summ. J. Defs., ECF No. 38, and statement of facts, Defs.' Statement Facts. On December 30, 2015, Gourdeau filed a memorandum opposing the Defendants' motion for summary judgment, Pl.'s Mem. Opp'n Defs.' Mot. Summ. J., ECF No. 49, along with a supporting statement of facts, Pl.'s Statement Facts. On January 11, 2016, the Defendants filed a reply. Reply Br. Supp. Mot. Summ. J. Defs., ECF No. 52. Gourdeau filed a sur-reply on January 15, 2016, Pl.'s Surreply Opp'n Defs.' Mot. Summ. J. (Dkt. #37), ECF No. 54. Upon the report and recommendation by Magistrate Judge Cabell, Report and Recommendation Regarding Defs.' Mot. Summ. J., ECF No. 61, District Judge Sorokin granted the Defendants' motion for summary judgment as to counts I and II and denied it with respect to count III. Electronic Clerk's Notes, ECF No. 64.

A jury trial on the surviving claim commenced on December 6, 2016. Electronic **\*182** Clerk's Notes, ECF No. 88. On December 8, 2016, the jury returned its special verdict.[2] Jury Verdict, ECF No. 98. The jury's answers mandated the entry

**Gourdeau v. City of Newton, 238 F.Supp.3d 179 (2017)**
97 Fed.R.Serv.3d 102, 2017 Wage & Hour Cas.2d (BNA) 65,496

of judgment for the City of Newton. This Court entered judgment upon this jury verdict on December 13, 2016. J., ECF No. 100.

[2]   This Court posed the following three questions to the jury: 1) Did the City of Newton consider protected FMLA sick leave a "negative factor" when evaluating Jo Anne Gourdeau for the disputed position?; 2) Whatever your answer to question 1 alone, did the City of Newton select another officer for the disputed position for legitimate reasons?; and 3) After first subtracting the monetary value of the labor settlement, what additional compensation, if any, including stipend and overtime pay would Jo Anne Gourdeau have received had she been selected for the disputed position? Jury Verdict. The jury answered "no" to question 1 and "yes" to question 2. Id. Based on its negative answer to question 1, the jury did not proceed to answer question 3. Id.

## II. ANALYSIS

The Court here explains why it held that a general verdict was inappropriate in this case and opted instead to charge the jury to return a special verdict under Federal Rule of Civil Procedure 49(a). The Court then turns to addressing the appropriate causation standard applicable in FMLA retaliation cases.

### A. Inappropriateness of a General Verdict

[1] The jury charge is perhaps the greatest intellectual challenge facing a busy trial judge. "The trial judge is constantly required to be comprehensively brief, perhaps the most daunting oxymoron in the law. The judge must be understood by lay jurors while delineating complex legal norms with scrupulous accuracy. It is the most challenging law teaching of our time." Collins v. Ex–Cell–O Corp., 629 F.Supp. 540, 541 (D. Mass. 1986). Throughout the jury trial, this Court—simply but rather naively—assumed that a general verdict instruction was perfectly suitable for this case. After all, that general jury verdicts are the norm rather than the exception has been well-settled law since the time English common law ruled this land. See Griffin v. United States, 502 U.S. 46, 49–51, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) (discussing the history of general jury verdicts in criminal cases); see also Edmund M. Morgan, A Brief History of Special Verdicts and Special Interrogatories, 32 Yale L.J. 575 (1923). General verdicts are acceptable even when multiple theories of liability or guilt are submitted to the jury under a single count, and the verdict does not specify which of the theories the jury relied upon. See Claassen v. United States, 142 U.S. 140, 146, 12 S.Ct. 169, 35 L.Ed. 966 (1891) ("[I]t is settled law in this court, and in this country generally, that in any criminal case a general verdict and judgment on an indictment or information containing several counts cannot be reversed on error if any one of the counts is good, and warrants the judgment.").

[2] Although general verdicts are the norm, a district court "may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact." Fed. R. Civ. P. 49(a)(1)[3]; see also **\*183** Anderson v. Cryovac, Inc., 862 F.2d 910, 915–16 (1st Cir. 1988) (discussing district courts' application of special verdicts and appropriate standard of review for such decisions). By using special verdicts in appropriate cases, courts can better focus the jury's attention on specific material issues of fact (and preserve important issues for appeal). See Edson R. Sunderland, Verdicts, General and Special, 29 Yale L.J. 253, 259 (1920) ("It is easy to make mistakes in dealing at large with aggregates of facts. The special verdict compels detailed consideration. But above all it enables the public, the parties and the court to see what the jury really has done."). The risks, however, are fairly obvious. Complex special verdicts may bore jurors and allow their minds to wander. Collins, 629 F.Supp. at 541 (raising a similar point about illustrative charges).

[3]   Federal Rule of Civil Procedure 49(a)(1) provides that:
The court may require a jury to return only a special verdict in the form of a special written finding on each issue of fact. The court may do so by:
(A) submitting written questions susceptible of a categorical or other brief answer;
(B) submitting written forms of the special findings that might properly be made under

  the pleadings and evidence; or
  (C) using any other method that the court considers appropriate.

[3] Here, as in most cases, the offering of evidence concluded during the morning, the charge conference was scheduled for that afternoon, and the jury was told to return on the morrow to hear closing arguments and receive their charge. During the charge conference, counsel diligently brought to the Court's attention an existing uncertainty concerning the correct standard of causation (discussed below) applicable to FMLA retaliation cases. More important, this Court was caught short, realizing that it could not timely decide the correct causation standard to teach to the jury. This practical recognition made it clear that a general verdict would be inappropriate. Therefore, this Court charged the jury to return a special verdict. The alternative was to delay jury deliberations until this Court decided the issue of the appropriate causation standard for the case. This would cause burdensome delays and likely prevent this Court from examining this topic with the care justice requires. Such a result is unacceptable. Now, however, weeks following the jury trial and after rigorous study, a decent respect for the able argument of counsel compels consideration of this pending issue.[4]

---

[4]   Notably, the jury verdict ultimately rendered the causation standard issue moot, since the jury found that the City of Newton had not considered FMLA-protected sick leave as a negative factor when evaluating Gourdeau for the disputed position. Jury Verdict. In any case, this Court now takes the time to address this point in dicta to shed light on this difficult legal question.

### B. Causation Standard in FMLA Retaliation Cases

At first, this case appeared to present fairly straightforward legal issues. When the jury trial was proceeding to conclusion, however, an interesting and difficult legal question arose. Did Gourdeau carry the burden of proving that the Department had used her FMLA-protected sick leave only as a <u>negative factor</u> in reviewing her application for the temporary Traffic Officer position? Or did Gourdeau carry the heavier burden of proving that she would have gotten the temporary position <u>but for</u> her taking FMLA-protected leave? In other words, what is the legally required causation standard applicable in FMLA retaliation cases?

### 1. FMLA's Background

Congress enacted the FMLA with two main purposes, namely "to balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1) & (2); Hodgens v. General Dynamics Corp., 144 F.3d 151, 159 (1st Cir. 1998). The statute includes two types of provisions, "those establishing substantive rights and those providing protection for the exercise of those rights." *184 Colburn v. Parker Hannifin, 429 F.3d 325, 330 (1st Cir. 2005) (citing inter alia 29 U.S.C. §§ 2612, 2614, 2615). In terms of substantive rights, the FMLA entitles an employee to take up to twelve weeks of leave during any twelve-month period for a variety of reasons, including to care for a family member, such as a parent, with a serious health condition. 29 U.S.C. § 2612(a)(1); Nagle v. Acton–Boxborough Reg'l Sch. Dist., 576 F.3d 1, 2 (1st Cir. 2009); Hodgens, 144 F.3d at 159. Upon an employee's return from qualified FMLA leave, her employer must reinstate her to the same or an equivalent position, without loss of accrued seniority. 29 U.S.C. § 2614(a)(1) & (3); Colburn, 429 F.3d at 330; Hodgens, 144 F.3d at 159.

To protect these substantive rights, the FMLA makes it unlawful for any employer to retaliate against employees for invoking their substantive rights.[5] See Carrero–Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 718 (1st Cir. 2014) (citing 29 U.S.C. § 2615(a)(1) & (2)); Henry v. United Bank, 686 F.3d 50, 55 (1st Cir. 2012) ("The Act also prohibits employers from retaliating against employees for exercising their statutory rights."). Section 2615(a)(1) makes "[i]t ... unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the Act. Section 2615(a)(2) holds employers liable if they "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" under the Act. See Colburn, 429 F.3d at 331 (explaining the differences and overlaps between claims brought under sections 2615(a)(1) and 2615(a)(2)).

5   Although the text of section 2615(a) does not reference "retaliation" explicitly, the First Circuit consistently has recognized such a cause of action is present in the statute and its supporting regulation. See Colburn, 429 F.3d at 331; Hodgens, 144 F.3d at 160–61 & n.4 (citing 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c)). The applicable regulation reads: "[t]he Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c) (emphasis added). Other circuits have held that claims of alleged retaliation for taking protected leave arise under FMLA's general discrimination provision, 29 U.S.C. section 2615(a)(2). See, e.g., Brisk v. Shoreline Found., Inc., 654 Fed.Appx. 415, 416 (11th Cir. 2016); Menekse v. Harrah's Chester Casino & Racetrack, 649 Fed.Appx. 142, 145 (3rd Cir. 2016); Spakes v. Broward Cnty. Sheriff's Office, 631 F.3d 1307, 1308 (11th Cir. 2011); Phillips v. Mathews, 547 F.3d 905, 909 (8th Cir. 2008); Hoge v. Honda of Am. Mfg., Inc., 384 F.3d 238, 244 (6th Cir. 2004); Smith v. Diffee Ford–Lincoln–Mercury, Inc., 298 F.3d 955, 960 (10th Cir. 2002).

[4] When, as in this case, an employee sues under a retaliation theory, the employer's motive is key, and the specific issue becomes "whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." Hodgens, 144 F.3d at 160. In Hodgens, the First Circuit relied on the familiar framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800–06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to analyze "the tricky issue of motivation" in employment discrimination cases, lacking direct evidence of discrimination, brought under Title VII of the Civil Rights Act of 1964 ("Title VII").6 Hodgens, 144 F.3d at 160.

6   Although this burden-shifting framework is most often used to evaluate cases during the pretrial stage, especially at summary judgment, it still "lurks in the background during trial." Palmquist v. Shinseki, 689 F.3d 66, 71 (1st Cir. 2012).

[5] [6] Under the McDonnell Douglas framework, a plaintiff employee bears the initial burden of establishing a prima facie case of discrimination or retaliation.

*185 To make out a prima facie case for retaliation, [the employee] must demonstrate that (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; [and] (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action.

Hodgens, 144 F.3d at 161. If the employee successfully makes out a prima facie case, the burden of production then shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's [termination]" that is "legally sufficient to justify a judgment for the [employer]." Id. at 160–61 (quoting McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817 and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If the employer produces such evidence, "the presumption of discrimination drops from the case, and the plaintiff retains the ultimate burden of showing that the employer's stated reason for terminating him was in fact a pretext for retaliating against him for having taken protected FMLA leave." Id. at 161.

Here, neither party disputes that Gourdeau took FMLA-protected leave and that there was an adverse employment action (the denial of the temporary position). Defs.' Statement Facts ¶¶ 14, 41; Pl.'s Statement Facts ¶¶ 11–12, 29. The crucial question, then, is whether there is a causal connection between Gourdeau's protected activity and the City's adverse action.

Neither the Supreme Court nor the First Circuit has addressed the specific issue concerning the causation standard applicable to FMLA retaliation cases.7 Notwithstanding the absence of binding precedent, this Court does not write on a pristine page. Three arguments strongly support the conclusion that "but-for" is the appropriate causation standard for FMLA retaliation cases. The first

argument concerns the significance of Congress's choices in designing and structuring statutes that regulate wrongful employer conduct, such as retaliation and other forms of status-based discrimination. The second argument relates to the proper interpretation of the FMLA's text. Both arguments follow from recent Supreme Court and First Circuit jurisprudence on discrimination and retaliation in the workplace. Third, there are important policy considerations that favor a "but-for" test. There is, however, one significant argument in favor of a negative-factor standard that merits attention. The argument for a negative-factor test relates to a Department of Labor regulation and the extent to which the agency's rule deserves controlling deference. The subsequent sections discuss each of these arguments in turn.

7     In Chase v. United States Post. Service, 843 F.3d 553, 559 n.2 (1st Cir. 2016), the First Circuit noted the existing tension in the case law as to the appropriate causation standard to apply in FMLA retaliation cases, but it ultimately declined to address this issue.

### 2. Supreme Court's Employment Discrimination Jurisprudence

In addition to the absence of binding precedent on the appropriate causation standard applicable in FMLA retaliation cases, the Supreme Court's recent workplace discrimination jurisprudence further muddies the waters. It may be helpful, therefore, to revisit that court's relevant precedents on this issue.

In Price Waterhouse v. Hopkins, the Supreme Court held that an employee who alleges employment discrimination under Title VII could prevail if she showed that the motive to discriminate was one of the elements of the employer's decision, even if the employer also had other, lawful motives. **\*186** 490 U.S. 228, 258, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). If the plaintiff made that showing, the burden of persuasion shifted to the employer, who could escape liability if it proved that it would have taken the same employment action in the absence of all discriminatory animus. Id. at 244–45, 109 S.Ct. 1775 (concluding that, under 42 U.S.C § 2000e–2(a)(1), an employer could "avoid a finding of liability ... by proving that it would have made the same decision even if it had not allowed gender to play such a role"). In other words, employers have to show that a discriminatory motive was not the but-for cause of the adverse employment action.

In 1991, partially in response to Price Waterhouse, Congress altered Title VII to codify in part and abrogate in part the holding in that case. See Landgraf v. USI Film Prods., 511 U.S. 244, 250, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) ("The 1991 Act is in large part a response to a series of decisions of this Court interpreting the Civil Rights Acts of 1866 and 1964."). In the Civil Rights Act of 1991, Pub. L. No. 102–166, 105 Stat. 1071(codified as amended at 42 U.S.C. §§ 2000e–2(m),[8] 2000e–5(g)(2)(B)) ("1991 Amendment"), Congress authorized discrimination claims where an improper consideration was only "a motivating factor" in the adverse action. Simply put, Congress explicitly established a lessened causation standard for discrimination claims brought under Title VII than the one created in Price Waterhouse. The 1991 Amendment also substituted a new burden-shifting framework for the one endorsed in Price Waterhouse. 42 U.S.C. §§ 2000e–5(g)(2)(B).[9] Under that new regime, a plaintiff can prevail in Title VII discrimination claims by showing that race, color, religion, sex, or nationality was a motivating factor in the adverse employment action, unless the employer can show that it would have taken the same action absent that factor. See University of Tex. Sw. Med. Ctr. v. Nassar, ––– U.S. ––––, 133 S.Ct. 2517, 2526, 186 L.Ed.2d 503 (2013) (describing effect of 1991 Amendment on causation standard).

8     42 U.S.C. §§ 2000e–2(m) provides that: "Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."

9     42 U.S.C. §§ 2000e–5(g)(2)(B) provides that: On a claim in which an individual proves a violation under section 2000e–2(m) of this title and a respondent demonstrates that the respondent would have taken the same action

in the absence of the impermissible motivating factor, the court (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m) of this title; and (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

Considerable time passed before the Supreme Court returned to this topic. In 2009, the Supreme Court splitting 5–4 concluded that a plaintiff bringing a disparate-treatment claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, must prove, by a preponderance of the evidence, that but for the employer discriminating on the basis of age, the plaintiff would not have been subject to an adverse employment action. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). In Gross, the Justices paid particular attention to the contrasting statutory histories of ADEA and Title VII. Id. at 174–75, 129 S.Ct. 2343. They placed great importance on the fact that, while the 1991 *187 amendments to Title VII "explicitly authoriz[ed] discrimination claims [where] an improper consideration was [only] 'a motivating factor' for an adverse employment decision," Congress neglected to amend the ADEA in a similar fashion, even though the legislature amended both statutes contemporaneously. Id. ("When Congress amends one statutory provision but not another, it is presumed to have acted intentionally.... As a result, the Court's interpretation of the ADEA is not governed by Title VII decisions such as Desert Palace and Price Waterhouse." (citing EEOC v. Arabian Am. Oil Co., 499 U.S. 244, 256, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991))).

In 2013, the Supreme Court revisited this topic in Nassar, 133 S.Ct. at 2528. In another 5–4 decision, the court rejected the argument that the 1991 amendments which established a "motivating factor" test for Title VII discrimination claims was also applicable to Title VII retaliation claims. Id. at 2528, 2533 (citing 42 U.S.C. § 2000e–3(a)). The Supreme Court noted that "[w]hen Congress wrote the motivating-factor provision in 1991, it chose to insert it as a subsection within section 2000e–2, which contains Title VII's ban on status-based discrimination, § 2000e–2(a) to (d), (l), and says nothing about retaliation." Id. at 2529. In other words, the Justices concluded "that Congress acted deliberately when it omitted [Title VII] retaliation claims from" the motivating-factor standard established for discrimination claims brought under the same statute. Id. Adding to this the premise that but-for is the default causation standard under tort law, id. at 2525, the court concluded that the appropriate causation standard for Title VII retaliation claims is a but-for standard. Id. at 2533. To hold otherwise, they argued, would go against Title VII's statutory history as well as its "design and structure." Id. at 2529.

### 3. FMLA's Structure and Legislative History

The same argument can be made regarding the FMLA, which was enacted in 1993, just two years after the 1991 amendments to Title VII and the enactment of ADEA.[10] When drafting the FMLA, Congress neglected to authorize retaliation claims where an improper consideration, an employee's protected leave, was a motivating factor for an adverse employment action. See 29 U.S.C. § 2615(a). Like the ADEA and Title VII's retaliation provisions, the FMLA contains no language allowing for a negative-factor standard.[11] Compare 29 U.S.C. § 2615(a), with 29 U.S.C. § 623(a)(1), 42 U.S.C. § 2000e–3(a). Following the majority's logic in Nassar, this omission indicates Congress's intent that FMLA retaliation cases be subject to a but-for causation standard. See Lindh v. Murphy, 521 U.S. 320, 330, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) (acknowledging "the familiar rule that negative implications raised by disparate provisions are strongest when the portions of a statute treated differently had already been joined *188 together and were being considered simultaneously when the language raising the implication was inserted"); Palmquist v. Shinseki, 689 F.3d 66, 76 (1st Cir. 2012) ("That Congress added 'motivating factor' language only to Title VII strongly suggests that such language should not be engrafted by judicial fiat onto other laws that Congress amended at the same time." (citing Gross, 557 U.S. at 174, 129 S.Ct. 2343)); Tanca v. Nordberg, 98 F.3d 680, 683–84 (1st Cir. 1996) ("[B]ecause Congress

addressed the retaliation section elsewhere in the 1991 Act, but chose not to do so in section 107(a) or (b), it would seem that 'where Congress intended to address retaliation violations, it knew how to do so and did so expressly.' " (citations omitted)).

[10] While it is true that the majority in Gross warned that courts "must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination," Gross, 557 U.S. at 174, 129 S.Ct. 2343 (internal quotation marks omitted), the Justices also invited other courts to evaluate carefully whether Title VII's mixed motive causation test should be readily imported into other statutes. Id.

[11] Title VII's discriminatory practices provisions use the phrase "motivating factor." 42 U.S.C. §§ 2000e–2(m), 2000e–5(g)(2)(B). In contrast, the FMLA's regulations incorporate the term "negative factor." 29 C.F.R. § 825.220(c). Courts, however, appear to use the terms interchangeably, suggesting that the two are synonymous. As such, this Court adopts that approach.

In fact, Congress explicitly modeled the FMLA's retaliation provision after Title VII's:

> Section 105(a)(2) makes it unlawful for an employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title. This "opposition" clause is derived from title VII of the Civil Rights Act of 1964 ( 42 U.S.C. 2000e–3(a)) and is intended to be construed in the same manner. Under title VII and under section 105(a), an employee is protected against employer retaliation for opposing any practice that he or she reasonably believes to be a violation of this title.

H.R. Rep. No. 103–8(I), at 46 (1993). Accordingly, the First Circuit has analyzed FMLA and Title VII retaliation claims congruently. See Hodgens, 144 F.3d at 160 ("[FMLA retaliation] issues are analogous to those raised in cases involving other types of discrimination, such as Title VII...."). Other circuits have done the same. See, e.g., Adams v. Anne Arundel Cnty. Pub. Sch., 789 F.3d 422, 429 (4th Cir. 2015) ("Retaliation claims brought under the FMLA are analogous to those brought under Title VII."); McFadden v. Ballard Spahr Andrews & Ingersoll, LLP, 611 F.3d 1, 6 (D.C. Cir. 2010) (characterizing the frameworks for FMLA retaliation and Title VII discrimination as "essentially the same"); Hyde v. K.B. Home, Inc., 355 Fed.Appx. 266, 272–73 (11th Cir. 2009) (applying the McDonnell Douglas framework to plaintiff's Title VII and FMLA retaliation claims).

Therefore, the more appropriate construction of the statute based on the legislative history and statutory structure supports the conclusion that retaliation cases brought under the Act are subject to a but-for causation standard.

### 4. FMLA Textual Analysis

Textual interpretation of the Act also supports a but-for causation standard. This conclusion is anchored in the Supreme Court's reasoning in Gross and Nassar, so it will be helpful to start there.

The ADEA, the relevant statute in Gross, states that "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1) (emphasis added). The majority in Gross concluded that the ordinary meaning of the ADEA's requirement that an employer took adverse action "because of" age is that age was the reason that the employer decided to act. 557 U.S. at 176, 129 S.Ct. 2343 ("[T]he words 'because of' mean 'by reason of: on account of.' ") (citing 1 Webster's Third New International Dictionary 194 (1966); 1 Oxford English Dictionary 746 (1933); The Random House Dictionary of the English Language 132 (1966)). The Supreme Court took that to mean that employment discrimination claims brought under the ADEA require **\*189** proof that but for the employee's age, the employer would not have taken the challenged employment action. Id.

**Gourdeau v. City of Newton, 238 F.Supp.3d 179 (2017)**
97 Fed.R.Serv.3d 102, 2017 Wage & Hour Cas.2d (BNA) 65,496

Title VII's anti-retaliation provision, the relevant statute in Nassar, uses the same expression as the pertinent law in Gross. Section 2000e–3(a) of Title VII, like section 623(a)(1) under the ADEA, makes it unlawful for an employer to retaliate against an employee "because of" certain criteria.[12] Nassar, 133 S.Ct. at 2528. The Nassar court held that "[g]iven the lack of any meaningful textual difference between [ section 2000e–3(a) and section 623(a)(1) ], the proper conclusion ... is that Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." Id.

---

[12]   29 U.S.C. § 2000e–3(a) provides that:
  It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.
  (emphasis added).

Applying this reasoning to the FMLA is slightly less straightforward, as the relevant provision of the statute uses the word "for" in lieu of the phrase "because of." Compare 29 U.S.C. § 2615(a), with 29 U.S.C. § 623(a)(1), and 42 U.S.C. § 2000e–3(a). This difference, however, is immaterial. The ordinary meaning of the word "for" is synonymous with "because of." See For, Merriam–Webster, https://www.merriam-webster.com/dictionary/for (last visited Feb. 14, 2017) (listing "because of" among definitions); For, Oxford English Dictionary, http://www.oed.com/view/Entry/72761?rskey=xWN5Kh&result=2#eid (last visited Feb. 14, 2017) (defining "for" as "[o]f the cause or reason" and "[b]ecause of, on account of").

Importantly, Supreme Court jurisprudence has never restricted but-for causation tests only to statutes using the term "because of." Closely related terms such as "results from," Burrage v. United States, –––– U.S. ––––, 134 S.Ct. 881, 889, 187 L.Ed.2d 715 (2014), "based on," Safeco Insurance Company of America v. Burr, 551 U.S. 47, 63, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007), and "by reason of," Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639, 653–54, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008); Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 265–68, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), have also been read to require but-for causation.

Consistent with this reading of the FMLA's text, courts in other circuits have conflated the language in section 2615(a) with that of Title VII. See, e.g., Olson v. Penske Logistics, LLC, 835 F.3d 1189, 1195 (10th Cir. 2016) ("[Defendants] affirm that [plaintiff] was not terminated because of his leave ..." in FMLA interference claim (emphasis added)); Jones v. Allstate Ins. Co., No. 2:14-CV-1640-WMA, 2016 WL 4259753, at *4 (N.D. Ala. Aug. 12, 2016) ("While the FMLA does not use the precise phrase 'because of,' its use of the word 'for' is within the range of phrases whose ordinary meaning indicates a 'but-for' causal relationship."); Kauffman v. Federal Express Corp., 426 F.3d 880, 885 (7th Cir. 2005) (observing that retaliation applies where a company seeks to punish an employee because he asserted his FMLA rights) (same); *190 Joyce v. Office of Architect of Capitol, 966 F.Supp.2d 15, 23 (D.D.C. 2013) ("As in Title VII, to prove FMLA retaliation, a plaintiff must show that ... the employer took the action because of his protected activity." (emphasis added)); Sparks v. Sunshine Mills, Inc., No. 3:12-CV-025440-IPJ, 2013 WL 4760964, at *17 n.4 (N.D. Ala. Sept. 4, 2013) ("Thus, the Supreme Court's determination that the 'but for' causation standard applies where an employee alleges discrimination because he engaged in some protected activity also applies in the FMLA context." (emphasis added)).

The First Circuit has interpreted this language inconsistently. On various occasions, the First Circuit has interpreted section 2615(a) as requiring a plaintiff bringing a FMLA retaliation claim to show that "the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." Hodgens, 144 F.3d at 160

**Gourdeau v. City of Newton, 238 F.Supp.3d 179 (2017)**
97 Fed.R.Serv.3d 102, 2017 Wage & Hour Cas.2d (BNA) 65,496

(emphasis added); see also Carrero–Ojeda, 755 F.3d at 722 ("[A]n employer cannot discharge an employee *because* she requests or takes FMLA leave.... [T]he FMLA does not protect an employee from discharge for any reason while she is on leave—rather, ... it protects her only from discharge *because* she requests or takes FMLA leave." (emphasis added)). On other occasions—indeed, in the same opinion—the First Circuit's language has suggested a lessened causation standard for FMLA retaliation claims. See Hodgens, 144 F.3d at 160 ("Nor may employers 'use the taking of FMLA leave as a *negative factor* in employment actions, such as hiring, promotions or disciplinary actions.' " (quoting 29 C.F.R. § 825.220(c)) (emphasis added)); Carrero–Ojeda, 755 F.3d at 722 ("To protect these rights, the FMLA and its accompanying regulations make it unlawful for any employer to, among other things: ... 'use the taking of FMLA leave as a *negative factor* in employment actions' ...." (quoting 29 C.F.R. § 825.220(c)) (emphasis added)). This inconsistency can perhaps be partially explained by the fact that, as noted *supra*, the First Circuit has not yet addressed this narrow issue.

### 5. Public Policy

Two public policy considerations support a but-for causation standard. First, there is the "floodgate" argument. See, e.g., Ellie Margolis, Closing the Floodgates: Making Persuasive Policy Arguments in Appellate Briefs, 62 Mont. L. Rev. 59, 73 (2001) (defining " 'floodgates of litigation' argument" as one that "asserts that a proposed rule, if adopted, will inundate the court with lawsuits"). The Nassar majority expressed concern about the fact that "claims of retaliation are being made with ever-increasing frequency." Nassar, 133 S.Ct. at 2531–32. For the Supreme Court, this increasing number of claims "siphon[s] resources from efforts by employers, administrative agencies, and courts to combat workplace harassment." Id. The reasoning behind this concern is clear enough. Faced with a lessened causation standard, a rational potential plaintiff would expect her chances of success in a lawsuit to increase, since, for instance, courts might find it more difficult to dismiss her claims at the pre-trial stage. Id. at 2532. This, in turn, would cause more plaintiffs to file lawsuits than would

normally be the case under a more rigorous causation threshold.

Whether the evidence supports this logic, however, demands further examination. On the one hand, the Supreme Court's concern with the increasing number of retaliation claims seems prima facie warranted. From 1997 to 2016, the total number of retaliation charges filed with the Equal Employment Opportunity Commission (the "Commission") grew steadily from 18,198 to 42,018, an increase of over 130% during the twenty-year period. Charge Statistics FY 1997 Through FY 2016, U.S. Equal **\*191** Emp't Opportunity Comm'n, http://www.eeoc.gov/eeoc/statistics/enforcement/charges.cfm (last visited Feb. 16, 2017). The increase is noticeable not only in absolute terms, but also as a percentage of the total number of discrimination-type charges filed with the Commission. Today, retaliation charges constitute 45.9% of all charges filed with the Commission compared to only 22.6% in 1997.[13] Id.

[13] The significance of retaliation charges is also reflected at the state level. Retaliation charges under Title VII, FMLA, and other statutes, constituted 39.2% of all charges at the Commission's Massachusetts office in 2016. FY 2009–2016 EEOC Charge Receipts for Massachusetts, Equal Emp't Opportunity Comm'n, https://www1.eeoc.gov/eeoc/statistics/enforcement/charges_by_state.cfm#centercol (last visited Feb. 14, 2017).

On the other hand, there seems to be no clear association between changes in the causation standard applicable in employment disputes and the number of charges filed. After Nassar was decided in 2013, the total number of Title VII retaliation claims filed with the Commission or in federal courts remained fairly stable—declining slightly from 31,208 in 2012 to 30,771 in 2014. Id. As these numbers suggest, it is far from clear that "floodgate" concerns are justified.[14]

[14] The numbers also fail to paint a clear picture when examining Title VII disputes in federal courts. In 2011, 15,255 civil rights employment lawsuits were commenced, while in 2015 that

number dropped to 11,876. Admin. Office of the U.S. Courts, Statistical Tables for the Federal Judiciary, Table C–2 (2011), available at http://www.uscourts.gov/statistics/table/c-2/statistical-tables-federal-judiciary/2011/06/30; Admin. Office of the U.S. Courts, Statistical Tables for the Federal Judiciary, Table C–2 (2015), available at http://www.uscourts.gov/statistics/table/c-2/statistical-tables-federal-judiciary/2015/12/31. Although these figures are consistent with the hypothesis that Nassar caused a decline in the number of Title VII retaliation cases, there are not enough data to confirm it. In particular, those statistics do not differentiate between discrimination and retaliation claims. See generally Kevin M. Clermont & Stewart J. Schwab, How Employment Discrimination Plaintiffs Fare in Federal Court, 1 J. Empirical Legal Stud. 429 (2004) (supplying an impressive richness of data to support the argument that at both pretrial and trial stages plaintiffs in federal employment discrimination litigation lose disproportionately).

A "floodgate" worry further recedes when viewed in light of the recent number of FMLA cases commenced in federal courts. While the number of FMLA claims has increased steadily, there was no marked explosion of filings post-Nassar. Between 2012 and 2016, federal courts witnessed a threefold increase in the number of federal FMLA cases commenced, from 404 to 1,198 cases. Admin. Office of the U.S. Courts, Statistical Tables for the Federal Judiciary, Table C–2 (2012), available at http://www.uscourts.gov/statistics/table/c-2/statistical-tables-federal-judiciary/2012/12/31; Admin. Office of the U.S. Courts, Statistical Tables for the Federal Judiciary, Table C–2 (2016), available at http://www.uscourts.gov/statistics/table/c-2/statistical-tables-federal-judiciary/2016/06/30 [hereinafter District Court Cases Filed June 2015 and 2016].[15] FMLA cases also make up a higher proportion of the total number of labor law cases in federal cases. In 2012, FMLA cases made up 0.15% of all federal cases and 2.17% of all labor law federal cases. Admin. Office of the U.S. Courts, Statistical Tables for the Federal Judiciary, Table C–2 (2013), available at http://www.uscourts.gov/statistics/table/c-2/statistical-tables-federal-judiciary/2013/12/31. In 2016, these figures were 0.41% and 6.23%, respectively. District Court Cases Filed June 2015 and 2016. The problem is that this substantial increase occurred **\*192** mostly in 2013, during which the FMLA celebrated its twentieth anniversary and raised awareness about the Act.[16] See Ben James, FLSA, FMLA Lawsuits Soaring, New Statistics Show, Law360 (Mar. 11, 2015, 9:24 PM), https://www.law360.com/articles/630168/flsa-fmla-lawsuits-soaring-new-statistics-show (attributing volume of FMLA claims to awareness stemming from the Act's anniversary, as well as a 2013 final rule from the Department of Labor, which expanded protections under the statute). From 2012 to 2013, the number of federal FMLA cases commenced grew from 404 to 987, an increase of over 144%. Admin. Office of the U.S. Courts, Statistical Tables for the Federal Judiciary, Table C–2 (2013), available at http://www.uscourts.gov/statistics/table/c-2/statistical-tables-federal-judiciary/2013/12/31. From 2013 to 2014, the increase was only 12%, from 987 to 1,114 filings. Admin. Office of the U.S. Courts, Statistical Tables for the Federal Judiciary, Table C–2 (2014), available at http://www.uscourts.gov/statistics/table/c-2/statistical-tables-federal-judiciary/2014/12/31. Since then, the number of FMLA cases in federal courts has remained stable.

[15] The caseload statistics data tables for the 12–month periods ending December 31, 2015 and 2016 are not yet available.

[16] Of course, 2013 was also the year the Supreme Court decided Nassar. Given that Nassar addressed Title VII claims and the confusion and uncertainty about whether its holding could be extended to FMLA cases suggests a mere coincidence. Moreover, this increase in filed claims would be the exact opposite of the expected result of Nassar.

These figures suggest that courts should take floodgate arguments, at least with respect to retaliation claims, with a grain of salt. See, e.g., Marin K. Levy, Judging the Flood of Litigation, 80 U. Chi. L. Rev. 1007 (2013); Toby J. Stern, Federal Judges and Fearing the "Floodgates of Litigation", 6 U. Pa. J. Const. L. 377 (2003).[17]

17   Another, deeper, problem with a "floodgate" argument, as discussed in Nassar, is the reasoning that a lessened causation standard would increase the number of "frivolous" lawsuits. 133 S.Ct. at 2531. For the Supreme Court, more "frivolous" lawsuits would raise the financial and reputational costs of "an employer whose [lawful] actions were not in fact the result of any discriminatory or retaliatory intent." Id. at 2532. There is, however, one way to interpret this argument in which it turns out misguided. The worry that a lessened causation standard would result in more "frivolous" lawsuits seems to rely partially on an understanding of causation standards merely as evidentiary thresholds, similar to standards of proof. That is inaccurate. A causation standard is not "merely" an evidentiary threshold. It is also a "substantive" provision that defines which conduct is lawful or unlawful. See, e.g., Malone, Ruminations on Cause-in-Fact, 9 Stan. L. REV. 60 (1956) (defending the view that causation issues are permeated by policy considerations). When courts or Congress reduce the causation standard from but-for to negative or motivating-factor, they are also increasing the number of conducts for which an employer might be held liable, not simply increasing the number of false positives. To see this point, consider the fact that a court can require the party carrying the burden of persuasion to prove different causation standards according to different standards of proof. See W. Prosser, Handbook of the Law of Torts, § 41, at 241–44 (4th ed. 1971). These are independent mechanisms that serve different purposes.

The second public policy consideration that supports a but-for causation standard for FMLA retaliation claims pertains to consistency in how courts and Congress have addressed the topic in other antidiscrimination statutes. Title VII, for instance, protects workers from "having opposed, complained of, or sought remedies for, unlawful workplace discrimination," such as those motivated by "race, color, religion, sex, or national origin." Nassar, 133 S.Ct. at 2522; 42 U.S.C. § 2000e–2(a). Protection against retaliation based on race, color, religion, sex, or national origin is at the very core of our constitutional democracy. These values stand on equal—if **\*193** not higher—footing than the values the anti-discrimination provisions of the FMLA protects.18 See Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721, 728, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003) ("The FMLA aims to protect the right to be free from gender-based discrimination in the workplace."). It would, therefore, be misguided to treat the values protected by the FMLA as more important, and, in turn, as worthy of greater protection, than those values protected by Title VII. That is exactly what would be the case were this Court, given Nassar, to adopt a negative or motivating-factor causation standard.

18   Commentators also read the FMLA as setting minimum labor standards, besides combating employment discrimination. See, e.g., Sandra F. Sperino, Under Construction: Questioning Whether Statutory Construction Principles Justify Individual Liability Under the Family and Medical Leave Act, 71 Mo. L. Rev. 71, 73 (2006) ("Congress ascribed two different purposes to the [FMLA]. First, Congress indicated that the FMLA established a new minimum employment standard.... Second, the FMLA was designed as an anti-discrimination statute to alleviate gender discrimination in the workplace...." (internal citations omitted)).

**6. Other Courts' Chevron Deference Approach to the Causation Standard**

Notwithstanding the strong arguments in support of applying a but-for causation standard, a small number of courts have reached the opposite conclusion, namely that FMLA retaliation cases should be proven by a negative-factor standard. This was the analysis adopted in Chase v. U.S. Postal Serv., 149 F.Supp.3d 195, 209 (D. Mass. 2016) (Woodlock, J.) aff'd on other grounds, Chase v. U.S. Postal Serv., 843 F.3d 553 (1st Cir. 2016). Other courts have also adopted this approach. See Hunter v. Valley View Local Sch., 579 F.3d 688, 692–93 (6th Cir. 2009); Gonzalez v. Carestream Health, Inc., No. 12-CV-6151-CJS, 2016 WL 2609808, at *12 (W.D.N.Y. May 6, 2016) ("apply[ing] the less rigorous standard of 'motivating factor' to the FMLA

**Gourdeau v. City of Newton, 238 F.Supp.3d 179 (2017)**
97 Fed.R.Serv.3d 102, 2017 Wage & Hour Cas.2d (BNA) 65,496

retaliation claim"); Walters v. Mayo Clinic Health Sys.—Eau Claire Hosp., Inc., 91 F.Supp.3d 1071, 1080 (W.D. Wis. 2015) (discussing the defendant's motion for a new trial on the basis that the lower court used the "negative factor" standard).

[7] These courts assign controlling deference under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), to a Department of Labor regulation, which prohibits employers from "us[ing] the taking of FMLA leave as a negative factor in employment actions...." 29 C.F.R. § 825.220(c) (emphasis added).[19]

[19] In Nassar, the Supreme Court held that the Equal Employment Opportunity Commission's view that Title VII retaliation claims were subject to a motivating-factor causation standard was unpersuasive under Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). 133 S.Ct. at 2533. Here, unlike in Nassar, Congress explicitly delegated rulemaking authority to the agency. 29 U.S.C. § 2654. While this authority is "a very good indicator of delegation meriting Chevron treatment," United States v. Mead Corp., 533 U.S. 218, 229, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), congressional delegation is merely a necessary condition for Chevron deference, not a sufficient one. See Arabian Am. Oil Co., 499 U.S. at 257, 111 S.Ct. 1227 (declining Chevron deference because Congress did not give the agency the power to "promulgate rules or regulations" (quoting General Elec. Co. v. Gilbert, 429 U.S. 125, 141, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976))); see also Christensen v. Harris Cnty., 529 U.S. 576, 596–97, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (ruling that Chevron is "inapplicable ... where [there i]s doubt that Congress actually intended to delegate interpretive authority to the agency") (Breyer, J., dissenting).

[8] Chevron deference "is rooted in a background presumption of congressional *194 intent: namely, 'that Congress, when it left ambiguity in a statute' administered by an agency, 'understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows.'" City of Arlington, Tex. v. FCC, 569 U.S. 290, 133 S.Ct. 1863, 1868, 185 L.Ed.2d 941 (2013) (citing Smiley v. Citibank (S.D.), N.A., 517 U.S. 735, 740–41, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996)). Deference is unjustified, however, when the reviewing court applying the ordinary tools of statutory construction determines that "Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842–43, 104 S.Ct. 2778. See Note, The Rise of Purposivism and Fall of Chevron: Major Statutory Cases in the Supreme Court, 130 Harv. L. Rev. 1227 (2017).

Another court within this District concluded that "the FMLA leaves ambiguous what causal standard governs in retaliation actions and that the Department of Labor has supplied one reasonable answer." Chase, 149 F.Supp.3d at 210. This Court respectfully disagrees. Despite the First Circuit's seemingly inconsistent language when referring to the FMLA's retaliation provision, the Act is unambiguous. As discussed supra, the ordinary meaning of the word "for" in section 2615(a)(2) leaves no room for the Department of Labor to interpret the FMLA as requiring a lessened causation standard. Even if this Court concluded that the FMLA was "silent or ambiguous" with respect to the causation standard in retaliation claims, Chevron still requires this Court to inquire "whether the agency's answer is based on a permissible construction of the statute." 467 U.S. at 843, 104 S.Ct. 2778.

As the discussion above makes clear, the Department of Labor's regulation is an impermissible construction of the FMLA, based on the Act's structure and text, as well as its legislative history. Moreover, the Department of Labor's official comment on the FMLA fundamentally contradicts its "negative factor" regulation. See Jones, 2016 WL 4259753, at *6. In its comment, the agency explicitly acknowledges that since the FMLA followed Title VII, both should be "construed in the same manner." The Family and Medical Leave Act of 1993, 60 Fed. Reg. 2180, 2218 (Jan. 6,

**Gourdeau v. City of Newton, 238 F.Supp.3d 179 (2017)**
97 Fed.R.Serv.3d 102, 2017 Wage & Hour Cas.2d (BNA) 65,496

1995) (codified at 29 C.F.R. § 825.220) ("This ... clause is derived from Title VII ... and is intended, according to the legislative history, to be construed in the same manner. Thus, FMLA provides the same sorts of protections to workers who oppose ... violations of the FMLA as are provided to workers under Title VII." (emphasis added)). As discussed supra, the Supreme Court held in Nassar that the causation standard for Title VII retaliation claims is but-for. If the FMLA is meant to provide workers with the same protections as Title VII, but no more, then the causation standard for retaliation claims under both statutes ought be the same. Otherwise, workers would enjoy greater protections under one statute than under the other. This would contradict Congress's intent when it enacted the FMLA, as recognized by the Department of Labor's own words. Therefore, the Department of Labor's regulation is not entitled to Chevron deference.

### III. CONCLUSION

[9] For the preceding reasons, this Court held that a general verdict was inappropriate in this case and instead charged the jury to return a special verdict under Federal Rule of Civil Procedure 49(a). This Court now concludes that retaliation claims brought under the FMLA must be **\*195** proved according to a but-for causation standard.

**All Citations**

238 F.Supp.3d 179, 97 Fed.R.Serv.3d 102, 2017 Wage & Hour Cas.2d (BNA) 65,496

**Gourdeau v. City of Newton, 238 F.Supp.3d 179 (2017)**
97 Fed.R.Serv.3d 102, 2017 Wage & Hour Cas.2d (BNA) 65,496

End of Document  © 2023 Thomson Reuters. No claim to original U.S. Government Works.