UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD F. DANTOWITZ, <br><br> Plaintiff, <br><br> v. <br><br> DEXTER SOUTHFIELD INC., <br><br> Defendant. | Civil Action No. 20-CV-10540-AK |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF INITIAL MOTION FOR ATTORNEYS' FEES AND COSTS**

Plaintiff Ronald F. Dantowitz ("Plaintiff" or "Mr. Dantowitz") has moved that Defendant Dexter Southfield Inc. ("Defendant" or "Dexter") be required to pay his reasonable attorneys' fees and costs. Because judgment entered in Mr. Dantowitz's favor on his claims under the Family and Medical Leave Act ("FMLA"), such an order is required by statute. *See* 29 U.S.C. § 2617(a)(3) ("The court in such an action *shall*, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant" (emphasis added)); *Walsh v. Boston Univ.*, 661 F. Supp. 2d 91, 103 (D. Mass. 2009), and cases cited (fee award under FMLA is mandatory once judgment enters for plaintiff). The only question for the Court's decision is the size of the award. For the reasons stated herein, the Court should award the full amount of attorneys' fees and costs requested, that is, $382,478.50 in attorneys' fees and $21,855.36 in costs.

    I.    Plaintiff's Requested Attorneys' Fees Are Reasonable

In order to establish a reasonable amount of attorneys' fees, the Court should use the lodestar method, multiplying the reasonable number of hours expended by a reasonable hourly

rate. *See Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008). "In implementing this lodestar approach, the judge calculates the time counsel spent on the case, subtracts duplicative, unproductive, or excessive hours, and then applies prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001). The lodestar amount thus calculated is "presumptively reasonable." *Lipsett v. Blanco*, 975 F. 2d 934, 937 (1st Cir. 1992). A reasonable fee must be "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 599 U.S. 542, 552 (2010).

      a.   The Hours Spent by Counsel Are Reasonable

The fees sought by Plaintiff essentially cover three time periods. While Mr. Dantowitz was employed by Dexter, he retained Attorneys Brody and McNeely, who advised and guided him through the FMLA process and attempted to counteract the interference with his rights and forestall the retaliation he experienced, and the jury found, upon his return from leave. They also advised him of his legal claims and formulated the legal theories that ultimately were filed and pursued by other counsel. *See Foley v. Huppe*, Civ. No. 10-cv-335-JL, 2012 WL 5467527, *4-5 (D.N.H. Nov. 9, 2012) (awarding fees for time spent prior to filing suit, including developing a theory of the case and attempting to settle). In a very real sense, as convincingly described at trial, the only out-of-pocket expenditures Mr. Dantowitz needed to make as a result of Dexter's interference with his FMLA rights was hiring counsel to vindicate his rights. Attorney Brody, a skilled employment attorney who was then an associate, and his colleague Attorney McNeely jointly expended 91.6 hours of compensable time on Mr. Dantowitz's matter over the course of several months, helping him advocate for his rights, negotiating with counsel for Dexter, and

drafting a complaint to be filed with the Massachusetts Commission Against Discrimination, which would ultimately uncover important evidence for the vindication of Mr. Dantowitz's FMLA claim. (Brody Aff. ¶ 20.) Because of the urgency of Mr. Dantowitz's situation with a current employer, and the need to respond quickly to new developments, both attorneys (and others for whom reimbursement is not being sought) needed to be substantively involved. (Brody Aff. ¶ 13.) That expenditure of attorney time was reasonable under the circumstances. From the total, Plaintiff is excluding a time entry of .3 hours on January 25, 2019, as that time was related to a transition of counsel. Thus, Plaintiff seeks a total of 56.7 hours of Attorney Brody's time and 34.6 hours of Attorney McNeely's time.

After Mr. Dantowitz was terminated and decided to proceed with litigation, he retained Attorney Herold, who filed and litigated this case in court until shortly before trial. Attorney Herold drafted the complaint, conducted focused and targeted discovery including taking two depositions of key Dexter witnesses and defending multiple days of the Plaintiff's deposition. She successfully defeated Defendant's motion for summary judgment as to the four core claims that went to trial, including the two on which Plaintiff prevailed. Attorney Herold went to mediation in an effort to resolve the matter short of trial, which while not successful was an important investment of time. Attorney Herold did all this as a solo practitioner, without being able to rely on other attorneys for support, and achieved substantial success. Attorney Herold spent 156 hours on Mr. Dantowitz's matter, which Plaintiff submits is a very efficient total considering she litigated the case until the eve of trial.

Beginning in November 2022, Plaintiff retained undersigned counsel, Attorneys Bernstein and Russcol, to try the case. Although undersigned counsel tried again to resolve the matter through mediation, those efforts were again not successful. Accordingly, in a matter of

weeks, Attorneys Bernstein and Russcol got up to speed on the complex facts of the case, interviewed and prepared with witnesses (some of whom had not been contacted by prior counsel), identified and prepared proposed exhibits, drafted and submitted proposed jury instructions, opposed Defendant's numerous motions in limine (almost all successfully), defended an additional deposition right before trial, and pursued the case to verdict after a nine-day jury trial. Counsel divided responsibility for tasks and preparation to minimize unnecessarily duplicative work. Just as Defendant was represented at trial by two attorneys, Attorneys Bernstein and Russcol jointly presented the case at trial, as partners, with the work distributed approximately evenly overall: Attorney Bernstein spent 238.5 compensable hours, and Attorney Russcol spent 256.2 compensable hours. *See Gay Officers Action League*, 247 F.3d at 297 ("Given the complexity of modern litigation, the deployment of multiple attorneys is sometimes an eminently reasonable tactic…. Effective preparation and presentation of a case often involve the kind of collaboration that only occurs when several attorneys are working on a single issue."). In light of the length and complexity of the trial, which included complex evidentiary issues and hotly contested legal questions such as the standard of proof under FMLA, these hours were reasonable as well.

      b.   The Hourly Rates Requested by Counsel Are Reasonable

In determining a reasonable hourly rate for each attorney, courts in the First Circuit look to rates charged by attorneys of like qualifications, experience, and competence. *See Matalon v. Hynnes*, 806 F.3d 627, 638 (1st Cir. 2015). Attorney Bernstein has been practicing as an attorney for approximately 28 years, after serving as law clerk to Judge Woodlock following her graduation from Harvard Law School. (Bernstein Aff. ¶¶ 1-4.) She has been a partner for 22 of those years, has significant trial experience, and has successfully obtained substantial jury

verdicts in employment matters in state and federal court. (Bernstein Aff. ¶¶ 2, 5, 7.) She has been active in local bar associations including the Boston Bar Association, Massachusetts Bar Association, and Massachusetts Employment Lawyers Association, and has chaired and lectured numerous times on employment law and trial advocacy. (Bernstein Aff. ¶ 9.) In each year from 2019 to the present Attorney Bernstein has been identified as both among the top 100 Lawyers in Massachusetts and to 50 Women Super Lawyers in Massachusetts. (Bernstein Aff. ¶ 10.) Attorney Bernstein is rated AV-Preeminent by Martindale-Hubbell, and has been consistently listed as a "Super Lawyer" by *Boston Magazine* and a "Best Lawyer in America" by *U.S. News and World Report* for years. (*Id.*)  She has twice been named Best Lawyers' Lawyer of the Year for Employment Law – Individuals in Boston.  (*Id.*)

      Attorney Bernstein is seeking her regular hourly rate of $650 per hour. (Bernstein Aff. ¶ 13.) Based on their knowledge of billing rates of attorneys in the Boston area and direct experiences with Attorney Bernstein and her work, Attorneys David Belfort and Robert Mantell believe that this requested rate is reasonable and in line with what comparable lawyers charge and what other courts have approved for similarly experienced and competent counsel. (Belfort Aff. ¶¶ 10-11; Mantell Aff. ¶ 6.) Attorney Mantell opines that the rate of $650 is "modest" compared to recent awards he identifies in this Court of $700 in an employment case and up to $1000 per hour or more in other cases. (Mantell Aff. ¶ 6.) Attorney Mantell has himself been awarded fees at a $650 rate in employment cases, and considers Attorney Bernstein a peer. (Mantell Aff. ¶ 6.) Attorney Elizabeth Rodgers attests that an appropriate rate for Attorney Bernstein would be $800, in light of what she and other comparable employment lawyers in Boston are charging and have recently been awarded, and that "[t]he requested rate of $650/hour would be a bargain for the defendants." (Rodgers Aff. ¶¶ 7-11.) The requested rate is also

consistent with published rates of other Boston law firms, which charge up to $650 or even $790 for senior partners. (Russcol Aff. ¶ 18 & Exs. B-D.)

Attorney Russcol has been admitted to the bar since 2007 and has been practicing at Zalkind Duncan & Bernstein LLP continuously since 2013, after graduating from Harvard Law School and clerking for Judge Wolf and for Justice Scott Kafker, who was then on the Massachusetts Appeals Court and is now a Justice of the Supreme Judicial Court. (Russcol Aff. ¶¶ 1-6.) He has handled numerous criminal and civil matters, both by himself and together with other attorneys, including active litigation in this Court, successful amicus briefs, and appellate arguments in the Supreme Judicial Court and Appeals Court. (Russcol Aff. ¶¶ 7-9.) Attorney Russcol is on the Labor and Employment Steering Committee of the Boston Bar Association, and in that capacity has presented and is presenting on multiple employment-related topics. (Russcol Aff. ¶ 10.) He has been listed as a "Super Lawyers Rising Star" by *Boston Magazine* since 2016 and has newly been identified as a "Best Lawyer in America" by *U.S. News and World Report* this year. (Russcol Aff. ¶ 11.)

Attorney Russcol seeks a rate of $500 per hour, which is at the low end of his current billing rates. (Russcol Aff. ¶ 16.) Attorney Jamie Goodwin describes Attorney Russcol as "an exceptional member of the employment bar" and, having "shared at least one client with him," states that he "is able to achieve outcomes that other attorneys do not." (Goodwin Decl. ¶¶ 4-5.) Attorney Goodwin is familiar with billing rates of Boston-area attorneys from his current and past work, and states that this rate is comparable to his own rate (with less trial experience) and significantly less than what larger firms have charged their clients for years (which was reported to exceed $1,000 per hour for associates as of 2020). (Goodwin Decl. ¶¶ 6-8.) Attorney David Brody, who is the Co-Chair of the Boston Bar Association's Labor and Employment Section

Steering Committee, also expressed a high opinion of Attorney Russcol's work and confirms that this rate is consistent with market rates. (Brody Aff. ¶¶ 6-8, 10-11.) Attorney Mantell opines that this rate is reasonable and in line with market rates for a lawyer of nearly sixteen years' experience, and identifies court decisions awarding the same or higher rates to attorneys with comparable or less experience, including an award last year in this Court at a rate of $500 for an attorney with only eleven years of experience. (Mantell Aff. ¶ 7.) The rate of $500 per hour is also within the published ranges of billing rates for partners at two Boston firms according to *Massachusetts Lawyers Weekly*. (Russcol Aff. ¶ 18 & Exs. B-D.)

Attorney Herold has been an attorney in good standing for fourteen years and, since she founded her own firm in 2016, has been a solo practitioner focusing exclusively on employment law. (Herold Aff. ¶¶ 1-4.) She has been recognized by Super Lawyers as a Rising Star in 2011, 2012, and from 2017-2022, and has been identified by *Boston Magazine* as a Top Female Attorney in employment litigation for plaintiffs every year since 2018. (Herold Aff. ¶¶ 7-8.) Attorney Herold has been active in the Boston Bar Association and has presented several times on employment law topics for the Boston Bar Association and Massachusetts Continuing Legal Education. (Herold Aff. ¶¶ 9-10.) State courts granted her fee awards at the rate of $400 per hour in 2018 and 2021. (Herold Aff. ¶ 6.) Her requested and standard hourly rate of $450 per hour is "modest to consistent compared to the hourly rates charged by similarly situated colleagues." (Herold Aff. ¶ 5.) Her experience is comparable or slightly less than that of Attorney Russcol, and in line with those awarded the same or higher rates by Massachusetts state and federal courts. (Mantell Aff. ¶ 7.)

Attorney Brody has been admitted to the bar for nearly fourteen years and has actively practiced law since 2012. (Brody Aff. ¶ 4.) At the time he represented Mr. Dantowitz, he was a

senior associate focusing on employment law, and was elected partner less than a year later. (Brody Aff. ¶¶ 1-2.) Attorney Brody has represented individuals in numerous employment cases including in two federal trials and one state trial. (Brody Aff. ¶ 5.) He is currently the President of the Massachusetts Employment Lawyers Association and the Co-Chair of the Boston Bar Association's Labor and Employment Section Steering Committee. (Brody Aff. ¶¶ 6-7.) He is seeking his regular rate as of the time he represented Mr. Dantowitz, $325, which is much lower than his current rate of $490. (Brody Aff. ¶ 3.) This rate is lower than the $350 rate approved by Judge Casper around the same time for a comparably or less experienced associate attorney, Gavi Bogin-Farber (who, according to Board of Bar Overseers records, was admitted in 2012), in *Riley v. Massachusetts State Police*, No. 15-CV-14137-DJC, Dkt. 296 (Oct. 8, 2019).

Similarly, Attorney McNeely was admitted to the bar in 2012 and worked closely with Attorney Brody on this matter. (Brody Aff. ¶ 13.) Plaintiff seeks reimbursement for the hourly rate she charged at the time, $310 per hour. (Brody Aff. ¶ 14.) This rate is particularly reasonable in comparison to the award in *Riley* mentioned above.

      c.   Additional Factors Do Not Require or Warrant a Substantial Reduction

Even though Plaintiff did not succeed on all of his claims, in the circumstances of this case, a reduction in the lodestar amount is not warranted. All of the claims pled in the Complaint were based upon a common nucleus of facts: that Dexter, and particularly Mr. Tucker and Ms. Aliber, suddenly became hostile to Mr. Dantowitz after he requested leave to care for his autistic son, that they interfered with his right to leave, that they developed nonsensical and pretextual performance concerns once he returned, and that they unlawfully terminated his employment after he returned from leave. Although some details differ when analyzing the different claims under FMLA or Chapter 151B, the overall outline is the same. "[The] rationale for discounting

hours spent on unsuccessful claims does not apply [] where both the successful and unsuccessful claims arose from the same common core of facts or were based on related legal theories." *Bogan v. City of Boston*, 489 F.3d 417, 428 (1st Cir. 2007). It made sense to pursue all of the claims pled, even though the jury did not ultimately find for Plaintiff on the Chapter 151B claims. *See Wink v. Miller Compressing Co.*, 845 F.3d 821, 824 (7th Cir. 2017) (reversing 20% reduction in fee award because plaintiff prevailed on FMLA retaliation claim but not FMLA interference claim, since the claims pled were "based largely on the same facts" and "very similar, so it was prudent for the lawyers to press both in order to reduce the likelihood of a total defeat").

Nor is any reduction warranted based on the amount of damages awarded. Congress has emphasized the importance of incentivizing FMLA enforcement in litigation by making fee awards under FMLA mandatory, rather than (at least theoretically) discretionary as under Title VII and other discrimination and retaliation statutes. *See Millea v. Metro-North R. Co.*, 658 F.3d 154, 167 (2d Cir. 2011) ("By enacting a fee-shifting provision for FMLA claims, Congress has already made the policy determination that FMLA claims serve an important public purpose disproportionate to their cash value"); *Sherry v. Protection, Inc.*, 14 F. Supp. 2d 1055, 1057 (N.D. Ill. 1998) ("Congress used the word 'shall' in the FMLA's attorney's fee provision instead of the word 'may,' which is the language used in 42 U.S.C. § 1988 and most other attorney's fee provisions"). Courts have regularly granted attorney's fee awards substantially larger than the damages obtained, mindful of the need to incentivize competent counsel to vindicate civil rights established by Congress even when the amount of damages may not be large. *See Walsh v. Boston Univ.*, 661 F. Supp. 2d 91, 94 (D. Mass. 2009) (awarding $72,124.50 in attorneys' fees where plaintiff accepted offer of judgment for $15,000 after defeating defendant's motion for

summary judgment); *Millea*, 658 F.3d at 168 (rejecting conclusion that award of $612.50 in damages was "de minimis" victory warranting very small fee award); *Sherry*, 14 F. Supp. 2d at 1056-57 (awarding full fees up to the point of acceptance of offer of judgment where plaintiff refused to consider settlement offers of less than $50,000 while litigating through and after summary judgment, but eventually accepted "nuisance value" settlement of $5,000).

II. Plaintiff's Requested Costs Are Reasonable

As described in more detail in the accompanying affidavits, Plaintiff has incurred at least $21,855.36 in costs and expenses for which Defendant should reimburse him. *See* 29 U.S.C. § 2617(a)(3). These costs include the filing fee, costs of depositions and transcripts for 5 witnesses (all of whom testified at trial), chalks used at trial, Westlaw charges, and parking for both counsel during trial. *See Trainor v. HEI Hospitality LLC*, No. No. 09–10349–DJC, 2012 WL 119597, *14 (D. Mass. Jan. 13, 2012), *vacated in part on other grounds*, 699 F.3d 19 (1st Cir. 2012) (including items such as filing fees, deposition transcripts, parking, and electronic research), citing *Fryer v. A.S.A.P. First and Safety Corp.*, 750 F. Supp. 2d 331, 341 (D. Mass. 2010) and *Bandera v. City of Quincy*, 220 F. Supp. 2d 26, 50 n. 36 (D. Mass. 2002). All of these expenses were reasonably necessary for pursing this action and seeing it through to conclusion.

Also included in this total are the expenses of mediating with Hon. Nancy Holtz in July 2022 and January 2023. (The cost of a mediation session scheduled for November 2022, which Plaintiff canceled, is *not* included in the total and Plaintiff is not seeking reimbursement for it.) Even though the matter was not resolved by mediation, it was reasonable to enter into mediation and, in order to incentivize parties to pursue alternative dispute resolution when appropriate, the Court should allow Plaintiff to recover those expenses. *See Bandera*, 220 F. Supp. 2d at 51 (allowing recovery of mediation expenses as part of attorney's fees and costs); *NPS LLC v.*

*Ambac Assur. Corp.*, 190 F. Supp. 3d 212, 226-27 (D. Mass. 2016) (under contractual fee-shifting provision, "denying attorneys' fees incurred in the reasonable pursuit of mediation or settlement… would provide a significant disincentive for such alternative dispute resolutions…. [M]ediation or settlement costs — regardless of success — should be included in an award of reasonable attorneys' fees and costs"); *Clements v. Prudential Protective Services, LLC*, 100 F. Supp. 3d 604, 618-19 (E.D. Mich. 2015) (allowing mediation expenses as costs under FMLA); *cf. Evans v. Books-a-Million*, 762 F.3d 1288, 1299 (11th Cir. 2014) (under ERISA, "expenses for mediation… may be awarded as attorneys' fees if the district court determines they were reasonably incurred in the course of case preparation, settlement, or litigation").

The other substantial cost incurred by Plaintiff (at least for which he has received an itemized invoice) is the services of Plaintiff's tax preparer, Jeanne Robertson, CPA, through the end of January 2022. Ms. Robertson consulted with Plaintiff and counsel at that time to assist them in understanding Plaintiff's personal and his company's corporate tax returns, and prepared a summary document that was provided to Defendant in order to resolve discovery disputes concerning Plaintiff's income. It was reasonably necessary for counsel to consult with her in order to understand the tax and legal structure of Plaintiff's corporation and income tax returns at a level of detail beyond what Mr. Dantowitz himself knew. The FMLA statute requires the Court to include in its award to the Plaintiff "reasonable expert witness fees, and other costs of the action," 29 U.S.C. § 2617(a)(3), which courts have interpreted to include "reasonable out-of-pocket expenses," *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 968-69 (10th Cir. 2002), and "reasonable out-of-pocket expenses incurred by an attorney which typically would be charged to a fee-paying client," *Hite v. Vermeer Mfg. Co.*, 361 F. Supp. 2d 935, 955 (S.D. Iowa 2005), *aff'd*, 446 F.3d 858 (8th Cir. 2006). For example, in *Hite*, the court allowed payment for

the time of the plaintiff's treating physician, who was not designated as an expert, when the physician took time away from paying patients to travel to court and testify. 361 F. Supp. 2d at 956-57. *See also Walters v. Mayo Clinic Health Sys.--Eau Claire Hosp., Inc.*, 91 F. Supp. 3d 1071, 1086 (W.D. Wis. 2015) (allowing expenses on FMLA claim for plaintiff's therapist who was relevant to emotional distress and plaintiff's ability to return to work). Similarly, the out-of-pocket expenses for Ms. Robertson's advice and work in order to advance Plaintiff's position in litigation should be allowed.

WHEREFORE, Plaintiff requests that the Court order payment of attorneys' fees and costs as sought herein, and such other and further relief as the Court deems just and proper.

>Respectfully submitted,
>RONALD F. DANTOWITZ,
>The Plaintiff,
>By His Attorneys,
>
>/s/ David A. Russcol
>Inga S. Bernstein (BBO #627251)
>David A. Russcol (BBO #670768)
>Zalkind Duncan & Bernstein LLP
>65a Atlantic Avenue
>Boston, MA 02110
>(617) 742-6020
>ibernstein@zalkindlaw.com
>drusscol@zalkindlaw.com

Dated: March 22, 2023

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by electronic filing on March 22, 2023.

>/s/ David A. Russcol
>David A. Russcol