UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RONALD F. DANTOWITZ,

    Plaintiff,

v.

DEXTER SOUTHFIELD INC.,

    Defendant.

Civil Action No. 20-CV-10540-AK

**AFFIDAVIT OF ATTORNEY DAVID I. BRODY IN SUPPORT OF PETITION FOR ATTORNEY'S FEES PURSUANT TO 29 U.S.C. § 2617**

I, David I. Brody, hereby depose and state under oath as follows:

1. I am an attorney duly licensed to practice law in the Commonwealth of Massachusetts. I represented Plaintiff Ronald F. Dantowitz from September 2018 through February 2019. I provide the following information based on my personal knowledge.

<u>Reasonableness of My Requested Rate</u>

2. I am currently a Partner in the Employment Department at Sherin and Lodgen, LLP, focusing exclusively on representing individuals in employment matters. I joined Sherin and Lodgen in November, 2016, as an Employment Associate, before being elected Partner in January 2020.

3. When I represented Mr. Dantowitz, I regularly charged a rate of $325 per hour for my clients. This rate was reasonable and well within the market for an attorney with my experience, skill, and reputation in the greater Boston area. Now, several years later, my regular rate is $490 per hour, which the vast majority of my clients are prepared to pay for my services.

4. I am a 2009 graduate of Suffolk University Law School, *cum laude*. I was admitted to the Massachusetts bar in November 2009. I spent three years as the Executive Director of a non-profit organization in Brookline, Massachusetts, before returning to practice law in August 2012. I was admitted to the bar of this Court in 2012.

5. For over ten years, I have specialized in representing individuals in a wide array of employment matters, including plaintiff-side employment litigation. For example, I was co-counsel representing the prevailing complainant before the Massachusetts Commission Against Discrimination in *Ravesi v. Naz Fitness Group*, MCAD No. 10BEM03164 (Jan. 2, 2015), which was the first time any employer in Massachusetts was found liable for discrimination based on the employee's gender identity. As another example, I was co-counsel for the prevailing complainant in *Cooper v. Raytheon Co.*, MCAD No. 11BEM01635 (Feb. 26, 2016), aff'd by Full Commission (June 29, 2020). I have also served as co-counsel in two trials before the United States District Court, *Bliss v. Stanley*, C.A. 13-10768, and *Angiuoni v. Town of Billerica*, C.A. 11-11661; and another trial before the Massachusetts Superior Court in Essex County, *Fraelick v. Perkett PR, Inc.*, C.A. 11-689, as well as having conducted numerous full evidentiary hearings on behalf of individuals before the Civil Service Commission.

6. I am currently the President of the Massachusetts Employment Lawyers Association (MELA), which is the Massachusetts Chapter of the National Employment Lawyers Association (NELA), the country's largest professional organization exclusively comprised of lawyers who represent individual employees in cases involving employment discrimination and other employment-related matters. Before being elected MELA's President in June 2022, I spent two years as Vice President, and three years as Treasurer.

7. I am also currently Co-Chair of the Boston Bar Association's Labor and Employment Section Steering Committee, a position to which I was elected in September 2021. I served on the Steering Committee since 2018. The Steering Committee plays a leading role in planning the activities of the Labor and Employment Section and developing the Section's policy initiatives.

8. In my roles in MELA and the Boston Bar Association, and from my personal experience, I am familiar with market conditions for attorneys representing employees in employment matters such as family/medical leave, discrimination, and retaliation cases. Boston is an expensive legal market and has become increasingly expensive over the last several years as costs have increased sharply, particularly in light of high inflation over the last year or two.

9. I am familiar with the work and reputation of Inga Bernstein because her work, and the decisions she has helped obtain, have shaped the field of employment law in Massachusetts—I regularly cite to her cases in my practice. Additionally, I have learned from Attorney Bernstein through watching her present and CLEs and in webinars. Ms. Bernstein is a highly experienced and well-regarded member of the bar. Her successes speak for themselves.

10. I am also familiar with the work and reputation of David Russcol through his work on amicus briefs on behalf of MELA over the last several years, and his frequent contributions in discussions with other MELA members, and his involvement in the Boston Bar Association's Labor and Employment Section Steering Committee. He is very well-versed in relevant employment laws, and is one of the few lawyers I contact when I need additional advice and guidance. I would not hesitate to refer cases to him if I am unable to take them, and indeed, have done so.

11. It is my opinion that the requested rates of $650 for Ms. Bernstein and $500 for Mr. Russcol are reasonable and consistent with market rates in Boston for attorneys of their caliber, education, experience, and reputation.

### Hours and Representation in This Case

12. I and my firm maintained contemporaneous records of the time spent on this case. True and accurate copies of invoices that accurately reflect time records for Mr. Dantowitz's matter are attached as Exhibit A.

13. Jaclyn L. McNeely (now Jaclyn L. Kawka) was, in 2018 and 2019, also an Employment Associate at Sherin and Lodgen. She was admitted to the bar of the Commonwealth of Massachusetts in 2012. Ms. McNeely and I worked together closely to advise and represent Mr. Dantowitz during the period that we represented him. I reviewed her time entries at the time we sent out invoices, and can confirm that the invoices correctly reflect the time both of us spent on Mr. Dantowitz's matter. We represented Mr. Dantowitz while he was still employed by the Defendants. As a result, our representation was both fast-paced and time intensive, necessitating the collaboration of two attorneys.

14. At the time we represented Mr. Dantowitz, Ms. McNeely's hourly rate was $310 per hour. That rate was reasonable and consistent with the overall market for legal services for an employment attorney with her skills and experience.

15. As reflected in the invoices, I spent 56.7 hours on Mr. Dantowitz's matter, and Ms. McNeely spent 34.9 hours of her time.

16. In the course of representing Mr. Dantowitz, Ms. McNeely and I consulted at times with Brian Macdonough and Nancy Shilepsky, who were then (and are still) experienced partners at Sherin and Lodgen, LLP with widely recognized expertise in employment law. Mr.

Macdonough spent 5.3 hours and Ms. Shilepsky spent 1.4 hours on Mr. Dantowitz's matter. Although their advice and experience were invaluable to our representation of Mr. Dantowitz, we are not seeking compensation for their time.

17. Not reflected on our invoices are 22.2 hours of our time, representing fees of $7,050, for which we did not bill Mr. Dantowitz because we decided that the time was duplicative or exceeded what was reasonably necessary for the tasks we performed.

18. Mr. Dantowitz came to us because he needed to take a family leave to care for his autistic son, but his employer Dexter Southfield School was not giving him sufficient information about his options for him to understand what type of leave he was entitled to take. I quickly concluded that he should have been informed that his leave qualified for job protections under the Family and Medical Leave Act (FMLA). In light of Dexter Southfield's confusing information and apparent hostility to Mr. Dantowitz's request for leave, we were correctly concerned that he might be subjected to retaliation.

19. We advised and assisted Mr. Dantowitz in requesting FMLA leave and submitting the required medical certification. We continued to advise Mr. Dantowitz as he encountered difficulty accessing his office and obtaining personal property, and as it became increasingly clear that Dexter Southfield was headed down the path of terminating Mr. Dantowitz. We engaged in discussions with counsel for Dexter Southfield in efforts to stop interference with, and retaliation for, Mr. Dantowitz's FMLA leave, and attempt to resolve disputes without resort to litigation. After his termination, Mr. Dantowitz decided to seek other counsel for litigation.

20. The disability, family leave, and retaliation issues in Mr. Dantowitz's case were closely intertwined. I prepared a Charge of Discrimination for filing with the Massachusetts Commission Against Discrimination that was based on most of the same facts on which Mr.

Dantowitz ultimately prevailed at trial under FMLA. In order to secure a position statement under oath as to relevant issues prior to filing in court, I likely would have done this work even if I had only intended to pursue the FMLA claims in court.

Stated under the pains and penalty of perjury, this 21 Day of March, 2023

_____
David I. Brody