IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

—————————————————————
)
RONALD F. DANTOWITZ,                          )
)
            Plaintiff,           )
)
v.                                            )
)          CIVIL ACTION NO. 20-CV-10540-AK
DEXTER SOUTHFIELD, INC.,                      )
)
            Defendant.           )
—————————————————————)

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

On February 17, 2023, the jury returned its verdict in this case.  (Tab A).  Although the Court instructed the jury on the issue of "front pay" damages, the jury declined to award Plaintiff Ronald Dantowitz front pay.  The jury's decision represents the collective wisdom of multiple individual jurors, having just completed listening to the trial testimony.  As a result, the Court should give great weight to the jury's verdict.

On March 8, 2023, the Court entered judgment (the "Judgment").  (Tab B).  The Court declined to award Plaintiff liquidated damages or front pay.  Plaintiff's Motion to Alter or Amend the Judgment, therefore, is essentially a motion for reconsideration.  In his trial brief, Plaintiff specifically requested that the Court award him liquidated damages.  (Tab C, pg. 5).  The Court declined to do so.  Plaintiff has provided no grounds for disturbing the Judgment.

Plaintiff is not entitled to liquidated damages or front pay.[1]  Since leaving Defendant Dexter Southfield School (the "School"), Plaintiff has earned over $1,600,000 in income.  Plaintiff's tax returns confirm this.  In November 2021, Plaintiff represented to his lender, under

_____
[1] Defendant is not contesting Plaintiff's entitlement to prejudgment interest at the Massachusetts statutory rate of 12% per annum.

civil and criminal penalties, that he was employed by Celestial Computing, Inc. ("CCI") and earned $20,000 per month.[2]

With regard to liquidated and front pay damages, the School proved the following at trial: (a) Plaintiff's claim for front pay is highly speculative and would result in a windfall to Plaintiff; (b) Plaintiff has already been fully compensated for any alleged losses arising out of his termination of employment; and (c) Plaintiff has found comparable employment that pays him far more than he earned at the School, and far more than he is seeking in liquidated damages and front pay.  The Court should deny Plaintiff's Motion to Alter or Amend the Judgment.

## **ARGUMENT**

### A.  **Plaintiff Is Not Entitled To Liquidated Damages**

Plaintiff implies that because the jury found the School liable for FMLA violations, the Court must award Plaintiff liquidated damages.  That is not the law.  "[T]he question of liability under the FMLA is quite distinct from the question of liquidated damages."  Hall v. Meadwestvaco Corp., 2005 WL 1205554, *3 (D. Mass. May 18, 2005).  "The mere fact that liability has been established by a jury does not bar the court from exercising its statutory role with respect to liquidated damages."  Id.  "Indeed, … it is not uncommon for courts to deny a plaintiff liquidated damages despite a finding of liability in his favor."  Id.  The Court should deny Plaintiff's request for liquidated damages in this case.

"A court may decline to impose liquidated damages … where the employer proves to the satisfaction of the court that the act or omission which violated [the FMLA] was in good faith and that [it] had reasonable grounds for believing that the act or omission was not a violation."  Persky v. Cendant Corp., 547 F. Supp. 2d 152, 156 (D. Conn. 2008) (additional citations and

---

[2] Plaintiff provided sufficient income information to his lender to obtain a $795,000 mortgage.  Plaintiff resides in a single family home in Brookline, Massachusetts that Plaintiff himself has valued at $1,100,000.

quotations omitted).  "An employer may advance its good faith and reasonable grounds showings by demonstrating that it sought legal advice about its obligations under the FMLA."  Pagan-Colon v. Walgreens of San Patricio, Inc., 697 F.3d 1, 15 (1st Cir. 2012).  That is what happened here.  Contrary to Plaintiff's assertion, Head of School Todd Vincent testified that he consulted legal counsel before authorizing Plaintiff's termination of employment.[3]  That, alone, is decisive in establishing good faith and reasonableness sufficient to avoid liquidated damages.  See, e.g., Roy v. City of Lexington, 141 F.3d 533, 548-549 (4th Cir. 1998) (reliance on advice of counsel evidence of 'good faith' in liquidated damages analysis); Quirk v. Baltimore County, Md., 895 F. Supp. 773, 788 (D. Md. 1995) (liquidated damages not warranted where employer consulted legal counsel before making employment decision).

"Additionally, the fact that an employer met with an employee to determine eligibility for FMLA leave may be indicative of good faith."  Pagan-Colon, 697 F.3d at 15; see also Hoffman v. Professional Med Team, 394 F.3d 414, 419-420 (6th Cir. 2005) (finding that consultation with the employee "implies that the company tried to meet its obligations under the FMLA").  Here, it is undisputed that on August 30, 2018, Director of Human Resources Carmen Aliber spoke with Plaintiff within minutes of Plaintiff informing Mr. Vincent that he needed leave.  Ms. Aliber followed up with Plaintiff on September 5, 2018 (Trial Ex. 10), and again on September 10, 2018 (Trial Ex. 13).  On September 14, 2018, Plaintiff advised Ms. Aliber that he needed FMLA leave "as soon as possible."  (Trial Ex. 14).  Mr. Aliber granted Plaintiff's leave request that day.  It is undisputed that Plaintiff took the full twelve weeks of leave allotted by the FMLA, plus an additional week. Liquidated damages are not warranted.

---

[3] Plaintiff's recitation of the trial evidence, presented almost seven (7) weeks after trial and without the aid of a trial transcript, is understandably flawed.  Plaintiff did not obtain a trial transcript in advance of filing their motion.

B.     <u>Plaintiff Is Not Entitled To Front Pay</u>

"Awards of front pay … are generally entrusted to the district judge's discretion and are available in a more limited set of circumstances than back pay." <u>Johnson v. Spencer Press of Maine, Inc.</u>, 364 F.3d 368, 380 (1st Cir. 2004). "An award of front pay, constituting as it does, an estimate of what a plaintiff might have earned had s/he been reinstated at the conclusion of trial, is necessarily speculative." <u>Cummings v. Standard Register Co.</u>, 265 F.3d 56, 66 (1st Cir. 2001). Moreover, "[f]ront pay damages 'should not generate a windfall for the plaintiff' nor should they make a plaintiff 'more than whole.'" <u>Henry v. Sterling Collision Centers, Inc.</u>, 252 F. Supp. 3d 42, 52 (D. Mass. 2017) (citation omitted). "Ultimately, the question to be answered is whether front pay damages are needed to make the plaintiff whole." <u>Wilson v. Int'l Bro. of Teamsters</u>, 83 F.3d 747, 757 (6th Cir. 1996). "If the plaintiff can be made whole without front pay, … front pay is unnecessary." <u>Denton v. Boilermakers Local 29</u>, 673 F. Supp. 37, 51 (D. Mass. 1987). Just as the jury concluded that no front pay should be awarded to Plaintiff, the Court should likewise decide that front pay is not warranted here.

1.     **Plaintiff's front pay claim rests on speculative events.**

Awards of front pay are inherently speculative since "they necessarily rest upon predictions and assumptions about a plaintiff's longevity, the likely duration of any future employment, the continued validity of the employer, the ongoing efforts at mitigation, and countless other factors." <u>Dollar v. Smithway Motor Xpress, Inc.</u>, 710 F.3d 798, 809 (8th Cir. 2013). "[T]he greater the period of time upon which a front pay award is calculated in a case involving an at-will employee, the less likely it is that the loss of future earnings can be demonstrated with any degree of certainty or can reasonably be attributed to the illegal conduct of the employer." <u>Conway v. Electro Switch Corp.</u>, 523 N.E.2d 255, 257 (Mass. 1988); <u>see also</u> <u>Arban v. West. Pub. Corp.</u>, 345 F.3d 390, 407 (6th Cir. 2003) (front pay award may not be

"purely speculative"); <u>Sagendorf-Teal v. County of Rensselaer</u>, 100 F.3d 270, 277 (2d Cir. 1996) (front pay should not be awarded where the calculation method is too speculative); <u>Tyler v. Union Oil Co. of Cal.</u>, 304 F.3d 379, 402 (5th Cir. 2002) (affirming district court's denial of front pay where an award would be "purely speculative").  Here, Plaintiff requests ten years of front pay.  Plaintiff's request should be denied.

Plaintiff claims that absent his "illegal" termination, Plaintiff would have continued working at the School for the next ten years.  That is impossible, because, as Plaintiff concedes, it is undisputed that the School has eliminated Plaintiff's position.  "[W]hen the position the victim sought is eliminated and there is no evidence of a comparable position in existence at the time of judgment, front pay should not be awarded."  <u>Brown v. Nutrition Mgmt. Servs. Co.</u>, 2010 WL 2902557, *2 (E.D. Pa. Jul. 22, 2010); <u>see also</u> <u>Bartek v. Urban Redevelopment Auth. of Pittsburgh</u>, 882 F.2d 739, 747 (3d Cir. 1989) (denial of front pay affirmed where "there was no position in existence that [Plaintiff] was being unlawfully denied at the time of judgment").  For this reason alone, Plaintiff's front pay claim cannot stand.

Moreover, the School proved at trial that Plaintiff's most recent salary letter expired on June 30, 2019, five months following Plaintiff's termination.  (<u>Trial Ex. 5</u>).  Mr. Vincent, Mr. Tucker and Ms. Aliber all testified that Plaintiff had no expectation of employment beyond June 30, 2019.  Plaintiff himself acknowledged this.  Plaintiff attempts to conflate the evidence by claiming in his motion that he was "working under a contract with no set end date."  Plaintiff knows that is false.  Plaintiff agreed to the following pertinent jury instruction:

> In Massachusetts, employees who do not have an employment contract – *as was the case with Mr. Dantowitz who did not have an employment contract with Dexter Southfield School* – are referred to as "at will" employees.

(<u>Tab D</u>) (emphasis added).  Plaintiff had no expectation of employment at the School beyond June 30, 2019.  Plaintiff's request for 10 years' salary and benefits should be rejected.

With regard to the likelihood that Plaintiff would have remained at the School for ten years, the jury's verdict is highly instructive.  In <u>Williams v. Crown Liquors of Broward, Inc.</u>, 880 F. Supp. 2d 1286 (S.D. Fla. 2012), the jury awarded the plaintiff $40,000 in back pay, or approximately 41% of her annual salary and benefits.  <u>Id.</u> at 1290.  The Court found that "the only reasonable interpretation of the jury's award is that [the plaintiff] was not entitled to wages and benefits for the entire period of time between her termination and trial, or anything even close to that amount."  <u>Id.</u>  "The Court can only infer that the jury did not find it likely that [the plaintiff's] employment would have continued through that period of time.  In light of this finding, it would hardly be likely that [the plaintiff] would continue to have been employed for an additional three years from the present date."  <u>Id.</u>  As a result, the Court found that the plaintiff had "not made a sufficient showing of entitlement to front pay."  <u>Id.</u>

Here, the facts are even more compelling.  The jury awarded Plaintiff $15,000 in back pay, approximately 8% of Plaintiff's annual salary and benefits (and Plaintiff sought this amount for <u>four</u> years).  Clearly, the jury did not believe that Plaintiff was entitled to back pay for the time between Plaintiff's termination of employment and trial, "or anything even close to that amount."  <u>Williams</u>, 880 F. Supp. 2d at 1290.  As in <u>Williams</u>, the jury's verdict serves as a strong indicator that Plaintiff would not have been employed by the School through the time of trial, let alone for the next ten years.  The jury's nominal back pay award confirms that Plaintiff is not entitled to front pay.

"Because future damages are often speculative, the district court, in exercising its discretion, should consider the circumstances of the case."  <u>Wildman v. Lerner Stores Corp.</u>, 771

F.2d 605, 616 (1st Cir. 1985).  In this case, Plaintiff cannot show that he would have been employed at the School for the next ten years.  Plaintiff's request for front pay should be denied.

### 2.      Front pay would result in a "windfall."

"Front pay is intended to compensate a plaintiff for the loss of future earnings caused by the defendant's discriminatory conduct; it is not a punitive award and should not generate a windfall for the plaintiff."  Haddad v. Wal-Mart Stores, Inc., 914 N.E.2d 59, 69 (Mass. 2009). "A trial court must 'temper' the use of front pay by recognizing 'the potential for 'windfall' to the plaintiff."  Dotson v. Pfizer, Inc., 558 F.3d 284, 300 (4th Cir. 2009) (quoting Duke v. Uniroyal Inc., 928 F.2d 1413, 1424 (4th Cir. 1991)); see also Burke v. LPM Holding Co., Inc., 2012 WL 13055463, *3 (D. Mass. Apr. 17, 2012) (acknowledging that the Court must recognize the potential for a windfall); Hardin v. Caterpillar, Inc., 227 F.3d 268, 269 (5th Cir. 2000) (same).  In this case, Plaintiff has already earned far more than he would have had he remained employed at the School.  Accordingly, front pay is not appropriate.

Plaintiff opposed the introduction of his income information at trial.  The reason is clear – Plaintiff's tax returns (and bank information) show that Plaintiff has earned over $1,600,000 since he left the School:

| Year | Income | Source |
|------|--------|--------|
| 2019 | $694,637.00 | Trial Ex. 60 |
| 2020 | $573,209.00 | Trial Ex. 61 |
| 2021 | $240,000.00 | Trial Ex. 63 |
| 2022 | $120,000.00 | Pl. testimony |
| **TOTAL** | **$1,627,846.00** | |

Moreover, even were some front pay plausible – and it is not – the extent of the front pay requested by Plaintiff, for the rest of his working life, is not warranted on the facts.  Front pay does not "guarantee every claimant … an annuity to age 70."  Anastasio v. Schering Corp., 838 F.2d 701, 709 (3d Cir. 1988).  Plaintiff attempts to characterize CCI as teetering on the brink of bankruptcy with no prospect for success.  Even if that were true (highly debatable), and even if Plaintiff never earned another dime from CCI, Plaintiff has already been made whole.  Plaintiff has earned more than the amount he is requesting in front pay.  In this case, any amount of front pay, and lifetime front pay in particular, would unjustly enrich Plaintiff and operate as a windfall, and is therefore inappropriate.  See Kumar v. Bd. of Trustees of Univ. of Massachusetts, 566 F. Supp. 1299, 1329 (D. Mass. 1983), rev'd on other grounds, 774 F.2d 1 (1st Cir. 1986).

### 3.    Plaintiff has successfully mitigated his damages.

Front pay is inappropriate where a plaintiff finds work more lucrative than his prior employment.  See Henry, supra, 252 F. Supp. 3d at 52 (declining to award front pay after the date plaintiff found a higher paying job); Arban, supra, 345 F.3d at 406 (affirming district court's denial of front pay where plaintiff found more lucrative employment).  "It is indisputable that self-employment is an adequate and proper way for an injured employee to attempt to mitigate his loss of wages."  Heinrich Motors v. NLRB, 403 F.2d 145, 148 (2d Cir. 1968) (cited in Denton, 673 F. Supp. at 46).  Here, Plaintiff has worked for his own business, CCI, since leaving the School and earns far more than he did at the School.  Indeed, as of November 2021, Plaintiff represented to his lender that he not only worked at CCI but earned $20,000 per month, more than double what Plaintiff earned at the School.  (Tab E).  Plaintiff is bound by that representation.  Plaintiff is not entitled to front pay because he has replaced his School income, and then some.  See Denton, 673 F. Supp. at 52 (front pay not appropriate where plaintiff replaced his income with a successful business); Williams v. Pharmacia, Inc., 137 F.3d 944, 954

(7th Cir. 1998) (once plaintiff finds employment superior to his old job, front pay is "mitigated down to zero").

Plaintiff's claim that income from CCI should not be considered in his claim for future earnings defies logic. Plaintiff has earned over $1,600,000 from CCI since he left the School. Plaintiff presented no evidence at trial that he could have earned such extraordinary income from CCI while simultaneously working at the School. Plaintiff did not testify to the number of hours he dedicated to CCI while employed at the School versus the number of hours he presently works for CCI. Plaintiff did not introduce income information (tax returns, etc.) showing that Plaintiff's current earnings equal the amount earned from CCI while employed at the School. On the contrary, it is clear that Plaintiff's income has significantly increased since he left the School.

The School's alleged inability to produce evidence of comparable employment is factually incorrect. The School *did* provide such evidence – Plaintiff's employment at CCI. Plaintiff's claim that CCI's future is "uncertain" also is irrelevant. Any future employment would be "uncertain" for any number of reasons. Plaintiff provided vague and confusing testimony about CCI's current status, but did not claim that CCI would be liquidated in the near future. That notwithstanding, "it may be reasonable for the employee to go into business himself, at least if no employment is available, even though the enterprise later turns out to be unprofitable." Denton, 673 F. Supp. at 47 (citation omitted). The Court should reject Plaintiff's attempts to run away from CCI.

In addition, while Plaintiff complains that the School did not prove the existence of other open positions, Plaintiff has conceded that he has not applied for a single job since he left the School. And Plaintiff claims, speculatively, that he will never find another job as an astronomer. However, it is clear that Plaintiff is not interested in finding a job as an astronomer. Plaintiff has

found new full-time employment with CCI at a salary that far exceeds his School income (or any job he could possibly secure as an astronomer).  Plaintiff is not entitled to front pay.

### 4.    Plaintiff is not entitled to tuition remission for his son.

Plaintiff receives tuition remission for his son only if Plaintiff is employed by the School. Plaintiff's job has been eliminated.  Therefore, Plaintiff is not entitled to tuition remission.  Even if Plaintiff's position remained open, the School offered ample testimony at trial that Plaintiff's son sought to transfer from the School in 2019.  Indeed, Plaintiff admitted that he had requested that his son's transcripts be sent to other schools, and that teachers had drafted letters of recommendation for his son.  In all likelihood, Plaintiff's son would have left the School at the end of the 2018-19 academic year.

As part of Plaintiff's claim for back pay, Plaintiff sought tuition remission for academic years 2019-20, 2020-21 and 2021-22 (about $40,000 per year).  By awarding Plaintiff only $15,000 in back pay, it is clear that the jury rejected Plaintiff's request for tuition remission.  In other words, the jury believed that Plaintiff's son would <u>not</u> be returning to the School after 2019.  <u>See</u> <u>Savage v. Temple Univ.</u>, 2022 WL 911153, *14 (E.D. Pa. Mar. 29, 2022) ("damages request is too speculative to the extent it seeks recovery of tuition remission benefits"). Plaintiff's claim for tuition remission should be denied.

### <u>CONCLUSION</u>

Plaintiff's attack on the Judgment is nothing more than an attempt to retry the case, hoping for a better result the second time around.  The jury listened to the evidence and sent a clear message.  The jury did not believe that the School terminated Plaintiff's employment because he is disabled, or that the School terminated Plaintiff's employment because Plaintiff's son is disabled.  With regard to Plaintiff's FMLA interference claim, the jury declined to award

Plaintiff damages.  After a two-week trial, the jury awarded Plaintiff $15,000 on his FMLA

retaliation claim.  Essentially nominal back pay, no benefits, and no tuition remission.

      No amount of posturing, rewriting of the factual record or unwarranted attacks against the

School's witnesses will change that result.  Plaintiff has earned $1,600,000 since leaving the

School.  Plaintiff has been fully compensated for alleged damages arising out of Plaintiff's

termination of employment.  And Plaintiff continues to earn substantial income from CCI.  The

jury awarded Plaintiff only nominal damages for the time between Plaintiff's termination and

trial, yet Plaintiff now seeks full recovery for the next ten years.  It is not warranted.  An award

of front pay and liquidated damages would be contrary to the jury's verdict.  Accordingly, the

Court should deny Plaintiff's Motion to Alter or Amend the Judgment.


      Respectfully submitted,
      DEXTER SOUTHFIELD, INC.,

      By its attorneys,

      */s/ Anthony L. DeProspo, Jr.*
      Anthony L. DeProspo, Jr. (BBO No. 644668)
      (adeprospo@shpclaw.com)
      Cara E. Murphy (BBO No. 709521)
      (cmurphy@shpclaw.com)
      SCHWARTZ HANNUM PC
      11 Chestnut Street
      Andover, MA 01810
      Telephone: (978) 623-0900
      Facsimile:  (978) 623-0908

Date:  April 18, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document, filed through the ECF system will be served electronically upon all registered participants as identified in the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered parties this 18th day of April 2023.

David A. Russcol (*counsel for Plaintiff*)
drusscol@zalkindlaw.com
Inga S. Bernstein
iberstein@zalkindlaw.com
Zalkind Duncan & Bernstein LLP
65a Atlantic Avenue
Boston, MA 02110


*/s/ Anthony L. DeProspo, Jr.*
Anthony L. DeProspo, Jr.