UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RONALD F. DANTOWITZ,

        Plaintiff,

v.

DEXTER SOUTHFIELD INC.,

        Defendant.

Civil Action No. 20-CV-10540-AK

**Leave to File Granted on 4/27/23**

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF INITIAL MOTION FOR ATTORNEYS' FEES AND COSTS

Defendant Dexter Southfield Inc. ("Defendant" or "Dexter") acknowledges that a six-figure award of attorneys' fees and costs to Plaintiff Ronald F. Dantowitz ("Plaintiff" or "Mr. Dantowitz") is appropriate. (Dkt. 189 at 8.) Defendant has not asserted that any specific time entries for Attorneys Bernstein, Russcol, or Herold were excessive or noncompensable. Defendant also does not challenge the reasonableness of the hourly rates for each of Plaintiff's current and former counsel. (Dkt. 189 at 1 n.1.) Thus, a substantial portion of the baseline lodestar calculation (over 650 hours at rates from $450 to $650 per hour) is not in dispute. Defendant nonetheless asks that the Court slash the fee award by nearly two-thirds overall, and cut trial counsel's fees specifically by 73%. Although the Court has discretion to adjust the award of fees and costs appropriately, the wholesale and massive cuts suggested by Defendant are unreasonable and unwarranted. Defendant's arguments for reducing the award are unmeritorious because, among other reasons, the claims brought by Plaintiff were closely intertwined; Defendant improperly minimizes the success achieved by Plaintiff; and pretrial settlement discussions are not a valid basis for discounting legal fees in this Circuit. Therefore,

the Court should stay close to the presumptively reasonable lodestar calculation and award substantially all of the requested fees and costs.

     I.     Plaintiff's Requested Attorneys' Fees Are Not Excessive In Light of the Result Achieved

Although Defendant correctly states that the "results obtained" are a substantial factor in determining the reasonableness of a request for attorneys' fees, "the term 'results obtained' has a variety of meanings." *Coutin v. Young and Rubicam Puerto Rico Inc.*, 124 F.3d 331, 338 (1st Cir. 1997). A court should not focus exclusively on the amount of damages awarded but must consider the relief obtained as well as "the societal importance of the right which has been vindicated" and the plaintiff's claim-by-claim success. *Id.* "[T]o the extent—if at all—that the ratio of the damages requested to the judgment received may be taken into account in fixing an appropriate award… this proportion may be used only as one facet of the trial court's determination of the quality of the results obtained." *Id.* at 340.  This is particularly true in this case, in which the jury may have limited the award of damages because it believed that Mr. Dantowitz successfully mitigated his losses.  A plaintiff who is successful at mitigating damages should not be penalized by getting a lesser award of attorneys' fees and costs.

Moreover, in this case, Plaintiff was successful in obtaining both an award of $15,000 in back pay damages, and two express findings that Defendant engaged in unlawful behavior: first, that it unlawfully interfered with his FMLA rights and, second, that it illegally terminated his employment in retaliation for his exercise of FMLA rights. These two findings of liability constitute substantial vindication of Mr. Dantowitz's FMLA rights, which Congress has deemed to be important to society. "Fee-shifting provisions in general reflect a legislative judgment that the public as a whole has an interest in the vindication of the rights conferred by the statutes over

and above the value of a remedy to a particular plaintiff." *Joyce v. Town of Dennis*, 720 F.3d 12, 31 (1st Cir. 2013) (quotations and alterations omitted).

Finally, Defendant's effort to characterize Plaintiff's victory at trial as a "nominal recovery" (Dkt. 189 at 1) is contrary to the case law. *See id.* at 30 (holding that jury verdict awarding $15,000 in compensatory damages was not de minimis); *Coutin*, 124 F.3d at 340 (award of over $45,000 is "substantial in absolute terms"); *cf. Diaz v. Jiten Hotel Mgmt, Inc.*, 741 F.3d 170 (1st Cir. 2013) (affirming fee award of over $100,000 on damages award of $7,650). In addition, pending motions are likely to increase the relief obtained on Plaintiff's successful claims, which would further undercut Defendant's argument that the requested award is disproportionate.

> a. Neither a Previous Settlement Demand Nor an Expired Settlement Offer Are Relevant Considerations for Reducing the Lodestar Amount.

Citing out-of-Circuit case law, Defendant has inappropriately submitted confidential settlement communications[1] in an attempt to cast Plaintiff as an unreasonable and vexatious litigant. Although it is true that, at one point years ago, Mr. Dantowitz's prior counsel expressed an intention to seek a substantial sum in damages at trial (Dkt. 189-1), the First Circuit has cautioned that it is "suspect" to compare the ad damnum amount of damages sought to the jury verdict in a case where it reversed an inadequate fee award that relied upon "a chasmal gulf

---

[1] The Court should disregard Defendant's attempt to hint at what may or may not have occurred during mediation. (*See* Dkt. 189 at 3 n.3.) Both the confidentiality agreement under which the mediation took place and state law prohibit any disclosure of statements made during mediation. *See* Mass. Gen. Laws ch. 233, § 23C ("Any communication made in the course of and relating to the subject matter of any mediation… shall be a confidential communication and not subject to disclosure in any judicial or administrative proceeding."). Even an implicit disclosure of such communications would be unlawful, and Defendant's statements concerning the substance of mediation should not be considered by the Court.

between the damages requested in the complaint and the damages awarded." *Coutin*, 124 F.3d at 338 & n.4, 342. Dexter's extensive emphasis on this gap is unwarranted.[2]

Dexter's reliance upon a pretrial settlement offer to cut off the award of fees is misguided for multiple reasons. Although it cites to cases from other Circuits holding that a *rejected* settlement offer is relevant to the reasonableness of a fee award, the factual premise that Plaintiff "flatly rejected" the offer (Dkt. 189 at 3) is inaccurate. The offer was made at the end of the day on September 6, 2022, and by its terms "automatically expire[d] upon the Court rendering a decision on Defendants' motion for summary judgment." (Dkt. 189-2.) That decision was issued two days later (Dkt. 89) and as such, the offer expired without a response from Plaintiff, who had had little time to consider it. Defendant cites no authority for holding the failure to accept such an "exploding" offer against Plaintiff.

The more fundamental problem with Dexter's argument is that, whatever the merits of other Circuits' reasoning about consideration of settlement offers, the First Circuit has rejected it for two distinct reasons. First, limiting a plaintiff's ability to recover fees in a fee-shifting case would "create inordinate pressure on plaintiffs to accept low settlement offers," contrary to "Congress's manifest intention… [to] facilitate the prosecution of private actions aimed at deterring civil rights abuses." *Coutin*, 124 F.3d at 341. Accordingly, "it is a mistake of law to reduce an award of attorneys' fees in a civil rights case in response to a plaintiff's rejection of a defendant's settlement offer when the subsequent judgment exceeds that offer." *Id.* In comparing the amount of the offer to the relief ultimately obtained, the First Circuit has instructed courts to consider the "total award (damages, costs, and attorney's fees)" because a settlement would have

---

[2] Even assuming that the figure Defendant cites as the amount Plaintiff sought is relevant, Defendant understates the proportion of the recovery by a factor of 100. (Dkt. 189 at 1.) $15,000 is 0.375% of that amount, not 0.00375% as Defendant asserts.

to compensate the plaintiff for all those items.[3] *See Joyce*, 720 F.3d at 32. The policy

considerations adopted by the First Circuit in *Coutin* and *Joyce* support a conclusion that "[a]

district court should not rely on informal negotiations and hindsight to determine whether further

litigation was warranted and, accordingly, whether attorney's fees should be awarded.

Otherwise, plaintiffs with meritorious claims may be improperly dissuaded from pressing

forward with their litigation." *Ortiz v. Regan*, 980 F.2d 138, 140-41 (2d Cir. 1992). The Second

Circuit has cautioned against giving trial judges "discretion to deny [] fees where the refusal of

an offer is shown after the fact to be unwise." *Id.* at 141, quoting *Cowan v. Prudential Ins. Co. of

Am.*, 728 F. Supp. 87, 92 (D. Conn. 1990), *rev'd on other grounds,* 935 F.2d 522 (2d Cir. 1991).

Based on First Circuit precedent and similar reasoning from the Second Circuit, the Court should

not look at settlement offers at all, particularly if the offer was less than the total recovery that

the plaintiff ultimately receives.

       As an independent reason for declining to consider general settlement offers as a basis to

reduce a fee award, the First Circuit has noted that defendants have the option of making a

formal offer of judgment under Fed. R. Civ. P. 68 if they want to present a reasonable settlement

offer and "make the plaintiff think very hard about whether continued litigation is worthwhile."

*Diaz v. Jiten Hotel Mgmt., Inc.*, 704 F.3d 150, 154 (1st Cir. 2012) (quotations omitted). If a

defendant makes such a formal offer and the plaintiff does not accept it within ten days, and the

---

[3] As such, it would be circular and problematic if Defendant were able to avoid the impact of the categorical prohibition against "detrimental consequences based upon [the] rejection" of a settlement offer smaller than the judgment, *Coutin* at 341, by reducing the award of attorney's fees below the amount of the settlement offer. In addition, Plaintiff has filed a motion requesting liquidated damages, prejudgment interest, and front pay, all of which would increase his recovery. He also anticipates seeking an additional award of attorney's fees for post-judgment motions. There is thus a strong likelihood that his total recovery will be greater than $300,000 regardless.

plaintiff fails to obtain greater relief than what was offered, the plaintiff cannot recover for costs

(and, under some statutes, fees[4]) incurred after the Rule 68 offer, and indeed may have to pay for

defense costs. *See Spooner v. EEN, Inc.*, 644 F.3d 62, 70-71 (1st Cir. 2011). However, "Rule

68… is sui generis. A garden-variety settlement offer made without resort to Rule 68 affords the

offeror no similar protection; he cannot reasonably expect to gain the benefits that Rule 68

confers." *Id.* at 71. Dexter never made an offer of judgment pursuant to Rule 68. An accepted

Rule 68 offer leads to a judgment finding liability on the part of the defendant, in contrast with a

private settlement in which the defendant typically admits no wrongdoing. *See Cabala v.

Crowley*, 736 F.3d 226, 227, 230 (2d Cir. 2013) (discussing difference between settlement

leading to dismissal and judgment under Rule 68, and upholding award of full attorney's fees

even though defendant offered "maximum recoverable damages" in settlement but did not use

Rule 68 procedure). Had Mr. Dantowitz accepted Dexter's settlement proposal, he would have

had to pay legal fees and costs out of the settlement and would not have had a judgment

acknowledging Dexter's unlawful conduct. In another case where a defendant attempted to use a

rejected settlement offer to reduce a fee award, the First Circuit held that because the defendant

did not "avail itself of the [Rule 68] option, it cannot now use its informal offer as a sword" to

cut down the reasonable fees incurred. *Diaz*, 704 F.3d at 154. In that case, the plaintiff rejected a

$75,000 settlement offer but recovered $7,650 in compensatory damages at trial. *Id.* at 152-53.

The First Circuit reversed an order limiting the fee award to $25,000, which is what a one-third

---

[4] If a fee-shifting statute permits an award of attorneys' fees *as part of* the costs of the action, the Rule 68 offer, if rejected, cuts off the award of attorneys' fees as well. *Marek v. Chesny*, 473 U.S. 1, 9 (1985). However, if a statute permits or requires the award of attorneys' fees *in addition to* costs, as FMLA does, Rule 68 does not limit the award of attorneys' fees. *See King v. Rivas*, 555 F.3d 14, 20 (1st Cir. 2009); *Walsh v. Boston Univ.*, 661 F. Supp. 2d 91, 96 (D. Mass. 2009).

contingency percentage would have been if the plaintiff had accepted the $75,000 offer. *Id.* at

154. On appeal after remand, the Court of Appeals upheld a revised fee award of $93,945 (over

12 times the damages recovered) and rejected the contention that it was disproportionate. *See*

*Diaz v. Jiten Hotel Mgmt., Inc.*, 741 F.3d 170, 174, 177-79 (1st Cir. 2013). The *Diaz* case

illustrates that, because Dexter never made an offer of judgment pursuant to Rule 68, its previous

settlement offer is not a basis to reduce the amount of fees that are reasonable, whether or not the

ultimate judgment is greater than the $300,000 offer to settle that Mr. Dantowitz might have

accepted on two days in September 2022.

> b. The Amount of Fees Should Not Be Reduced Based on the Number of Claims
> on Which Plaintiff Prevailed Because All His Claims Are Interconnected

Although a court may reduce a fee award because some of the claims pled are

unsuccessful, the court should not reduce the award if the claims were intertwined either

factually or legally, such as if they were "based on a 'common core of facts' or 'related legal

theories.'" *Diaz*, 704 F.3d at 153, quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *see*

*also Coutin*, 124 F.3d at 339 (claims are severable if they "rest on different facts and legal

theories"). In this case, all of the claims pled in the complaint were related factually and legally.[5]

At least Counts 1, 2, and 3 of the Complaint alleged that Dexter terminated Mr. Dantowitz for

unlawful reasons, like Count 7 on which he prevailed. Count 3 asserted that Dexter terminated

Mr. Dantowitz in retaliation for seeking a reasonable accommodation in the form of leave to care

---

[5] Defendant suggests that this position contradicts Plaintiff's pretrial contention that his associational discrimination and FMLA retaliation claims were not "identical." Not so. The question for this purpose is whether the claims were "related." The jury could have found for Plaintiff on his associational discrimination claim based on the same facts underlying his FMLA retaliation claim, i.e., that he took leave to care for his disabled son and there was a causal connection between that leave and his termination. Plaintiff had other theories of recovery on his associational discrimination claim as well, such that the claims were not necessarily identical. That does not make the claims less closely related.

for his disabled son, which was the same factual basis as Count 7. The reasons for Mr.
Dantowitz's termination were hotly contested and were a significant focus at trial for the FMLA
retaliation claim in particular. Counts 1, 2, and 5 alleged that Dexter failed to make
accommodations for Mr. Dantowitz and/or interfered with his legal right to leave, like Count 6
on which he prevailed. Counts 4 and 5, although they sought to impose individual liability on
Mr. Tucker and Ms. Aliber as well as Dexter, were based on the same facts and allegations as the
other claims; little or no additional work was performed specific to those claims to the exclusion
of the others.

      At trial, Dexter asserted that poor performance and insubordination were legitimate,
nondiscriminatory/nonretaliatory reasons for terminating Mr. Dantowitz. In proving his case on
the FMLA retaliation claim, Plaintiff presented evidence to undercut the plausibility of those
stated reasons, which was also related to his Chapter 151B claims. In particular, evidence
concerning Mr. Dantowitz's disability was relevant and important for the jury to understand his
unique abilities and difficulties, in order to explain why certain tasks or time frames that might
have been reasonable for a different employee were unworkable for him. The entire sequence of
when Mr. Dantowitz learned of his Autism Spectrum Disorder diagnosis, when he brought it to
the School's attention, and what accommodations he did or did not seek was also material to the
FMLA retaliation claim to rebut Dexter's contention that Mr. Dantowitz was disingenuously
employing his disability as an "easy out" to avoid accountability. And contrary to Dexter's
assertion that the testimony of Mr. Williams and Mr. Phinney related only to Mr. Dantowitz's
Chapter 151B claims, both described retaliatory statements or actions by the individuals
responsible for Dexter's retaliation against Mr. Dantowitz. Mr. Williams testified that, in
response to a minor transgression of Ms. Aliber's expectations, she cornered him in his office to

the point where he felt physically threatened; that after he disclosed a disability, she informed him that he could be terminated because of it; and that the School treated Mr. Dantowitz differently while he was on FMLA leave than others on similar leave, effectively excluding him from campus. Mr. Williams also testified that school officials and a board member expressed concerns about containing medical costs; Dexter had to pay for Mr. Dantowitz's health insurance and medical costs while he was on FMLA leave. And Mr. Phinney testified that after he raised concerns about age discrimination to Mr. Tucker, he started having to meet with Mr. Tucker and Ms. Aliber about performance issues and was abruptly terminated mid-semester. Although this did not concern the same protected activity as Mr. Dantowitz's FMLA retaliation claim, it was relevant to show these decisionmakers' hostility and retaliatory animus toward employees exercising their legally protected rights. Very little, if any, evidence was presented at trial that was focused solely on the Chapter 151B claims and not relevant to the FMLA claims as well. Even if the Court exercises its discretion to reduce the fee award somewhat due to the number of claims on which Plaintiff prevailed, nothing close to the 70% reduction proposed by Defendant is appropriate here.

### c. Additional Reductions Requested by Defendant Are Not Appropriate

The Court should not reduce the hours billed by Attorneys Brody and McNeely either because they were hired only "to assist [Plaintiff] with FMLA paperwork" (Dkt. 189 at 5) or because of "block billing." Although Plaintiff did retain Attorneys Brody and McNeely to assist with his request for leave, their representation was not complete once his FMLA certification was submitted. They also attempted to forestall and counteract ongoing interference and retaliation which Mr. Dantowitz was experiencing while he was out on FMLA leave and when he returned (claims on which he prevailed) and tried to explore the possibility of settlement at

that time with Dexter. *See Foley v. Huppe*, Civ. No. 10-cv-335-JL, 2012 WL 5467527, *4-5 (D.N.H. Nov. 9, 2012) (awarding fees for time spent prior to filing suit, including developing a theory of the case and attempting to settle). And although drafting an MCAD complaint was not a prerequisite to pursuing Plaintiff's FMLA claims, doing so compelled Defendant to submit a sworn position statement, which was valuable early discovery and was useful for impeachment purposes on the FMLA claims; both Attorneys Brody and Herold averred that they would have proceeded with the MCAD process even if only the FMLA claims were going to be litigated. (*See* Herold Aff., Dkt. 185 at ¶ 12; Brody Aff., Dkt. 186 at ¶ 20.) In short, all or substantially all of the time spent by Attorneys Brody and McNeely is compensable. And although Attorneys Brody and McNeely may have engaged in "block billing" at times, courts have generally applied a 10-20% reduction where the block billing includes "questionable entries" and the court is unable to "separate the wheat from the chaff." *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008). Here, Defendant has not identified a single entry that "failed adequately to describe the tasks for which the time was expended" or combined compensable with noncompensable tasks. *See id.* If Attorneys Brody and McNeely devoted all the time they recorded to compensable work, it should be of no moment whether they recorded the time for each individual task or lumped it together. Therefore, this reduction too is unwarranted.

The Court should also reject Defendant's proposed across-the-board 10% reduction to the hours for Attorneys Bernstein and Russcol as they got up to speed on the case. Attorney Bernstein already excluded 11.5 hours of her time before she was officially retained (approximately 5% of her total) (Dkt. 183 at ¶ 12), and Attorney Russcol excluded 3.2 hours before being retained and an additional 14.2 hours (together about 6% of his total) specifically "because at least some of that work was attributable to getting up to speed as new counsel for

Plaintiff." (Dkt. 184 at ¶ 13.) Plaintiff has already accounted for time spent due to the transition in counsel; it is not appropriate to make further reductions for the same reason.

II.     Costs Disputed by Defendant Are Compensable

Of the costs requested, Defendant contests two entries. Ms. Robertson played multiple roles at different stages of this case. She consulted with Plaintiff's counsel on multiple occasions to allow counsel to understand Plaintiff's income and the information contained in his tax returns, which were ultimately introduced as evidence. (Notwithstanding Defendant's assertion that it accepted a letter from Ms. Robertson in lieu of Plaintiff's tax returns, Plaintiff produced his tax returns to Defendant.) Mr. Dantowitz was not able to provide the level of detail that Ms. Robertson could, having prepared the tax returns herself. In this role, Ms. Robertson was analogous to a treating physician or consulting expert, fees for which are compensable under FMLA. *See* 29 U.S.C. § 2617(a)(3). Ms. Robertson also performed an analysis and summer of Plaintiff's and CCI's income and cash flow, which Plaintiff hoped would allow the jury to understand Plaintiff's finances in a more orderly manner than haphazard reference to various numbers in the tax returns themselves. Defendant sought to admit this summary at trial before the Court decided to admit the tax returns themselves. Plaintiff believes that all of these costs are compensable in support of the action. However, because her invoice does not divide up the time spent on the different tasks for the case, Plaintiff is willing to agree to some reduction in the costs sought for Ms. Robertson. Plaintiff respectfully proposes a 35% reduction to her line item, which would reduce the costs sought by $1,925.70.

With regard to the deposition expenses, Defendant misunderstands the costs requested; there is no duplication. Attorney Herold paid the court reporter expenses for the depositions of Ms. Aliber and Mr. Tucker in May 2021. Attorneys Bernstein and Russcol ordered transcripts in

November 2022, but not for Ms. Aliber or Mr. Tucker. The costs in November 2022 were for transcripts of the depositions of Mr. Dantowitz (3/4/21 and 4/21/21) and Mr. Williams (4/27/21). Plaintiff paid for each transcript once and there should not be any deduction for duplicative expenses.

WHEREFORE, Plaintiff requests that the Court allow his motion for attorneys' fees and costs.

Respectfully submitted,
RONALD F. DANTOWITZ,
The Plaintiff,
By His Attorneys,

/s/ David A. Russcol
Inga S. Bernstein (BBO #627251)
David A. Russcol (BBO #670768)
Zalkind Duncan & Bernstein LLP
65a Atlantic Avenue
Boston, MA 02110
(617) 742-6020
ibernstein@zalkindlaw.com
drusscol@zalkindlaw.com

Dated: April 28, 2023

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiff respectfully requests a hearing on this Motion.

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by electronic filing on April 28, 2023.

/s/ David A. Russcol
David A. Russcol
