UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD F. DANTOWITZ,<br><br>   Plaintiff,<br><br>v.<br><br>DEXTER SOUTHFIELD INC.,<br><br>   Defendant. | Civil Action No. 20-CV-10540-AK<br>**Leave to File Granted on**<br>**May 15, 2023** |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO ALTER OR AMEND JUDGMENT**

The Court should grant the Motion to Alter or Amend Judgment ("Motion") of Plaintiff Ronald F. Dantowitz ("Plaintiff" or "Mr. Dantowitz") because Defendant Dexter Southfield Inc. ("Defendant" or "Dexter") has failed to carry its burden of demonstrating that its retaliatory termination of Plaintiff was done in good faith or in a reasonable belief of legality, and the equities of the case under the totality of the circumstances call for a meaningful award of front pay.[1] The Court should look past Defendant's attempts to obfuscate Plaintiff's losses by reference to tax returns that largely reflect the paper gains of Plaintiff's corporation, Celestial Computing Inc. ("CCI") rather than earned income that Plaintiff will be able to generate for the foreseeable future. The loss of his income from Defendant forced Plaintiff to sell half of his stake in CCI and mortgage the rest in order to pay his family medical and other household expenses. Plaintiff asks the Court not for a windfall, but for fair compensation for the continuing effects of his devastating and retaliatory termination that will last for years to come.

---

[1] Because Defendant does not contest the application of a 12% prejudgment interest rate (Dkt. 192 at 1 n.1) and for the reasons stated in Plaintiff's supporting memorandum (Dkt. 191 at 1-2), that portion of the Motion should also be allowed.

I. <u>Evidence That Dexter Spoke with an Attorney Does Not Satisfy Dexter's Burden to Prove Good Faith and a Reasonable Belief of Legality</u>

Although Mr. Vincent did testify that he spoke with an attorney before terminating Mr. Dantowitz, he did not testify about the contents of his conversation with counsel. It is true that consulting with an attorney may be evidence of good faith and reasonable grounds, *Pagán-Colón v. Walgreens of San Patricio*, 697 F.3d 1, 15 (1st Cir. 2012),[2] but an advice of counsel defense requires more. In the cases cited by Defendant, the employer presented evidence of counsel's mistaken but reasonable legal advice and the employer's reliance on it, which was a valid basis for denying liquidated damages. *See Roy v. County of Lexington*, 141 F.3d 533, 548-49 (4th Cir. 1998) (denying liquidated damages where employer "produced evidence that it relied consistently on the advice of… its labor counsel" and "demonstrated reasonableness and good faith in putting forward well-reasoned, sound legal arguments… as to all of the liability issues"); *Quirk v. Baltimore County*, 895 F. Supp. 773, 788 (D. Md. 1995) (employer consulted counsel concerning unsettled legal question on which there was no precedent). In order to avoid liquidated damages based on the advice of counsel, an employer must show that it fully and honestly disclosed all material facts to counsel, sought and obtained legal advice, and then followed that advice. *See Walsh v. East Penn Mfg. Co., Inc.*, 555 F. Supp. 3d 89, 131 (E.D. Pa. 2021) (denying summary judgment as to liquidated damages because employer did not affirmatively seek out legal advice and may not have disclosed all relevant facts to counsel); *Jackson v. R&A Towing, LLC*, No. 21-CV-0618, 2023 WL 2433977, *8 (S.D. Tex. March 9, 2023) (rejecting advice of counsel defense because employer sought legal advice but then failed

---

[2] Likewise, although meeting with an employee to discuss a FMLA leave request can be relevant to good faith in some circumstances, the fact that Ms. Aliber spoke with Mr. Dantowitz about his FMLA leave request in September 2018 has no relevance to the request for liquidated damages concerning the retaliatory termination in January 2019.

to comply with it). The mere act of consulting counsel, which was the extent of Mr. Vincent's testimony, is not a defense to liquidated damages. Based on the evidence presented at trial, Dexter could have sought legal advice based on incorrect information, or could have obtained and ignored a legal opinion that terminating Mr. Dantowitz would be unlawful. Defendant bears the burden of rebutting the "'strong presumption in favor of awarding liquidated damages,'" *Pagán-Colón*, 697 F.3d at 12-13, quoting *Thom v. Am. Standard, Inc.*, 666 F.3d 968, 976 (6th Cir. 2012), and has not done so.

   II.   <u>Front Pay Is Necessary to Make Plaintiff Whole</u>

As Defendant notes, front pay is appropriate when necessary to make a plaintiff whole. (Dkt. 192 at 4.) Dexter's decision to terminate Mr. Dantowitz, which the jury found to be unlawful and retaliatory, upended his life. Before that event, Mr. Dantowitz was largely able to support himself and his family with his salary from Dexter, and was also able to operate CCI at the same time – which at that point generated little income to him other than the sale of a telescope it had acquired thanks to Mr. Dantowitz's effort and investment. Mr. Dantowitz intended CCI to be a nest egg for retirement, which might produce income in the future. Based on the evidence presented at trial, after his termination, Mr. Dantowitz was left with no comparable employment options, since he lacked the educational qualifications to be an astronomer or observatory director elsewhere, and did not have the certifications required to teach at another school. As Mr. Dantowitz testified, he was only able to generate the capital to allow CCI (or its new parent company Skyshow) to pay him by taking out a substantial loan and giving up half of his ownership stake in CCI. If he cannot pay back the loan in little more than a year, he risks losing CCI completely. Although the payments he now receives from CCI are a

salary in form, in substance Mr. Dantowitz is paying himself using loan proceeds that will run out in the near future.

It requires no speculation to see that Mr. Dantowitz has lost, and will continue to be without, the opportunity to earn *both* the salary and benefits he could have earned at Dexter *and* whatever income he would have obtained from CCI if he had stayed employed. Because of Dexter's FMLA violation, Mr. Dantowitz needed to try to get CCI to short-term profitability at the expense of its long-term prospects. If he were still teaching at Dexter, he would not have put CCI at risk by taking out the loan. He likely would not be paying himself a salary from CCI with borrowed money. But it would not be equitable to deny or reduce Plaintiff's front pay because he has managed to keep his family afloat by going into debt.

> a. <u>Defendant Cannot Avoid Front Pay By Eliminating a Position Or By Issuing Annual Salary Letters</u>

Neither the elimination of the Observatory Director title nor the term of Plaintiff's last salary letter is determinative of the front pay issue. Although Defendant identifies an out-of-Circuit case suggesting that front pay is not appropriate when a position has been eliminated, other courts have disagreed, and the First Circuit has not addressed the issue. *See Lewis v. Quaker Chemical Corp.*, 229 F.3d 1152, 2000 WL 1234356, *10 (6th Cir. 2000) (rejecting contention that "front pay is inappropriate for a position that no longer exists" and affirming front pay award in light of all relevant factors); *Barbour v. Medlantic Mgmt. Corp.*, 952 F. Supp. 857, 867 (D.D.C. 1997) (finding it "not dispositive" that position for which plaintiff was not hired was later eliminated). Even in the Third Circuit, courts have recognized that focusing on the elimination of a job with a specific title (as opposed to its responsibilities) "would permit an employer to escape liability merely by reassigning the duties of an unlawfully terminated employee to others holding different titles." *Conway v. Hercules Inc.*, 831 F. Supp. 354, 358 n.7

(D. Del. 1993). In this case, the evidence supports a conclusion that Dexter hired Dr. Santos to replace Mr. Dantowitz as Clay Center Observatory Director as part of its retaliation for his FMLA leave, and only after Dr. Santos departed was the position left vacant. In other words, the position was eliminated *because of* Dexter's unlawful conduct. Dexter still has the Clay Center Observatory and, by the testimony of Dexter's own witnesses, it is a "flagship" part of the School's science education. It is reasonable to infer that Dexter still has someone teaching astronomy and performing the other functions of Mr. Dantowitz's former job, even if it does not have the same title.

As to the salary letter, Defendant cites no authority for the proposition that an at-will employee is precluded from recovering front pay, which is the logical extension of its argument that Plaintiff should be denied front pay because he had no expectation of continuing employment. (Dkt. 192 at 5-6.) Plaintiff's 2014-15 contract (Trial Ex. 38) speaks for itself and is of indefinite duration. Mr. Dantowitz had been given an annual salary letter every year for 18 years and reasonably had no expectation that would change. He loved his job and credibly testified that he would have remained there until retirement but for his retaliatory termination.

### b.   A Front Pay Award Would Not Contradict the Jury Verdict

Unlike *Williams v. Crown Liquors of Broward, Inc.*, 880 F. Supp. 2d 1286 (S.D. Fla. 2012), cited by Defendant, the jury in this case did not necessarily decide that Mr. Dantowitz would not have remained employed at Dexter up to the time of trial or beyond. In *Williams*, the jury's back pay award corresponded to the time period between the plaintiff's retaliatory termination and the pre-trial elimination of the plaintiff's former position. *See id.* at 1290 & n.1. In that case, it was "the only reasonable interpretation of the jury's award" that the plaintiff would not have remained employed through trial. *Id.* at 1290. In contrast, in this case it is not

possible to discern with certainty the jury's rationale in its back pay award of $15,000. That amount does not line up neatly with the salary or any of the benefits that Mr. Dantowitz would have earned up to the time of trial, or even until the end of the school year in which he was terminated. The award may represent a finding that Mr. Dantowitz partially mitigated his damages up to trial, or it could represent a compromise between jurors with divergent views on the appropriate amount of damages. Because there are multiple possible ways of understanding the verdict, it cannot be said that the verdict compels a denial of front pay. In the absence of such an unequivocal finding,[3] the award of front pay need not be tied to the amount of back pay awarded. *See Broadnax v. City of New Haven*, 141 Fed. Appx. 18, 21-23 (2d Cir. 2005) (upholding award of $937,237.67 in front pay compared to $28,333.33 in back pay).

      c.  A Front Pay Award Would Not Be An Unfair Windfall to Plaintiff

Mr. Dantowitz has not earned more income than he would have received from employment at Dexter, nor would front pay represent a "windfall" to him in the circumstances of this case. As it did at trial, Dexter is mischaracterizing the contents of Plaintiff's tax returns to suggest that Mr. Dantowitz personally received well over $1 million in income from CCI from 2019 to 2021. (Dkt. 192 at 7.) In fact, the vast majority of that money consists of income to *CCI* that was taxed on Mr. Dantowitz's return because it was an S corporation. Other than cash distributions made in order for Mr. Dantowitz to be able to pay the anticipated taxes, Mr.

---

[3] As the parties agreed before trial, the jury's verdict as to front pay, which would have been authoritative under state law, is merely advisory under FMLA. The Court is free to weigh the evidence and equities independently so long as its decision is not inconsistent with what the jury necessarily found. *See Troy v. Bay State Computer Grp., Inc.*, 141 F.3d 378, 382-83 (1st Cir. 1998) (judge is bound by prior jury verdict on "factual issues actually litigated and necessary to the result").

Dantowitz did not receive this money and did not have it available to him.[4] And since mid-2022, although Mr. Dantowitz has received a salary, it has come at the cost of giving up at least half of his equity in CCI, which he had previously wholly owned. While Mr. Dantowitz is the President of CCI, that position is not comparable to his former job as Director of the Clay Center Observatory in its stability, responsibilities, or other terms of employment; it had been a role that Mr. Dantowitz indisputably performed in his spare time while he worked at Dexter. In essence, by firing him, Dexter has taken away one of the very few jobs for which Mr. Dantowitz is uniquely qualified and experienced, and forced him to sell his nest egg to make ends meet. He has been left to try to support his wife and three children, some of whom have complex medical needs that were described at trial, with only the income that he can generate from CCI, rather than having the CCI income as a supplement to his full-time salary. Plaintiff can only be made whole for these losses with a significant award of front pay, as requested in the Motion.

        d. <u>The Value of the Tuition Waiver Should Not Be Excluded From Any Front Pay Award</u>

The award of front pay should also include tuition remission for two years. Dexter points out that Plaintiff's son had considered transferring to a different school before Plaintiff's termination. However, Dexter ignores Plaintiff's testimony that his son did not gain admission to another school. Therefore, it is a very reasonable inference that his son would have remained at Dexter if Plaintiff had been able to continue sending him there tuition-free. If the Court ordered Plaintiff reinstated, he would be eligible for the tuition remission benefit for his son. (*See* Trial

---

[4] Although Dexter points to a document that may be the same as Trial Exhibit 63 (Dkt. 192-5 is not Bates-stamped and Plaintiff cannot tell whether it is the same document) to assert that Mr. Dantowitz reported earning $20,000 per month in 2021 in conjunction with a mortgage refinance, Mr. Dantowitz's undisputed testimony was that this number was incorrect, and that he had reported a lower number (connected to the proceeds from the sale of the telescope) in a loan application that Dexter did not enter into evidence.

Ex. 33 at 72 ("Faculty… participating in the Dependent Tuition Remission Program prior to August 1, 2016, may continue to participate in the Program during the course of their employment with the School.")) Since reinstatement is not feasible due to the psychological trauma caused by Defendant's retaliation, and the evident hostility of Dexter administrators, this benefit should be included as an element of front pay.

Based on the factors identified and discussed in more depth in Plaintiff's Memorandum of Law (Dkt. 191) and herein, the Court should award liquidated damages, interest, and front pay as requested.

>Respectfully submitted,
>RONALD F. DANTOWITZ,
>The Plaintiff,
>By His Attorneys,
>
>/s/ David A. Russcol
>Inga S. Bernstein (BBO #627251)
>David A. Russcol (BBO #670768)
>Zalkind Duncan & Bernstein LLP
>65a Atlantic Avenue
>Boston, MA 02110
>(617) 742-6020
>ibernstein@zalkindlaw.com
>drusscol@zalkindlaw.com

Dated: May 15, 2023

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiff respectfully requests a hearing on this Motion.

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by electronic filing on May 15, 2023.

>/s/ David A. Russcol
>David A. Russcol