UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RONALD F. DANTOWITZ,

        Plaintiff,

v.

DEXTER SOUTHFIELD INC.,

        Defendant.

Civil Action No. 20-CV-10540-AK

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF INITIAL MOTION FOR ATTORNEYS' FEES AND COSTS**

As requested by the Court at the August 17, 2023, hearing, Plaintiff Ronald F. Dantowitz ("Plaintiff" or "Mr. Dantowitz") submits this supplemental memorandum to address the Court's concern about finding a principled way to reduce Plaintiff's fee request in light of the limited damages awarded by the jury and Judge Kelley[1] and the settlement offer that was made before trial,[2] among other factors. Given that the Court has indicated an inclination to award less than

---

[1] For clarity, the jury found liability and awarded $15,000 in back pay damages on the FMLA retaliation claim, and liability but no damages on the FMLA interference claim. Acting on Plaintiff's timely post-trial motion, Judge Kelley found that Defendant had not established that it acted in "good faith" and on "reasonable grounds for believing" that its conduct was lawful, and therefore awarded liquidated damages in the amount of $15,000, with prejudgment interest at the 12% Massachusetts rate on both the jury verdict and the liquidated damages. (Dkt. 207.) Thus, although the parties have a disagreement on calculation of interest, Plaintiff's total recovery, not including an award of attorney's fees, will total between $42,117.10 and $42,903.66 as of August 16; the judgment will be lower because Defendant made a payment in April. (Dkt. 212 at 1 & n.1.)

[2] Plaintiff continues to object to the consideration of a settlement offer for determining a reasonable fee under FMLA. The First Circuit has explicitly left open the question of whether doing so is ever appropriate. *See Coutin v. Young and Rubicam Puerto Rico Inc.*, 124 F.3d 331, 341 & n.8 (1st Cir. 1997) (expressing concern that allowing courts to consider settlement offers would "create inordinate pressure on plaintiffs to accept low settlement offers" and would "inhibit the bringing of civil rights actions," while declining to decide "whether a fee award in a

the full amount of fees requested, Plaintiff submits that a 20% across-the-board reduction appropriately balances the "amount involved and the results obtained" against the other *Hensley* factors,[3] for different reasons applicable to each stage of the case and each set of counsel as stated herein.[4] As the Court has made clear, this submission should not be understood to waive Plaintiff's claim that he is entitled to all the fees requested in the petition.

It is not appropriate to apply a significant reduction because Plaintiff prevailed on his FMLA claims but not his Chapter 151B claims.[5] The majority of the evidence in the case focused on what Mr. Dantowitz's job was, what performance expectations had or had not been set over time, the extent to which he was performing his job adequately or was unfairly blamed for circumstances beyond his control from the summer of 2018 through his termination, the conduct of Plaintiff and Dexter administrators during three meetings preceding his termination, and the state of mind of Dexter and its administrators. All of this evidence was equally applicable to all claims as it addressed whether Dexter's stated reasons for terminating Plaintiff (poor performance and insubordination) were true or were pretextual, from which the jury could infer liability. That included testimony about Mr. Dantowitz's disability, because it allowed the jury to infer that after he returned from FMLA leave, Dexter saddled him with burdensome

---

civil rights action might be subject to reduction, apart from Rule 68, because the prevailing plaintiff received a damage award which was less than the defendant had offered in settlement"). Courts including the Second Circuit have refused to permit consideration of settlement offers because it would dissuade plaintiffs from proceeding with meritorious claims if a court would decide, with the benefit of hindsight, whether it was unwise not to accept a settlement proposal. *See Ortiz v. Regan*, 980 F.2d 138, 140-41 (2d Cir. 1992).

[3] *See Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983).

[4] At a minimum, the fee award should be no lower than the $150,000 figure that Defendant has conceded would be reasonable. Defendant has waived any contention that the award should be lower, and an amount smaller than that would not be "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 599 U.S. 542, 552 (2010).

[5] *See* Dkt. 195 at 7-9.

busywork that was uniquely difficult for him. Evidence concerning Plaintiff's disability was also necessary to rebut Defendant's contention that Plaintiff was using both his disability and his FMLA leave as "easy outs" to avoid oversight and accountability. The testimony of witnesses like Michael Williams and Robert Phinney, although partly focused on disability discrimination that they experienced or learned about, also related to the FMLA retaliation claim because they each described retaliation that they experienced from Dexter's HR director, Carmen Aliber, and others, permitting the jury to infer an atmosphere of retaliation for exercising protected rights. The common factual and legal issues among the claims render a claims-based assessment of success of limited utility.

Even if the Court were to determine that some of the evidence pertained only to the Chapter 151B claims and not to the FMLA claims, it would be quite challenging to parse out what evidence was so limited,[6] and it certainly would not be the 70-80% estimated by Defendant.[7] The most plausible reading of the jury's verdict indicates that the different causation standards on which Judge Kelley instructed the jury for Chapter 151B (that discrimination was a "determinative cause," meaning a "material and important reason that the defendant took adverse

---

[6] As the Supreme Court noted in *Hensley*, "Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims. … Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." 461 U.S. at 435.

[7] This Motion was originally addressed to the trial judge, for whom Plaintiff believed transcripts of the trial would not be a reasonably necessary expenditure to facilitate understanding of the scope and nature of the evidence. It is unfortunate that this Court is now in the position of relying on counsel, who have very different beliefs and recollections about how evidence was presented, for information about which testimony was relevant to each claim. Since this Court was not present at trial, if the Court is inclined to reduce the fee award based on an asserted lack of overlap between the FMLA claims and the Chapter 151B claims, Plaintiff believes it would be appropriate for the transcripts to be ordered so that the Court can make that determination on a full record. Plaintiff would then need to seek those costs in a supplemental request.

action") and FMLA (that taking leave was "a motivating factor," not necessarily "the sole motivation or even the primary motivation" for the adverse action) drove the decision on liability, and the jury's understanding of Mr. Dantowitz's tax returns and subsequent mitigation efforts led to its finding on damages.

As a frame of reference and with regard to the twelfth *Hensley* factor (awards in similar cases), *Walsh v. Boston Univ.*, 661 F. Supp. 2d 91 (D. Mass. 2009), is instructive. In *Walsh*, much as in this case, the plaintiff filed a complaint asserting claims for FMLA interference and retaliation, and disability discrimination under state and federal law, seeking back pay, front pay, and other damages. *See id.* at 95, 98 n.8. After litigating the case past the summary judgment stage, after which 4 out of 5 claims survived, *see id.* at 95 & n.3, the plaintiff accepted a Rule 68 offer of judgment in the amount of $15,000. *Id.* at 96. As most relevant here, the court considered a lodestar adjustment based on limited success achieved which was "far less than the recovery requested of back wages from the time of the November 2001 termination" at least to the filing of the complaint in 2003, if not to the tine of the decision in 2009. *Id.* at 116.[8] The court found it important that the Rule 68 offer, since it was not a determination on the merits, would have "little, if any, deterrent impact" and did not achieve the "societal importance of a vindicated right." *Id.* at 116. Considering these and other factors, the court decided that a 30% reduction from the lodestar amount was warranted.

In this case, Plaintiff had to go to trial in order to obtain a finding of liability and vindicate his rights and the jury verdict and subsequent court findings clearly advanced the "societal importance of a vindicated right." The settlement offer of $300,000, which expired

---

[8] The *Walsh* decision does not make clear whether the plaintiff had obtained alternative employment or other mitigation of damages at some point. As such, it is uncertain whether the *Walsh* plaintiff was seeking 8 years of back pay or something substantially less than that.

without a response shortly after it was made upon the issuance of the summary judgment decision, would have come without any admission of fault; the liability findings were extremely important to Mr. Dantowitz as a matter of principle. Moreover, as discussed at the hearing, had he accepted the settlement offer, nearly half of the amount would have gone to legal fees for Attorneys Herold, Brody, and McNeely. The $15,000 awarded at trial is worth more than the $15,000 paid in *Walsh* because of the verdict on the merits that may deter future violations first and foremost, because of the finding that Defendant did not act in good faith, and also because the liquidated damages and interest have increased the verdict to nearly triple that amount. By comparison to *Walsh*, Plaintiff submits that a reduction to the lodestar amount of 20% – two-thirds of the 30% applied in *Walsh* – is a more than adequate reduction in the circumstances of this case.

Of the other *Hensley* factors, several weigh in favor of a more substantial fee award and/or are not contested by Defendant. Defendant has not challenged the hourly rates of Plaintiff's counsel, nor their experience, reputation, or ability (*Hensley* factor 9). It also has not argued that the time spent on the tasks performed was excessive, apart from objections related to block billing and the scope of work of Attorneys Brody and McNeely, and undersigned Plaintiff's counsel chose not to seek fee awards for the time and effort of paralegals, law students and other firm lawyers for their contributions to the case (factor 1). With regard to the novelty and difficulty of the questions (factor 2), there were many hotly contested legal issues, some of which are captured in the briefing on motions in limine and another of which was jury instructions on the causation standard for FMLA claims, where Defendant argued for "but for" causation and Plaintiff successfully advocated for the "motivating factor" formulation. On the facts, Defendant was able to produce evidence of the failure of the main telescope immediately

before Plaintiff took leave, which it presented as demonstrating poor performance; it was no small task to convince the jury that this reason for termination was pretextual.

Other *Hensley* factors apply differently to different sets of counsel. Attorneys Brody and McNeely had an hourly fee arrangement (factor 6) which Plaintiff paid out of pocket. In their initial work to advise Mr. Dantowitz about his request for leave, there was urgency given Dexter's demand that he make clear what type of leave he was requesting and the need to submit the necessary certifications to qualify for FMLA soon after his leave began, but subsequent work was more sporadic (factor 7, time limitations imposed by the client or the circumstances). Mr. Dantowitz worked with Attorneys Brody and McNeely for about 6 months (factor 11, length and nature of the professional relationship) and the amount of work required was not so great as to require them to drop all other matters (factor 4, preclusion of employment on other matters). The work of Attorneys Brody and McNeely was focused primarily on Plaintiff's FMLA leave and combating interference and retaliation, particularly once Plaintiff learned in October 2018 that Dexter had posted what he believed to be his position, and Plaintiff believed that his termination was imminent. That said, Attorneys Brody and McNeely did work on drafting a Charge of Discrimination for the Massachusetts Commission Against Discrimination, and although both Attorney Brody and Attorney Herold averred that such a charge is a valuable source of early discovery even if not pursuing a Chapter 151B claim, if the Court were so inclined, it would be reasonable to reduce the hours spent on those tasks. By Plaintiff's count, 14.2 hours of Attorney Brody's time (25% of his total) and 2.8 hours of Attorney McNeely's time (8% of her total) were spent on entries using the word "charge" and including work on the MCAD charge (among many other tasks).

Attorney Herold represented Mr. Dantowitz and litigated this case for nearly three years on a contingency basis (factors 6 and 11). As a solo practitioner, during busy times like depositions and summary judgment briefing, Attorney Herold was limited from taking on other matters (factor 4). And Attorney Herold was efficient, spending only 156 hours to get the case from the beginning through discovery, including litigating some discovery disputes, through and past summary judgment, and attempting to resolve the matter through the first mediation (factors 1 and 3). Even so, as mentioned above, part of Attorney Herold's efforts were directed at the MCAD process which was not mandatory for pursuing the FMLA claims: 2.5 hours (1.6% of her total) are listed in entries concerning the MCAD process, such as the charge and position statement; 1.5 hours (1% of her total) are also listed as containing file review at the beginning of the representation and may be attributable to the change in counsel.

For Attorneys Bernstein and Russcol, the press of preparing for an impending trial deadline (and a second mediation) within weeks of being retained required them to focus almost exclusively on this matter for an extended period of time. Due to these extreme time limitations, and the trial judge's decision to continue the trial only by a few weeks and no more in response to the change in counsel, Attorneys Bernstein and Russcol could work on almost nothing else for two months or more (factors 4 and 7). In December 2022, almost exactly half of Attorney Russcol's billable hours were devoted to this case (and about 25% of Attorney Bernstein's), and in January and February 2023, to the end of trial (and beyond, in preparation of post-trial motions) each spent about 85% of their billable time on this matter. Attorneys Bernstein and Russcol have a mixed fee arrangement (factor 6) and a shorter attorney-client relationship (factor 11), but a very intense one as they took on the case and immediately prepared it for trial (as well as attempting to resolve it through a second mediation).

Although each set of attorneys is in a distinct situation, with factors pulling in different directions, Plaintiff submits that a 20% reduction to each would be a more than reasonable resolution of the present Motion in consideration of the results obtained and all the other *Hensley* and related factors. Plaintiff believes that a line-by-line examination of each billing record is largely unnecessary, since Defendant has raised few, if any, issues with specific entries, and since it would be difficult to understand the connections among some of the entries without having heard the evidence at trial. In addition, Plaintiff believes that such an inquiry would likely end up with roughly the same result.

Plaintiff respectfully requests that the Court, in its ruling, calculate the amounts being awarded for each attorney, as the allocation of a fee award may impact whether and to what extent he is required to pay fees to each attorney over and above the Court's award.

> Respectfully submitted,
> RONALD F. DANTOWITZ,
> The Plaintiff,
> By His Attorneys,
>
> /s/ David A. Russcol
> Inga S. Bernstein (BBO #627251)
> David A. Russcol (BBO #670768)
> Zalkind Duncan & Bernstein LLP
> 65a Atlantic Avenue
> Boston, MA 02110
> (617) 742-6020
> ibernstein@zalkindlaw.com
> drusscol@zalkindlaw.com

Dated: August 23, 2023

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by electronic filing on August 23, 2023.

> /s/ David A. Russcol
> David A. Russcol