UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD F. DANTOWITZ,<br><br>        Plaintiff,<br><br>v.<br><br>DEXTER SOUTHFIELD INC.,<br><br>        Defendant. | Civil Action No. 20-CV-10540-AK |

**PLAINTIFF'S OBJECTIONS TO ORDER ON MOTION FOR ATTORNEYS' FEES AND COSTS (DOCKET NO. 223)**

Pursuant to Federal Rule of Civil Procedure 72(a), Plaintiff Ronald F. Dantowitz ("Plaintiff" or "Mr. Dantowitz") submits the following objections to Magistrate Judge Levenson's Order on Plaintiff's Initial Motion for Attorneys' Fees and Costs. (Dkt. No. 223, referred to herein as "MJ Order.") Despite Judge Levenson's substantial consideration of relevant case law, the decision is erroneous because contains several key inaccuracies about this litigation and the conduct of the trial, and is ultimately contrary to law because the reductions to the lodestar calculation are larger than appropriate in the circumstances of this case and ultimately fail to produce a fee award "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 599 U.S. 542, 552 (2010).[1]

---

[1] In order to focus and narrow the issues presented to this Court, Plaintiff does not seek review of the Magistrate Judge's calculation of the lodestar amount, including the reductions in hours contained on pages 8-10 of the Order, or the adjustments to costs awarded. Plaintiff only seeks review of the 60% lodestar reductions.

In particular, the following factual and legal errors materially impacted the Magistrate Judge's conclusion that a 60% across-the-board lodestar reduction was warranted for limited success on the merits:

1. The MJ Order relies heavily on the notion that Plaintiff rejected a $300,000 settlement offer, which is factually unsupported because the offer in fact expired before Plaintiff had an opportunity to respond to it, and it was not rejected.

2. The Magistrate Judge should not have considered the settlement offer at all, because persuasive authority from the Second Circuit holds that even rejected settlement offers should not be considered in evaluating fee petitions.

3. The Magistrate Judge also relied upon the gap between the $4 million purportedly requested from the jury and the $15,000 in back pay damages awarded, when in fact no such figure was ever presented to the jury.

4. Penalizing Plaintiff with a 60% reduction for not accepting the settlement proposal is particularly inappropriate because he received the vindication of a finding of liability at trial, which he could not have gotten through a negotiated settlement.

5. The Magistrate Judge incorrectly understood the relationship among the claims as pled and as presented to the jury, which overlapped significantly, and therefore reduced the lodestar amount more than was appropriate.

6. Even if a lodestar reduction for success on the merits is warranted, such a significant reduction should not apply equally to the work of Attorneys Brody and McNeely, since their work focused on the FMLA claims and Plaintiff prevailed on both FMLA claims.

7. The Magistrate Judge erred in reducing the award of attorney's fees beyond what Defendant Dexter Southfield Inc. ("Defendant" or "Dexter") conceded was appropriate ($150,000 in fees to all counsel combined).

These issues will be addressed in turn. Plaintiff respectfully requests that the District Judge assigned to this matter correct the errors identified herein and award an increased amount of attorney fees, applying a lodestar reduction closer to the 20% overall reduction contemplated in Plaintiff's prior submission.

Argument

    I.    The Magistrate Judge Inappropriately Considered Inaccurate Information Concerning Settlement Proposals and Damages Demanded at Trial

           a.    The Magistrate Judge Placed Extreme Emphasis on Plaintiff's Rejection of a Settlement Offer That Was Not Rejected

Although the Magistrate Judge recognized that the First Circuit has cautioned not to place undue emphasis on a history of settlement proposals, he repeatedly highlighted that "Defendant made a settlement offer of $300,000 in September 2022… [but] Mr. Dantowitz passed up that offer and ended up winning a fraction of that amount in damages." (MJ Order at 19-20.) This settlement offer was a cornerstone of the Magistrate Judge's analysis, as he went on to state that it "provides the most concrete available benchmark for measuring Mr. Dantowitz's… assessment of what [he] considered a minimally successful outcome" (MJ Order at 23) and that it "tells us about the lower limits of what Mr. Dantowitz would have counted as a meaningful victory." (MJ Order at 28 (emphasis omitted).) The MJ Order concluded that Mr. Dantowitz had not achieved meaningful success because he "walked away from an amount twenty times larger." (*Id.* at 29.) But the premise of this comparison is faulty – Mr. Dantowitz did not reject that offer. The Magistrate Judge is correct that Defendant made the offer in September 2022.[2] (Dkt. 189-2.) But by its terms, the offer expired upon this Court's issuance of a decision on Defendant's motion for summary judgment, which occurred two days later. (Dkt. 89.) It is undisputed that Mr. Dantowitz never responded to the offer, so it was clearly erroneous to compare it to a situation where an offer is received, considered, and rejected outright. To the extent that the offer could be

---

[2] Mr. Dantowitz's recollection does not align with Defendant's suggestion that the offer was first conveyed orally in "early August 2022." (Dkt. 217 at 2 n.2.) Mr. Dantowitz does not remember learning of the offer before it was sent in writing on September 6, 2022. He was therefore aware of the offer for less than two days before it expired.

considered at all, the Magistrate Judge's decision placed undue weight on it and considered inaccurate evidence related to it, and is erroneous for that reason.

        b. It Was Legal Error for the Magistrate Judge to Consider the Settlement Offer in Order to Reduce the Award of Attorney's Fees

As the Magistrate Judge recognized, the First Circuit has not held that a fee award may be reduced because a defendant offered more in settlement (and not in a Rule 68 offer of judgment) than the plaintiff recovered at trial. *See Coutin v. Young and Rubicam Puerto Rico Inc.*, 124 F.3d 331, 341 n.8 (1st Cir. 1997) (reserving the question of whether such a reduction may be appropriate outside the Rule 68 context). The First Circuit in *Coutin* expressed policy concerns that relying upon settlement offers to reduce a fee award would produce inordinate pressure on plaintiffs to accept settlements rather than exercising their rights to trial, contrary to Congress's mandate that fees should be awarded on claims under the FMLA and other statutes regardless of the amount at stake. *See id.* at 341. Although the First Circuit has not had occasion to decide the question, the Second Circuit has relied upon similar policy concerns to hold that "[a] district court should not rely on informal negotiations and hindsight to determine whether further litigation was warranted and, accordingly, whether attorney's fees should be awarded. Otherwise, plaintiffs with meritorious claims may be improperly dissuaded from pressing forward with their litigation." *Ortiz v. Regan*, 980 F.2d 138, 140-41 (2d Cir. 1992). Although the Magistrate Judge cited a District Court case, *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 318, 398 (S.D.N.Y. 2000), to suggest that courts in the Second Circuit have in fact considered settlement discussions in the fee award calculus since *Ortiz*, the Second Circuit subsequently reversed both of the examples cited in *Marisol A.*, reaffirming that settlement offers should not be used to reduce fee award in the absence of bad faith. *See NAACP v. Town of East Haven*, 259 F.3d 113, 119-120 (2d Cir. 2001); *see also Raishevich v. Foster*, 247 F.3d 337, 347-48 (2d Cir.

2001). Although other Circuits have reached different conclusions on this issue, Plaintiff submits that the First Circuit would follow the Second Circuit and decline to permit reductions of fees based on pretrial settlement discussions. Without the improper influence of this information, the rationale for such a harsh reduction is undermined, and a lesser diminution is appropriate.

      c. The Magistrate Judge Erred By Comparing Plaintiff's Recovery to a Request for Damages that Was Not Made to the Jury

The Magistrate Judge clearly erred by including as a reference point in his analysis that "In presenting his case [to] the jury, Mr. Dantowitz asked for an award of $4 million in damages" (MJ Order at 19), when that simply did not occur. The only mention of a $4 million number included in the record was a statement by Attorney Herold, who was not trial counsel, over a year before trial stating that at that point, Plaintiff intended to seek "$4M at trial." (Dkt. 189-1.) That number was never mentioned to the jury, much less "in a summation before the jury" (MJ Order at 20), and in fact Attorney Herold's email mentioned among Plaintiff's damages "the forced sale of roughly $1.7M in business assets," which was not included at all as a measure of damages in Plaintiff's presentation to the jury. (*Id.*) To the extent that the $4 million number has any relevance at all, it is akin to an ad damnum amount included at the outset of a case, on which the First Circuit has cautioned to place little weight. *See Coutin*, 124 F.3d at 338 & n.4, 342. In any case, it is apparent that the Magistrate Judge misunderstood the context in which that number was mentioned and therefore placed undue emphasis on it as a benchmark from which his recovery was "a tiny fraction of the sums [Plaintiff] sought from the jury." (MJ Order at 35.) The Magistrate Judge's decision must be reevaluated with proper perspective on this factor.

II. The Magistrate Judge Undervalued the Societal Importance and Deterrent Impact of a Finding of Liability in his Decision to Reduce the Lodestar by 60%

In finding that Plaintiff had achieved little success, the Magistrate Judge gave insufficient weight to the vindication of Plaintiff's claims through findings of liability. The jury found that Dexter had interfered with his FMLA rights and, more importantly, that it had illegally fired him. This Court further found that Dexter had not acted in good faith and on reasonable grounds in terminating Mr. Dantowitz. Because Defendant never made a Rule 68 offer, the only way Plaintiff could receive the external validation that Defendant had violated his rights was by proceeding to trial. In drafting and passing the FMLA, Congress made "a legislative judgment that the public as a whole has an interest in the vindication of the rights conferred by the statute[] over and above the value of a remedy to a particular plaintiff." *Joyce v. Town of Dennis*, 720 F.3d 12, 31 (1st Cir. 2013) (quotations and alterations omitted). Congress recognized that findings of liability can have impacts beyond the individual plaintiff. Although Plaintiff cannot speak to the consequences firsthand because his relationship with the institution has been severed, even with regard to this Defendant, the verdict may well have had impacts on policies, procedures, and personnel decisions, all of which are important to future respect for and enforcement of the FMLA. Suffice it to say that, having been subjected to litigation and liability for FMLA violations once, Dexter is likely to take its obligations and responsibilities more seriously in the future.

While the Magistrate Judge characterized the jury's verdict as "disastrous" and an "abject disappointment" for Plaintiff (MJ Order at 30),[3] the verdict told the Defendant and the public that

---

[3] The Magistrate Judge also concluded that Mr. Dantowitz's "claimed moral victory is wholly evanescent" in part because the jury rejected his claim of "retaliation on the basis of his

Mr. Dantowitz was right to challenge his termination and that Dexter had broken the law. Because this is not a case where Mr. Dantowitz received "no significant relief" or only nominal damages, *see Coutin*, 124 F.3d at 339, proper consideration of the relevant factors required more emphasis on the vindication of Mr. Dantowitz's principles and less on the magnitude of monetary damages alone. To the extent that the jury's award of damages reflected a conclusion that Mr. Dantowitz had largely mitigated his damages through his side business, he should not be doubly penalized for his mitigation efforts by reducing both his damages award and the amount of attorney's fees that are reasonable.

III. **The Magistrate Judge Erred in Holding that Plaintiff's FMLA and Chapter 151B Claims Were Distinct and that Two-Thirds of the Evidence at Trial Was Irrelevant to the FMLA Claims.**

Because the claims Plaintiff pled and presented at trial were more interconnected than the Magistrate Judge recognized, the decision to slash the lodestar calculation by 60% was erroneous. The Magistrate Judge's understanding of the claims was that "there were essentially two sets of allegations here: FMLA claims and personal disability claims," and that "while the claimed discrimination allegedly played out over many months and years before Mr. Dantowitz's discharge, the FMLA claims concerned only the period from August 2018 through January 2019." (MJ Order at 13.) But before trial, Defendant took the position that "Plaintiff's associational handicap discrimination claim is <u>identical</u> to Plaintiff's FMLA Retaliation claim [because both] claims rely on the identical fact scenario – that the School terminated Plaintiff's employment for taking FMLA leave (so Plaintiff could care for his son)." (Dkt. 108 at 2-3 (emphasis in original).) The Magistrate Judge appears to have misunderstood the nature of this

---

disability," (MJ Order at 30), but the jury did not hear or decide a claim of retaliation other than the FMLA retaliation claim on which he succeeded. It is unclear to what extent this clear error impacted the Magistrate Judge's analysis on this point.

claim in particular, as he stated that the disability claims turned on "Mr. Dantowitz's own disability" and that "[i]t is largely beside the point that Mr. Dantowitz's child suffers from a disability that bears the same diagnostic label as Mr. Dantowitz's own disability." (MJ Order at 13 & n.7.) Far from being "beside the point," Mr. Dantowitz's son's disability was a core element of both his FMLA claims (since Mr. Dantowitz would not have been eligible for FMLA leave absent a family member with a serious health condition) and his associational discrimination claim (which alleged that Dexter terminated him because of his relationship with a handicapped person). The Magistrate Judge drew an artificial distinction between disability-related claims on the one hand, and the FMLA claims which turned on "Mr. Dantowitz's need as a *parent*… to take leave in order to care for his child" (MJ Order at 13 (emphasis in original)), when one of Plaintiff's theories under Chapter 151B was that Dexter terminated him because he needed leave to care for his disabled son.[4] And that theory, like the FMLA retaliation claim, focused primarily on the time period from August 2018 to January 2019. Although the claims (and, notably, the burden of proof) were not exactly identical, the facts underlying them were nearly so. Because of this misconstruction of the nature of the associational discrimination claim presented at trial, the Magistrate Judge's analysis of the amount of evidence and effort that was intertwined with Plaintiff's successful claims was erroneous.

The Magistrate Judge's erroneous analysis of the interconnectedness of the claims also extended to Mr. Dantowitz's direct disability discrimination claim.[5] The FMLA retaliation claim

---

[4] This Court also articulated this theory of the associational claim in its summary judgment decision: "a reasonable jury could conclude that Defendants decided to terminate Mr. Dantowitz during, and because of, the period of leave he took to care for his son." (Dkt. 89 at 14.)

[5] The claims that were dismissed by the Court at summary judgment were also factually linked with or identical to other claims that were presented at trial: Claim 3, for Chapter 151B retaliation, asserted that Mr. Dantowitz was terminated for taking leave to care for his son, just as

asserted that Plaintiff was terminated for a legally protected reason, that he had taken FMLA leave; the Chapter 151B claim asserted that he was terminated for a different, legally protected reason, his disability. Because Dexter identified what it characterized as a significant shortcoming in Plaintiff's performance (the failure of the main telescope) and had testimony asserting that he had been insubordinate, one of Plaintiff's tasks on both claims was to convince the jury that Dexter's stated reasons for terminating him were false and pretextual, allowing them to infer unlawful motivations. This required in-depth testimony concerning Mr. Dantowitz's strengths and disabilities, as well as the performance expectations that had been applied before he took FMLA leave as opposed to the differential treatment that he received during and after his leave. In addition, the entire sequence of when Mr. Dantowitz learned of his Autism Spectrum Disorder diagnosis, when he brought it to Dexter's attention, and what accommodations he did or did not seek was also material to the FMLA retaliation claim to rebut Dexter's contention that Mr. Dantowitz was disingenuously employing his disability as an "easy out" to avoid accountability. Although testimony about Mr. Dantowitz's difficulties with reading and writing long documents, among other things, was surely relevant to his discrimination claim, it also supported an inference that requiring exactly the types of tasks that Mr. Dantowitz found difficult was a form of retaliation in order to set him up to fail and attempt to justify his termination, contrary to the Magistrate Judge's conclusion that "large swaths of Mr. Dantowitz's evidence were superfluous to his FMLA claim testimony." (MJ Order at 17.) Similarly, testimony about how Dexter arranged performance meetings while rejecting Plaintiff's request

---

the FMLA retaliation claim did (Dkt. 89 at 14-15); and Claims 4 and 5, for aiding and abetting discrimination and interfering with rights under Chapter 151B, asserted the same allegedly discriminatory acts, including Mr. Dantowitz's termination, but against individual defendants, Mr. Tucker and Ms. Aliber (Dkt. 89 at 15-19).

for a neutral witness or notetaker suggested that the allegations of insubordination were fabricated in bad faith and therefore pretextual.

The Magistrate Judge also erroneously failed to see the connection between the testimony of Michael Williams and Robert Phinney, whom he characterized as "former school employees who described their experiences of alleged discrimination" (MJ Order at 17), and the FMLA claims. Mr. Williams testified that Dexter treated Mr. Dantowitz differently while he was on FMLA leave than others on similar leave, effectively excluding him from campus; that testimony directly supported Plaintiff's FMLA claims. Mr. Williams also testified that, in response to a minor transgression of Ms. Aliber's expectations, she cornered him in his office to the point where he felt physically threatened, and that after he disclosed a disability, she informed him that he could be terminated because of it. This testimony was relevant to the state of mind of a key Dexter administrator and indicated that the Head of Human Resources was retaliatory and actively hostile to the exercise of protected rights.[6] Similarly, Mr. Phinney testified not only to the discrimination that he faced but also about the fact that, once he raised concerns about discrimination to Mr. Tucker, he was suddenly subjected to extreme scrutiny of his performance by Mr. Tucker and Ms. Aliber, with whom he had to meet regularly, and then he was terminated within a matter of weeks. This remarkably similar course of events, during the same semester when Mr. Dantowitz was out on FMLA leave, supported an inference that Dexter, and specifically Mr. Tucker and Ms. Aliber, used this playbook as a form of retaliation rather than a

---

[6] The Magistrate Judge demonstrated confusion when he addressed this argument by stating that "the jury only found liability for one of [Plaintiff's] two retaliation claims" and that the jury had not "credited the notion that there was a generalized 'atmosphere of retaliation' at the school." (MJ Order at 16 n.9.) In fact, only one retaliation claim was presented to the jury – the FMLA retaliation claim, on which Plaintiff prevailed. This highlights the extent to which the Magistrate Judge, having not presided over the trial, made significant efforts to understand the full course of the litigation but fell short in some respects.

genuine way of addressing legitimate performance issues. This evidence was relevant to the FMLA claims as well as the discrimination claims.

These errors in conceptualizing Mr. Dantowitz's claims had a major impact on the Magistrate Judge's analysis. The Magistrate Judge stated that "the FMLA matters appear to cover less than one-third of the effort expended in briefing or in trial testimony" (MJ Order at 35),[7] and his bottom-line conclusion was approximately a two-thirds reduction in the lodestar calculation. Because he took an overly narrow view of the claims and the evidence relevant to support them, the Magistrate Judge erroneously determined that most of the trial was only about the disability claims, when in reality all of the claims were connected factually and/or legally. The error of the Magistrate Judge in failing to recognize these connections is particularly prejudicial because case law holds that courts should not reduce fee awards based on unsuccessful claims if the claims were "based on a 'common core of facts' or 'related legal theories.'" *Diaz v. Jiten Hotel Mgmt., Inc.*, 704 F.3d 150, 153 (1st Cir. 2012), quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Surely, in hindsight, some aspects of the trial could have been presented more concisely, and not every piece of evidence would have been critical if only the FMLA claims had been at issue. But the trial would not have taken one-third of the time in that situation – most of the evidence presented still would have been relevant. The Magistrate Judge's conclusion that "[a] lawsuit addressing only the FMLA claims would have required far less evidence and testimony about Mr. Dantowitz's disability" is erroneous. If a reduction in fees

---

[7] The amount of ink spilled over a claim is also a poor proxy for the relative importance or interconnectedness of claims. Simply because the FMLA retaliation claim was more straightforward, and therefore required less briefing in advance of trial, does not mean that effort spent on the Chapter 151B claims was entirely severable or less valid.

would be appropriate based on the lack of success on the claims on which Plaintiff did not prevail, such a reduction should be significantly smaller than 60%.

IV. Because Attorneys Brody and McNeely Were Retained to Assist Plaintiff with His FMLA Leave and Plaintiff Prevailed on His FMLA Claims, a 60% Reduction Is Particularly Inappropriate for Their Work.

The work of Attorneys Brody and McNeely was devoted almost entirely to facilitating Mr. Dantowitz's FMLA leave and attempting to forestall retaliation for taking that leave. As noted by the Magistrate Judge, "Defendant does not object to the hours spent by Mr. Brody and Ms. McNeely to facilitate Mr. Dantowitz's FMLA leave." (MJ Order at 8 n.6.) The Magistrate Judge also credited the rationale of Attorney Brody that preparing a complaint for filing at the Massachusetts Commission Against Discrimination, *based on substantially the same facts underlying the FMLA claims*, was an efficient mechanism for early discovery and he would have performed that work even if only the FMLA claims were to be filed in court. (MJ Order at 7-8.) In the context that Plaintiff prevailed on the claims on which Attorneys Brody and McNeely worked, applying a 60% reduction to their hours makes little sense and is not specifically explained. Even if the Court determines that a significant downward adjustment is warranted, that adjustment should not be applied equally to work that was focused on Plaintiff's areas of success.[8]

Conclusion

Although the Court has discretion to determine what constitutes "a reasonable attorney's fee" under the FMLA, *see* 29 U.S.C. § 2617(a)(3); *Gay Officers Action League v. Puerto Rico*,

---

[8] Although Plaintiff did suggest that a reduction of 20% for each counsel would be reasonable (Dkt. 216 at 8), that proposal was based on a different set of considerations for each attorney. Plaintiff respectfully submits that a reduction of greater than 20%, if that, for Attorneys Brody and McNeely in particular would not be warranted.

247 F. 3d 288, 292 (1st Cir. 2001), that determination must be based on a solid factual foundation and full consideration of the relevant factors. Despite the Magistrate Judge's substantial analysis of the case law, he misunderstood factual aspects of the case including the fact that the settlement offer was not rejected but expired soon after it was made and the fact that no $4 million request for damages was made to the jury. The Magistrate Judge also erred by considering the settlement offer at all, by underappreciating the value of a finding of liability which was not offered in settlement, by misunderstanding the nature of and relationship among the legal claims and the evidence presented, and by applying such a significant reduction to the work of Attorneys Brody and McNeely who focused on the successful FMLA claims. The end result was an award of attorney's fees lower than what is reasonable and lower even than what Defendant conceded was appropriate, $150,000 in fees to all counsel combined. (Dkt. 189 at 7-8.) For all these reasons, the District Judge should correct the Magistrate Judge's errors by applying a smaller reduction to the lodestar calculation than the across-the-board 60% diminution contained in the MJ Order.

Respectfully submitted,
RONALD F. DANTOWITZ,
The Plaintiff,
By His Attorneys,

/s/ David A. Russcol
Inga S. Bernstein (BBO #627251)
David A. Russcol (BBO #670768)
Zalkind Duncan & Bernstein LLP
65a Atlantic Avenue
Boston, MA 02110
(617) 742-6020
ibernstein@zalkindlaw.com
drusscol@zalkindlaw.com

Dated: November 16, 2023

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by electronic filing on November 16, 2023.

/s/ David A. Russcol
David A. Russcol