UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD F. DANTOWITZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Civil Action No. 20-CV-10540-AK |
| v. ) | |
| ) | |
| DEXTER SOUTHFIELD, INC., ) | |
| ) | |
| Defendant. ) | |

### ORDER ON REPORT AND RECOMMENDATION

**ANGEL KELLEY, D.J.**

The Court largely concurs with Magistrate Judge Levenson's thorough analysis in his report and recommendation on Plaintiff Ronald Dantowitz's request for attorneys' fees and costs. Dantowitz, who succeeded in his FMLA claims but not his disability discrimination or associational disability discrimination claims, requested $382,478.50 in fees and $21,855.36 in costs. [Dkt. 223 at 1]. Judge Levenson, citing the discrepancy between the size of the fee award and the Plaintiff's comparative lack of success, decided to award attorneys' fees and expenses in the aggregate sum of $162,450.91. [Id. at 2]. Plaintiff subsequently raised several objections to the 60% reduction in the lodestar calculation. [Dkt. 224]. After giving due consideration to Plaintiff's objections, the Court is unpersuaded of the need to disturb the Magistrate Judge's recommendation. The only exception is as to the reduction for the work of Attorneys Brody and McNeely whose work was primarily focused on the FMLA claims which Plaintiff succeeded on. As such, the Court **ADOPTS IN PART** and **REJECTS IN PART** the Magistrate Judge's Recommendation.

1

A Magistrate Judge's decision may only be reversed if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). The Magistrate Judge here was tasked with evaluating what was a reasonable attorneys' fee for Plaintiff's success on their FMLA claims and had reasonable discretion to determine how to fashion that award. See 29 U.S.C. § 2617(a)(3); Gay Officers Action League v. Puerto Rico, 247 F. 3d 288, 292 (1st Cir. 2001). Aside from the aforementioned issue regarding Attorneys Brody and McNeely, here the Plaintiff's objections do not demonstrate that the Magistrate Judge made factual or legal errors that should alter the award amount. Nor do they demonstrate that the award fashioned is unreasonable or an abuse of discretion.

The Court will evaluate each objection in turn.

**1. Rejection of the $300,000 settlement offer expired on its own**

Three of Plaintiff's objections center around Judge Levenson's consideration of a $300,000 settlement offer. This offer was first proposed orally in August 2022, was conveyed in writing on September 6, 2022, and expired two days later when this Court issued its Summary Judgment decision. [Dkt. 224 at 3 n. 2]. Plaintiff argues that it was improper to consider the offer because: a) it expired on its own and was never formally rejected; b) settlement offers should not be considered in general in evaluating fee awards; and c) penalizing plaintiff for not accepting the settlement offer is unfair because accepting that offer would have deprived him of the vindication he received at trial by succeeding on his FMLA claims. [Id. at 2].

Plaintiff's critique of Judge Levenson's treatment of the settlement offer does not accurately reflect the limited purpose for which the offer was used. The Magistrate Judge noted his caution in using the settlement offer to reduce the award, given Plaintiff's right to a jury trial. [Dkt. 223 at 23]. He then clarified that the unaccepted offer was being used for "the narrow

2

purpose" of finding a "concrete available benchmark for measuring Mr. Dantowitz's, and his attorneys' assessment of what they considered a minimally successful outcome." [Id.]. However, the unaccepted offer was not the only metric available to the Magistrate Judge to determine the outcome the Plaintiff desired—and his relative lack of success in achieving that outcome. The other metrics available to Judge Levenson would have resulted in him arriving at the same conclusion. For example, Judge Levenson would have reached the same outcome by comparing Plaintiff's success at trial with the request for $1.48 million of front pay that Plaintiff sought post-trial and which this Court denied. [See Dkt. 207]. As Judge Levenson mentioned, the settlement offer "is on par with other monetary data points, such as the dollar amount that Plaintiff asked the jury to return, or the dollar amount of the front-pay award that Plaintiff sought post-trial." [Dkt. 223 at 23]. Plaintiff's objection that the Magistrate Judge was unfairly penalizing Plaintiff for his failure to take the settlement offer is thus unsubstantiated as the offer was used in a limited fashion to find a benchmark for the cases' value.

      Plaintiff may not have formally rejected the offer, but the offer was made at some point in August 2022 and appears to be not substantively addressed. [Dkt. 224 at 3 n. 2]. While the written offer was only shared a couple days before it expired, its text indicates it was merely restating an offer that was previously made. [See Dkt. at 189-2]. Judge Levenson also did not commit a legal error in considering the settlement offer. While the First Circuit has not addressed the issue of how to evaluate a settlement offer where the offer exceeds the eventual judgment, the Magistrate Judge was able to rely on six other Circuits that have determined that doing so is permissible. [Dkt. 223 at 26-27]. As a result, the fact that the Second Circuit has determined otherwise is not sufficient for the Magistrate Judge's opinion to be considered a legal error.

## 2. The $4 million number could not be used as a benchmark for success because it was never presented to the jury

The Magistrate Judge erred by referring to a $4 million in damages sought by Plaintiff when no such number was presented to the jury. [Dkt. 227 at 3]. The Report and Recommendation does not explain from where this $4 million number was extracted. However, the Report and Recommendation only refers to this $4 million number a handful of times and it does not otherwise play a meaningful role in the court's analysis. Even setting aside the $4 million number, the court would have reached the same conclusion. As mentioned previously, the Magistrate Judge could have relied on Plaintiff's request for $1.48 million in front pay which Plaintiff unsuccessfully sought.[1] [See Dkt. 207].

## 3. The claims pled overlapped significantly such that the reduction was inappropriate

The Magistrate Judge's reduction was based in part on the fact that Plaintiff succeeded on only two out of seven of his claims, and that the unsuccessful disability claims were a greater focus of Plaintiff's time than the FMLA claims upon which he succeeded. Plaintiff argues though that this reduction was inappropriate since Plaintiff would have presented largely the same case even if they only focused on the FMLA claims—especially because they had to establish that the reasons Defendant offered for Plaintiff's termination were pretextual. [Dkt. 224 at 7-11]. Despite significant overlap, the disability discrimination and the FMLA claims were not identical in fact or law. Indeed, Plaintiff asserted as much in its pretrial filings. [See Dkt. 189-3 (Plaintiff's opposition to motion in limine to exclude evidence of associational disability discrimination)]. Plaintiff's associational disability discrimination claim was subject to a different standard of proof, and consequently required different evidence to be presented to the

---

[1] The request for $1.48 million in front pay would only have been a fraction of the cases' value to Plaintiff given that he Plaintiff also requested back-pay, emotional damages, benefits such as for tuition, and more.

jury to support it.  This Court concurs with the Magistrate Judge that the testimony of Michael Williams and Robert Phinney about discrimination they experienced was less relevant in the FMLA context.  [Dkt. 223 at 15-16].  In light of the lack of direct connection between Mr. Dantowitz's own disability and his decision to take FMLA leave to take care of his son, the Magistrate Judge's decision to reduce the attorneys' fees for Plaintiff's failure to prove he was discriminated against because of his own disability is reasonable.

4. **The reduction should not apply equally to the work of Attorneys Brody and McNeely, since their work focused on the FMLA claims and Plaintiff prevailed on both FMLA claims.**

Plaintiff objects to the 60% reduction in attorneys' fees for the work of Attorneys Brody And McNeely, who assisted Plaintiff in his initial FMLA paperwork. [Dkt. 224 at 12].  The lodestar calculation for the two prior to the reduction, which included their work preparing an MCAD charge, was $18,427.50 for Attorney Brody and was $10,819 for Attorney McNeely. [Dkt. 223-1].  Plaintiff argues that since the bulk of the work of these two attorneys was related to his FMLA claims, which were ultimately successful, that the 60% reduction for their work is not logical.  [Dkt. 224 at 12].  The Defendant explains that the initial FMLA paperwork only incurred $4,625.00 in legal fees and that the fees accumulated thereafter were related to preparing the MCAD charge.  [Dkt. 227 at 5].  The Court concurs with Plaintiff on this objection given the relevance of the MCAD charge preparation to the FMLA claims.  This assessment is supported by the Magistrate Judge's conclusion that he would not reduce the hours on the lodestar calculation based on the time spent preparing the MCAD charge because Attorneys Brody and McNeely would likely have done that work anyway even if they only attempted to pursue the FMLA claims.  [Dkt. 223 at 8].  Plaintiff has suggested that a 20% reduction would be reasonable and that any reduction for these attorneys' fees of greater than 20% would be

unreasonable.[2]  [Dkt. 224 at 12 n. 8].  The Court concurs and adjusts the combined award downward 20% for those attorneys from $29,246.50 to $23,397.20 (rather than 60% downward to $11,698.60).  [See Dkt. 223-1].  The final fee award therefore will be increased from $162,450.91 by $11,698.60, which is the difference between the 20% reduction and the 60% reduction, to $174,149.51.  [See id.].

**5.  The award was less than even what Defendant considered was reasonable.**

While Defendant suggested $150,000 in attorneys' fees was reasonable [Dkt. 159], the Magistrate Judge was obligated to make his own assessment.  This Court has not concluded that his assessment was erroneous, apart from his calculation of fees owed to Attorneys Brody and McNeely. Regardless, with that adjustment now in place, the attorneys' fees award exceeds the number Defendant proposed as reasonable.

Accordingly, the Court **ADOPTS** the Magistrate Judges' Report and Recommendation, with the minor alteration to the fees owed to Attorneys Brody and McNeely.  The attorneys' fees award is increased by $11,698.60 making the total final fee award under the adjusted lodestar and costs $174,149.51.

**SO ORDERED.**

Dated: May 7, 2024                                    /s/ Angel Kelley
                                                                    Hon. Angel Kelley
                                                                    United States District Judge

---

[2] Despite the fact that their work was primarily on the FMLA claims which the jury found in favor of Plaintiff on, some reduction is still appropriate on those claims given the meager dollar amount those claims resulted in compared to what Plaintiff sought.